1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                            - - -

    FINANCIALAPPS, LLC,

4                                           :      CIVIL ACTION NO.
                 Plaintiff,                 :
5    v                                      :
                                            :
6    ENVESTNET, INC., and YODLEE, INC.,     :
                                            :        19-1337-CFC-CJB
7                Defendants.
                             - - -

8
                          Wilmington, Delaware
9                      Monday, December 23, 2019
                          *Telephone Conference*
10                           - - -

11
     BEFORE:   HONORABLE CHRISTOPHER J. BURKE, Magistrate Judge

12                           - - -

13   APPEARANCES:

14
                 YOUNG CONAWAY STARGATT & TAYLOR, LLP
15               BY:  PILAR G. KRAMAN, ESQ.

16                   and

17               KASOWITZ BENSON TORRES, LLP
                 BY:  MATTHEW A. KRAUS, ESQ., and
18                    JOSHUA E. HOLLANDER, ESQ.
                      (New York, New York)
19
                         Counsel for Plaintiff
20

21               CONNOLLY GALLAGHER, LLP
                 BY:  HENRY E. GALLAGHER, JR., ESQ., and
22                    LAUREN P. DeLUCA, ESQ.

23                   and

24
                                 Brian P. Gaffigan
25                               Official Court Reporter

1    APPEARANCES:   (Continued)

2

3              SHOOK, HARDY & BACON, LLP
               BY:   GARY M. MILLER, ESQ.
4                  (Chicago, Illinois)

                           Counsel for Defendant
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22                        - oOo -

23                   P R O C E E D I N G S

24              (REPORTER'S NOTE:  The following telephone

25    conference was held in chambers, beginning at 1:01 p.m.)

1          THE COURT:  Good afternoon, everyone.  It's

2     Judge Burke here.  Before we begin today, let me just say a

3     few things for the record.  And,

4          The first that is we're here this afternoon for

5     a teleconference in the matter of FinancialApps LLC versus

6     Envestnet, et al.  This is Civil Action No. 19-1337-CFC-CJB

7     here in our court.

8          We're here this afternoon for a teleconference

9     regarding a discovery-related dispute that has been brought

10    by defendants' side.  Before we go further, I'll note that

11    I have a court reporter here with me, Mr. Gaffigan from our

12    court who will be taking down our call this afternoon.

13         I just remind counsel, if they would, to try to

14    remember to identify themselves by name each time they speak

15    to help our court reporter get a good and accurate call

16    record of our call today.

17         Next, let's have counsel for each side identify

18    themselves for the record.  We'll start first with counsel

19    for the plaintiff's side; and we'll begin there with

20    Delaware counsel.

21         MS. KRAMAN:  Good afternoon, Your Honor.  This

22    is Pilar Kraman at Young Conaway for the plaintiffs; and

23    with me on the line is Matt Krause and Josh Hollander from

24    Kasowitz Benson in New York.

25         THE COURT:  Good afternoon.

 1              MS. KRAMAN:  Mr. Krause will be doing the

 2     argument today.

 3              THE COURT:  Okay.  Thank you.

 4              We'll do the same for counsel for defendants'

 5     side, again beginning with Delaware counsel.

 6              MS. DeLUCA:  Good afternoon, Your Honor.  This

 7     is Lauren DeLuca at Connolly Gallagher.  With me, I have

 8     my colleague, Hank Gallagher; and on the line with us from

 9     Shook Hardy is Gary Miller who will be doing the argument

10     today.

11              THE COURT:  All right.  And to you all, good

12     afternoon as well.

13              As I said, it's defendants' motion here, and so

14     I'll turn first to counsel for defendants' side.

15              I have reviewed the letters and so on.  I'll

16     start with a few kind of quick questions to defendants, and

17     I'll do the same for plaintiff when it is their turn, but I

18     will, of course, let each side add anything else they wish

19     to add after I ask my initial questions.

20              So is it Mr. Miller who is going to be handling

21     the argument for defendants' side?

22              MS. DeLUCA:  That's correct, Your Honor.

23              MR. MILLER:  Yes, Your Honor.

24              THE COURT:  Mr. Miller, I'll start by saying

25     obviously having seen the other side's response, whether

1   framed in turns of ripeness or framed in terms of whether or

2   not there is a sufficient record to establish good cause,

3   in essence what I think what other side is saying is that,

4   look, we understand the defendant has concerns with regard

5   to third-party contact but there really isn't a sufficient

6   record yet built up here in the case that in fact the

7   plaintiff has engaged in abusive conduct.

8          You know, if we do, if the plaintiff presumably

9   says if we were to go out and to engage in abusive conduct

10   with regard to contact with defendants' employees, that

11   might be one thing, maybe that would at some point justify

12   some type of prior restraint like the one that defendants

13   are seeking here, but there just isn't that kind of record

14   yet.  And presumably the plaintiff suggests they won't

15   engage in that kind of behavior.

16          What is your response to why you think there is

17   a sufficient record demonstrating that the plaintiff needs

18   to be further reined in beyond what Rule 45 provides in

19   terms of prior notice to you of third-party discovery

20   requests?

21          MR. MILLER:  All right.  Thank you, Your Honor.

22   Thank you for your attention to this matter.  I will address

23   that.

24          The concern we have is that Rule 45 doesn't

25   provide any timing for the prior notice.  It could be five

| | |
|---|---|
| 1 | minutes before subpoena is served.  It could be an hour |
| 2 | before the subpoena is served.  It doesn't provide enough |
| 3 | mechanism for the parties to meet and confer and have enough |
| 4 | time to present the issue to the Court in an orderly way for |
| 5 | resolution before the subpoena is actually received.  And, |
| 6 | The ripeness is our concern, that serving the |
| 7 | subpoena is the harm.  From the very -- we're really concerned |
| 8 | about FinancialApps serving overly broad unnecessary discovery |
| 9 | on all of our customers, they identified 28 -- and how that is |
| 10 | going to impact our relationship with the clients.  And, |
| 11 | The concern we think is well founded. |
| 12 | FinancialApps made it very clear before the case was even |
| 13 | filed that they intended to do that and emphasized the harm |
| 14 | that that would cause to us; and it will. |
| 15 | They tried to take premature discovery in this |
| 16 | case before we had our Rule 26 conference.  And then in the |
| 17 | meet and confer, they weren't willing to move at all in terms |
| 18 | of limiting the number of customers they would contact, |
| 19 | limiting scope of the discovery.  And, |
| 20 | So all we're asking for -- we're not asking for |
| 21 | a decision now on which customers you can subpoena or what |
| 22 | topics would be covered on it.  What we're asking for is |
| 23 | to establish a process where we can meet and confer on it. |
| 24 | It could be some of the topics, we say we think |
| 25 | these are legitimate but we have all the information ourselves, |

1    We will give it to you, you don't need to burden our customers

2    with it.

3              It could be topics, probably the customers do

4    have information that is only theirs, but we don't think it

5    is relevant, so maybe we do a phased approach which I have

6    done in other cases which is why don't you serve a subpoena

7    on one customer, two customers, let's see if they produce

8    anything that is relevant that we wouldn't be able to

9    produce ourselves and take it from there rather than just

10   sending out 28 really broad 20 page subpoenas out to all

11   of our customers and everything flows from that, engaging

12   counsel and calls to us and having to work out.

13             Before dragging the customers into this, we know

14   it's going to be a fight, we know there is going to be a

15   fight about it, so all we're trying to do now is establish

16   an orderly process to deal with the fight.

17             So we think that the issue -- that issue, not

18   what exact topics they could serve on customers and which

19   customers, not that topic that is not ripe yet but the topic

20   of can we establish a process to do this in an orderly way

21   to unnecessarily avoid burdening third parties, that issue

22   is ripe; and we think now is the actual perfect time to deal

23   it before they served the subpoenas because that is part of

24   the harm.

25             THE COURT:  I think that one of the things you

1    said that by way of explaining why you thought there was a

2    sufficient record here to justify kind of the further

3    process you are asking me to order is that before the

4    litigation, you said the plaintiffs suggested to you that

5    it did in fact intend to send out very broad 20-page type

6    subpoenas to vast amounts of third parties.  Is that what

7    you were suggesting?  If so, do I have a record of that?

8    And, if so, where?

9              MR. MILLER:  That is what I'm suggesting, and

10   what is true.  I don't know that that is in our letter that

11   we have a record of it.

12             THE COURT:  Okay.

13             MR. MILLER:  What is clear though, I suppose,

14   we can get to the same point by the fact that they tried to

15   take discovery already, and the fact that they have

16   indicated on their initial disclosures they intend to do

17   this.  And when we tried to talk to them about limiting the

18   scope, they wouldn't limit the scope.

19             THE COURT:  Okay.  And --

20             MR. MILLER:  That is in the record.

21             THE COURT:  -- relatedly, the one case you

22   cited, the *May* case was a case where it looks, at least from

23   what the opinion says, the plaintiff had not only filed

24   litigation against the defendant that might implicate third

25   parties but it had actually taken what it seems like the

1   District Court might have thought was aggressive efforts to

2   reach out directly to the third parties prior to that motion

3   being teed up.  And,

4            Here, I don't think, unless you tell me

5   different, we have a record of the plaintiff, either prior

6   to the litigation being filed or after it, kind of directly

7   reaching out to third parties in a way similar to what

8   happened by way of the notice letters in May.  Do we -- or

9   why else do you think that case is similar to the record we

10  have here?

11           MR. MILLER:  Well, we don't have exactly that in

12  this case.  I think the point of that case is to show THAT

13  this type of order can be appropriate.  There are different

14  circumstances there.

15           But our case, we don't have that, but if --

16  really what it is getting to is there a sufficient risk

17  here that the plaintiff will go and serve some burdensome

18  discovery on a wide variety, a large number of customers

19  who are third parties, and really we should be working to

20  minimize the burden on them.  Is there a risk of that?  I

21  think that is the appropriate question.

22           In that case, the Court found that there was a

23  risk because of these efforts that were made.  That I think

24  we presented enough evidence that there is a risk here, too,

25  in that they have identified 28 customers they intend to

1    serve subpoenas on.  When we tried to get them to limit the

2    scope of it, they said they're not going to talk with us

3    about limiting the scope on it, and they made it very clear

4    to us that they're going to serve all 28 of them.

5            So we think we have met that threshold that was

6    accomplished in another way in a different case.

7            THE COURT:  Okay.

8            MR. MILLER:  But you're right, it's a different

9    fact pattern.

10            THE COURT:  Okay.  Lastly, obviously, the

11   extent to which in a case where it seemed at the outset like

12   not a lot of third-party discovery might be necessary and yet

13   a plaintiff was threatening to issue quite a lot of third-party

14   discovery.  That might create one set of challenges and

15   maybe one kind of a record for a movant.  But,

16            On the other hand, in a case where it actually

17   did seem like a pretty fair amount of third-party discovery

18   was going to be necessary, that might be another scenario.

19   It may be less helpful for the movant.

20            Here, from what I understand about the

21   allegations in the case, doesn't it seem like at some level

22   this is a case where we are likely like legitimately going

23   to have a decent amount of third-party discovery because

24   there are third parties, whether they be clients of the

25   defendants who were not utilizing plaintiff's technology or

1    clients of the defendants who were.  There are going to be

2    third parties here who kind of legitimately are going to

3    need to be served third-party subpoenas by the plaintiff.

4    Isn't that probably right?

5                  MR. MILLER:  Well, I don't agree with that

6    actually.  There are customers involved, but the question

7    is going to be do those customers have information and

8    documents that can't otherwise be obtained that are relevant

9    to the case?  And the answer I think -- I can't think of

10   any category of documents where the answer to that is yes,

11   because this is a service.  This is, they called it software

12   and service, cloud-based solution.  So everything about what

13   products the customers are on, what software they were

14   using, we have all of that.  We have all the information.

15   And so I can't really -- any communication about this, well,

16   we have those too, and, we can turn that over.  And,

17                  So that is where I'm saying I think there could

18   be -- could conceivably be some limited discovery on certain

19   clients, but I haven't been able to think myself of what

20   they would get from a third party that we don't have and

21   that we're going to turn over.

22                  THE COURT:  Okay.  So I think any discovery that

23   might implicate third parties will likely be cumulative of

24   discovery that you, yourself have and are going to end up

25   providing anyway; is that right?

```
 1              MR. MILLER:  Yeah.  Well, yes, certainly.  And

 2    certainly as to that core of the case which has to do with

 3    what technology were these customers on, what products are

 4    they using?  Well, this is all cloud based.  It is all

 5    sitting with Yodlee, our client.

 6              THE COURT:  Those are my questions, Mr. Miller,

 7    but let me let you add anything more you wish to respond in

 8    your letter before I turn to your colleague on the other

 9    side.

10              MR. MILLER:  Yes.  I guess the only final piece

11    of it is when I first read the response, I thought maybe we

12    can get an agreement on this because of the mention of the

13    notice provision of Rule 45, and if we just had enough

14    notice, so it's not an hour, it's not a day, it's maybe a

15    week or something, enough time for us to go in, try to

16    negotiate out the limits on it, and then if not, then be

17    able to present it in a more specific format to the Court?

18    You know, I don't think we're asking for a lot.  We're just

19    asking for a little extra notice.

20              I would prefer to have sort of more of an

21    orderly we have X days to object.  If we don't reach

22    agreement, we have Y days to approach Your Honor, and sort

23    of a process to do that.  But even if it is less formal than

24    that, at least give you a few days or a week, then maybe

25    that is sufficient at this point.
```

1    THE COURT:  Okay.  Let me turn to the

2  plaintiff's side.  Is it Mr. Krause who is going to be

3  speaking to these issues?

4    MR. KRAUSE:  Yes, Your Honor.

5    THE COURT:  All right.  Mr. Krause, let me start

6  by stating one of the things that Mr. Miller is raising is

7  not just kind of what has happened in the past as to this

8  case which was talked about in his letter but also the fact

9  that you have identified what sounds to defendants like a

10  pretty large number of third parties, 28, that you may be

11  wanting to subpoena.  And the worry is 28 clients, maybe

12  with large broad discovery requests, that sounds abusive,

13  potentially, says defendants' counsel.

14    Is there anything you want to say in response to

15  convince the Court that, look, although we may have listed

16  28 third-party entities, we're intending to go about this

17  in a much more kind of meticulous approach where if the

18  defendants have fears that tomorrow there is going to be 28

19  100 paragraph subpoenas sent out to 28 different third-party

20  clients, that is just wrong?  Is there anything you want to

21  say in that regard?

22    MR. KRAUSE:  Yes, Your Honor.  I'll first start

23  by saying I think you had it correctly when you were talking

24  about third-party discovery in this case.  I think it is

25  absolutely necessary.  It is absolutely necessary both

1   because of the complaint that we have alleged and the

2   counterclaims that defendants have now brought.  This idea

3   that we're going to serve abusive requests or some kind of

4   voluminous requests, that is not at issue.  That was never

5   at issue.  It was never threatened in this case.

6           What we intend to do is what we set out in our

7   letter to Your Honor which is serve very narrow requests on

8   the risk insight customers, requests about the software

9   itself, request about the payments that were made, internal

10  communications.  We're not talking about communications to

11  anything that is duplicative of what we're getting from

12  Yodlee or from Envestnet.  We're going to be focusing on

13  internal communications.

14          We have made numerous allegations regarding

15  misrepresentations that Yodlee and Envestnet have made to

16  these customers based on what happened to the contract with

17  them, during the contract with them, and then services that

18  were suspended.  Those allegations are set forth in the

19  complaint.

20          Also, we have allegations regarding the

21  financial terms that were entered into, terms that were

22  supposed to be given to us that were never given; and we

23  have allegations in there as well regarding payments that

24  were supposed to be made to us, revealed to us and paid to

25  us that were not; internal communications regarding the

1   payments; and told them the payments themselves for each of

2   these customers is highly relevant.

3          So to the extent we opened the door with our

4   complaint to third-party discovery, defendants kicked it

5   wide open when they put at issue the satisfactory -- whether

6   or not there are issues with the software, whether or not

7   defendants found it satisfactory, and the functionality of

8   our software with each of their clients.

9          So these are issues that are squarely -- that

10  third-party discovery is necessary, and they are very

11  narrow.  They're a narrow set of things.

12         So this idea that we would be serving somehow

13  abusive requests, we never did that, we never said we would

14  do that, we don't intend to do that, and we will not do that.

15         When it comes to the number of customers, that

16  just happens to be the number of customers.

17         What we're asking is very, very limited, but

18  it's something that applies.  If it is relevant to one

19  customer, it is relevant to the next customer.  And we're

20  not talking about mom-and-pop companies, we're talking about

21  some of the largest financial institutions in the country,

22  the Bank of Americas of the world.  These are institutions

23  that have entire internal firms that are set up to respond

24  to subpoenas in the normal course, so I don't believe it is

25  going to be harassment, and we have no intention to do so.

1          With respect to the process that Mr. Miller

2    is suggesting that we adopt here, we entered into a very

3    expedited schedule here, very aggressive.  Fact discovery

4    ends I believe May 1st.

5          Putting another layer to this process, when we

6    know we're going to be requesting all this information from

7    a third party, and going through the process, and setting up

8    meet and confers, and protective orders, all baking into

9    this issue, we think is just going to, it's going to

10   elongate the process, and it's going to add more burden to

11   all the parties involved.  It's not going to alleviate any

12   burden, it's going to cause some burden.

13         As Your Honor suggested earlier as well, not

14   only did we not threaten to serve all the overly broad

15   subpoenas, there has been no record of any misconduct.

16   There has been no record of any reaching out to third

17   parties or anything of that nature that was present in May.

18   So the record is not in there to suggest that somehow there

19   would be some abuse of the process.  We don't intend to do

20   that, and we won't do that.

21         THE COURT:  Mr. Krause, in terms of my question

22   about kind of the sheer number of third parties that are

23   allegedly referenced in your disclosures, one response that

24   you could have made is, Judge, yes.  Are there 28 entities

25   listed?  Sure, because it is literally possible that we

1    could find the need to subpoena all 28 of them.  But do we

2    intend on Day One to go issue subpoenas to every single one

3    of those entities?  No.  We're anticipating some kind of a

4    phased approach, and it may depend in terms of what we see

5    from certain of those entities by way of responses whether

6    we need to implicate others.

7              You didn't say that, so that makes me wonder

8    whether in fact you do plan on kind of reaching out to all

9    28 right away and getting 28 different sets of entities

10   involved with their counsel.  Is that right or am I

11   misreading your response?

12             MR. KRAUSE:  Well, Your Honor, I think what we

13   intend to do in the process that we intend to follow is one

14   where we serve a number of requests limited to the number of

15   requests on to the customers?  And if it's 28 -- it may be

16   29.  I think it is fewer than 28, it may be in the 20s,

17   but these are all customers that are at issue in both the

18   complaint and the counterclaims.

19             There is numerous allegations in the defendants'

20   counterclaims that somehow there are issues and problems

21   and the software is problematic.  We don't believe there is

22   anything to this.  So the internal communications for each

23   of these, we believe that the internal communications for

24   each of these clients will show that this is not -- this is

25   fiction.  This did not happen.  There were no prospective

1    internal communications.

2              We also think, with respect to the payments, the

3    terms of the payments and how the payments were made all

4    kind of done in a black box which shouldn't have been.  It

5    was a violation of the contractual duties of Yodlee, so it's

6    all information that we want.

7              Again, if we do go out and serve 20 subpoenas,

8    it's going to be for a very limited information that is

9    very relevant to our claims and for the prosecution of our

10   claims, for the defense of the counterclaim.

11             THE COURT:  And with regard to the difference

12   between the process that the defendants are asking for

13   versus what would kind of naturally happen pursuant to Rule

14   45, it sounds like your concern is in the area of delay.

15   That the reason why you won't agree to the defendants'

16   process is because you think it will unnecessarily delay

17   the ability of third parties to ultimately respond timely to

18   your requests which you say are going to be reasonable.  Is

19   that right?  And are there any or kind of concerns you have

20   when you compare what the defendants are asking for versus

21   what would probably naturally play out under the rules if

22   you issued some or all of these subpoenas?

23             MR. KRAUSE:  Well, I think, the first part is,

24   yes, that as we think it should proceed in the normal course,

25   and there is no reason to deviate from that.  And if the --

1    if defendants want to put in a protective order, they can do

2    so.  But the idea that just the mere existence of a subpoena

3    is somehow something that they can object to, we don't agree

4    with that, and there is no legal support for just the issuance

5    of a subpoena, a real subpoena in the normal course, not

6    trying to harass, just trying to get relevant information.  We

7    think that is something that we should proceed in the normal

8    course.  And,

9              Secondly, it goes to what is behind the request,

10   right?  In the sense they're asking for a second protective

11   order; and as we laid out in the letter, a defendant moving

12   for protective order when it comes to a subpoena, it is a very

13   limited set of objections that they can raise.  They don't

14   have standing to raise most objections.  So we think that the

15   process at the end of the day is going to be futile because

16   we're not talking about some kind of privileged or protected

17   information, we're talking about internal communications that

18   they have no standing to object to.  And, also,

19             Many of these subpoenas are being served outside

20   the jurisdiction of the Court.  There are jurisdictional

21   issues here when it comes to motions to quash and the like.

22             So I think there is good sense to proceed in the

23   normal course that somebody, pursuant to the federal rules,

24   to the extent they have any issues, they can raise them, but

25   most of the issues, the ones they're talking about now is

1   not something that is countenanced by force.

2          THE COURT:  Lastly, to the extent I deny the

3   motion and you issue some or all of these subpoenas and

4   provide notice, of course, to the defendants under Rule 45,

5   and to the extent that the defendants reach out to you and

6   say, look, we have some concerns about scope or about

7   standing or about other related issues, do you stand ready

8   and willing to work with defendants to hear their concerns

9   and perhaps modify the subpoenas if you think they make

10  good points?

11         MR. KRAUSE:  I think that is right, Your Honor.

12  I think, to have the conversation about a hypothetical

13  communication from -- a hypothetical subpoena, rather,

14  before it's issued I think it is a little tough, but I think

15  after the subpoenas are issued, if they raise certain issues

16  or if there are certain things that we have asked for that

17  they don't think is appropriate, we, of course, would be

18  willing to listen to them.  And if we determine that there

19  is good reason to modify the subpoena, I think that we would

20  be amenable to such a process.

21         THE COURT:  All right.  Mr. Krause, anything

22  else?  Those are my main questions.  Are there other things

23  you wanted to mention in response to what you heard from the

24  other side?

25         MR. KRAUSE:  I don't believe so, Your Honor.

1          THE COURT:  All right.  Let me give the movant,

2    Mr. Miller, a chance to make brief rebuttal by way of

3    getting the last word as it is his motion.

4          MR. MILLER:  Thank you, Your Honor.

5          On the point of the schedule and the delay

6    point, I just -- we will be filing a motion for protective

7    order.  I can't imagine we won't given what Mr. Krause has

8    said before and what he just said on this call.  And so

9    I'm trying -- what we're proposing actually might expedite

10   things.  All we're proposing is to have that motion be

11   before the parties served rather than after, and we're happy

12   to go act on it.  That is point one.

13         Point two.  The categories of documents that

14   Mr. Krause said he can get from the clients that he can get

15   from us, neither of those -- he didn't prove his point.

16         The payment is -- he is talking about money that

17   our clients received.  We have the best evidence of what

18   money we received.  The internal communications regarding

19   how the software performed, all that is relevant is

20   complaints that customers made about the software.  We have

21   the complaint.

22         As far as that goes, that category, those are

23   the only two categories he mentioned.  The payments point is

24   obviously we have it.

25         On the complaints point, problems the customer

1    had with the software, well, we never said that every single

2    one of the 28 customers complained.  So in an orderly way to

3    do this, an appropriate way not to burden third parties

4    would be serve interrogatories on us:  Who complained?  Who

5    didn't complain?  Maybe there were five, five, six customers

6    that complained.  Well, serve subpoenas on them.  Don't

7    serve on subpoenas on everyone else that we're not even

8    complaining complained about it.

9              I have another --

10             THE COURT:  Mr. Miller, just on the complaints

11   issue, I mean obviously just sitting here, it's not

12   implausible to think of scenarios where customers who may

13   have well have complained where there might well be material

14   sitting on their computer servers or documents printed out

15   at their client's sites in which they are discussing their

16   own internal views about such complaints in a way that where

17   those documentations wouldn't necessarily be resonant at

18   defendants' location; right?  I mean we can think of lots

19   much scenarios in which, even as to that small issue area,

20   third parties here might well have unique relevant

21   documentation that is at issue in the case; right?

22             MR. MILLER:  I would agree with that, but

23   then the way to deal with it I would think would be is to

24   identify customers who made complaints.  We have the

25   complaint.  And then as to those customers, maybe there

1    could be a couple typed document requests as to those

2    customers rather than serving a broad subpoena with a whole

3    bunch of categories on 28 customers.

4           So we're not saying no third-party discovery, no

5    subpoenas on customers.  We're saying blanket subpoenas on

6    all of them is what is inappropriate.  And,

7           I have a suggestion, too, that rather than

8    having 28 customers, or 26, whatever the number ends up

9    being, all with separate counsel, all citing the stuff

10    possibly in multiple jurisdiction Mr. Krause raised;

11    instead, what I would suggest is have them pick one or two

12    customers they particularly care about.  Ones where the

13    issues can be presented to Your Honor in this jurisdiction

14    and kind of sort out the issues with respect to those

15    subpoenas and then the rules could apply to the others.  And,

16           In my experiences, other jurisdictions, if this

17    is litigated in Illinois, for example, an Illinois subpoena,

18    they're going to defer to you as you know more about it, the

19    judges will.  So let's have it done once, in respect to one

20    or two subpoenas rather than trying to do 28 all happening

21    at the same time.

22           THE COURT:  Okay.  Anything further, Mr. Miller?

23           MR. MILLER:  No.  Thank you, Your Honor.

24           THE COURT:  All right.  Counsel, thank you.

25    Appreciate the arguments.  And I'm going to try to resolve

1    the issue on the call today, as I know it is one that the

2    parties could benefit from getting quick guidance from the

3    Court on; and I know also we're right up against a holiday

4    season as well.  And,

5            So the transcript of our call will serve as the

6    Order of the Court.  And at this point, I'm going ultimately

7    to deny the defendants' motion at this time for the reasons

8    that I will explain in just a second.

9            Ultimately, I find that the defendants haven't

10   met the burden of demonstrating good cause for the type of

11   protective order they're seeking the Court to impose at this

12   stage pursuant to Rule 26(e).

13           I say that for a couple of reasons:

14           First, this isn't a case, as far as it strikes

15   the Court, where the concept that there might be important

16   or relevant third-party discovery is remote.  The nature of

17   the allegations at least in the complaint and perhaps in

18   the counterclaims as well are about not just disputes that

19   relate to these two parties or, I should say, three parties,

20   but also disputes that implicate third-party entities.

21   There are many third parties, for example, listed by name in

22   the complaint itself.  And,

23           So it does seem to me very likely that third

24   parties might have relevant and potentially unique information

25   in the case.  And I don't really have a record to suggest, at

1   least so far, that any third-party discovery is likely to be

2   extremely cumulative.

3          So that is all to say just as a starting point,

4   the nature of the allegations here are not ones that make

5   me suspicious as to whether it is even appropriate for the

6   plaintiff to be talking about issuing third-party discovery

7   early in the game.  And,

8          Secondly, I really don't have a sufficient record

9   here of the type where I would have a base of information that

10  would suggest to me that I'm on good standing in going beyond

11  what Rule 45 calls for by way of third-party discovery

12  provisions.  And,

13          I say that for a couple of reasons:

14          First, we don't have any third-party subpoenas

15  that have been issued yet.  So the plaintiff tells me on

16  this call that it is going to be mindful of the issues that

17  we have raised and be focused on issuing relatively narrowly

18  issued subpoenas that are relatively narrow in scope.

19          That may well be so.  We don't have subpoenas

20  that have been issued that suggests that that promise was a

21  false one and instead that, as defendants worry, incredibly

22  broad.  Many, many paragraph subpoenas were issued to many,

23  many third-party defendants.

24          I also don't have a record here of the kind of

25  plaintiff to third-party abusive contacts that there might

be in cases where a court would step up early and start to

enter additional provisions restricting plaintiff contact to

third parties.  I think some of that was going on in the *May*

case which is the one case that the defendants cite in

support of their request.  We don't have that here.  We

don't have a record of that here.  Indeed, I'm not aware

of the plaintiffs having directly contacted any of these

third parties prior to or during this litigation.  And,

Thirdly, with regard to the lack of record, it's

also relevant to me that defendants obviously have raised

their concerns here early in the case and on this call, and

the plaintiffs have to be mindful about how they pursued

third-party discovery from here on out.

If they do so in a way that is unduly aggressive

or threatening or incredibly overbroad in scope, I'm sure I

will hear from defendants in the future by way of a further

discovery dispute pointing out the actual record that will

exist that supports their contentions that more process is

needed.

On the other hand, if the plaintiffs kind of,

while going forward with third-party discovery under the

rules, are mindful of the concerns that have been raised

and they kind of take an approach here with regard to

third-party discovery that is focused and appropriate, we

might well avoid some or all of those disputes in the future.

1    And so,

2              All that being said, I just don't have a record

3    that would support doing more than what the rules require at

4    this point.  And I'm not prepared to issue a protective

5    order that goes beyond what the rules require without such a

6    record.  I don't find there is good cause to justify such

7    actions at this time.

8              Again, though, I encourage the parties.

9    Obviously, notice will be provided by way of these third-party

10   subpoenas that are issued.  I encourage the parties to try to

11   work together as best they can to try to resolve issues of

12   third-party discovery scope or cumulativeness so that we can

13   attempt to minimize the amount of disputes we have in the

14   future with regard to these issues, but if we do have them,

15   I'll be prepared to address them on a better record than we

16   have now.

17             All right.  With all that said, and

18   understanding the Court's decision, is there anything

19   further I need to take up at this time with regard to this

20   matter from the plaintiff's side, Mr. Krause?

21             MR. KRAUSE:  No, Your Honor.  Thank you.

22             THE COURT:  All right.  And on the defendants'

23   side, Mr. Miller?

24             MR. MILLER:  No.  Thank you, Your Honor.

25             THE COURT:  All right.  With all that said, I

1    wish everyone on the call a very happy holiday season, look

2    forward to continuing to work with the parties on this case.

3    We'll end our call today and go off the record.  I wish

4    everyone a good day and a good week.  Take care.

5              (Telephone conference ends at 1:37 p.m.)

6

7         I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

8

9                        /s/ Brian P. Gaffigan
                      Official Court Reporter
10                      U.S. District Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25