# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINANCIALAPPS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1337-CFC/CJB |
| | ) |
| ENVESTNET, INC. and | ) |
| YODLEE, INC., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
## EMERGENCY MOTION TO AMEND THE SCHEDULING ORDER

OF COUNSEL:

Gary M. Elden
Gary M. Miller
Hugh Abrams
Amy Y. Cho
Jason Richardson
Ian M. Hansen
SHOOK, HARDY & BACON LLP
111 S. Wacker Dr., Suite 4700
Chicago, IL  60606
(312) 704-7700

Henry E. Gallagher, Jr. (No. 495)
Lauren P. DeLuca (No. 6024)
CONNOLLY GALLAGHER LLP
1201 North Market St., 20th Floor
Wilmington, DE 19801
(302) 757-7300
hgallagher@connollygallagher.com
ldeluca@connollygallagher.com

*Attorneys for Defendants Envestnet, Inc. and Yodlee, Inc.*

Dated:  December 9, 2020

**INTRODUCTION**

With this opposition to Plaintiff FinancialApps, LLC's ("FA") Emergency Motion to Amend the Scheduling Order ("FA's Emergency Motion"), Defendants have simultaneously filed their Motion for Trial Phasing. In addition, Defendants have sent Plaintiff's counsel a draft of their motion pursuant to F.R.C.P. 39 (the "Rule 39 Motion"), which asks the Court to enforce the Master Service Agreement's jury trial waiver in which the parties waived "any right to jury trial in connection with any action or litigation arising out of or related to this Agreement." D.I. 7, Ex. 1, ¶ 12(e). The parties have stipulated that at the December 14, 2020 emergency hearing on Plaintiff's Motion to Amend the Scheduling Order (D.I. 216), the Court may consider the schedule up to the trial date but defer ruling on setting the actual trial date until it considers Defendants' Motion for Trial Phasing and Defendants' Rule 39 Motion (to the extent Plaintiff opposes that motion). Defendants respectfully request the Court to review the Motion for Trial Phasing and the Rule 39 Motion in tandem when deciding the trial date because they directly relate to whether and by how much the trial schedule needs to be amended.[1] By this reference, Defendants incorporate the Motion for Trial Phasing herein.

---

[1] Given that the three motions relate to the case schedule, Defendants have moved for its Motion for Trial Phasing to be considered on an expedited basis together with FA's Emergency Motion. Pending the Court's approval, and in lieu of the guidelines set forth under L.R. 7.1.2, the parties have jointly proposed that FA file its opposition to the Motion for Trial Phasing by December 14, 2020, and Defendants file their reply by December 16, 2020. Pursuant to L.R. 7.1.1, counsel certifies that they have made reasonable efforts to resolve the matters set forth in their motion, and that the parties are continuing to meet and confer about Defendants' Rule 39 Motion to be filed following further meet and confer.

**STATEMENT OF FACTS**

1. On December 1, 2020, FA sought to amend the current trial schedule by delaying all dates by six months. *See* FA's Motion Exhibit B at 2 and Proposed Order.

2. On December 2, 2020, Defendants' counsel responded. Defendants agreed that some extension of the current discovery schedule was needed so that *both* parties could resolve their discovery disputes. But they opposed any delay of the trial date. Defendants' counsel presented a counter-proposal to simplify the case, reduce costs and length of the trial, and solve current scheduling issues.

3. Specifically, Defendants suggested phasing the case under Fed. R. Civ. P. 42(b). (The details of phasing are discussed in the Motion for Trial Phasing filed contemporaneously herewith.) Defendants proposed a schedule, requested comments from FA's counsel, and reiterated that they are amenable to discussing the exact procedures. *See* FA's Motion Exhibit B at 1. Defendants' counsel stated that they are "open to any other phasing suggestions FA has." *Id.*

4. On the following day, on December 3, 2020, the parties met and conferred. FA's counsel stated that phasing the case was "a non-starter," and the instant emergency motion ensued.

5. Later that day, Defendants' Delaware counsel asked FA's Delaware counsel whether the parties could stipulate to an extension of two of the upcoming deadlines (expert reports and joinder of parties) and deal with other issues on scheduling and phasing on a non-emergency basis. FA denied that request.

6. On December 8, 2020, Defendants' counsel informed FA's counsel that Defendants were intending to file their Rule 39 Motion pursuant to the Master Service Agreement, which is at the heart of this lawsuit and contains a clause waiving "any right to jury trial in connection with any action or litigation arising out of or related to this Agreement." Later that day, Defendants' counsel sent FA's counsel a draft of the Rule 39 Motion. On December 9, 2020, the parties met and conferred. Defendants agreed to delay filing the Rule 39 Motion until FA's counsel had an opportunity to decide whether it intends to oppose the motion. Because the issue of whether this case will require a jury relates to the mechanics of the trial schedule and phasing (particularly during a pandemic), Defendants raise this issue with the Court now.

## ARGUMENT

### I. A PHASED TRIAL SCHEDULE WOULD PRODUCE EFFICIENCIES.

7. For the reasons stated in Defendants' Motion for Trial Phasing, a phased trial would save costs, clarify the dispute, significantly lessen or even eliminate certain triable issues and discovery burdens, provide multiple opportunities for informed settlement discussions, and conserve both the parties and the Court's resources.

8. However, if the Court decides that a phased trial is inappropriate, Defendants propose the following, limited revisions to the current scheduling order. FA's desire for seemingly endless discovery must be tempered by a reasonable deadline. The proposed schedule below allows *both* FA and Defendants to complete outstanding discovery, attempt to resolve discovery deficiencies without intervention from the Court, and keep the current trial date of September 20, 2021.

| Event | Current Deadline | Amended Deadline |
|---|---|---|
| Fact Discovery Cut-Off | March 12, 2021 | March 12, 2021 |
| Completion of Fact Depositions | November 20, 2020 | February 1, 2021 |
| Joinder of Other Parties / Amendment of Pleadings | December 4, 2020 | January 8, 2021 |
| Opening expert reports | December 22, 2020 | February 8, 2021 |
| Rebuttal expert reports | January 26, 2021 | March 1, 2021 |
| Completion of expert depositions | March 12, 2021 | March 29, 2021 |

## II. FA'S ACCUSATIONS OF DEFICIENCIES IN DEFENDANTS' DISCOVERY PRODUCTIONS ARE UNFOUNDED.

9. As no discovery motions are pending before the Court, Defendants believe that this motion is not the appropriate place to discuss the parties' perceived discovery deficiencies. However, as FA has raised the issue in its motion, Defendants are forced to respond to FA's accusations in the following section.

### A. Defendants have produced information related to their Development and Operational Systems.

10. Defendants have produced information related to their Development and Operational Systems. In a good-faith effort to comply with the Court's Order dated October 8, 2020, and to seek resolution of the on-going discovery disputes without necessitating further involvement of the Court, Defendants adopted Plaintiff's proposed definitions of "Development and Operational Systems" to include all "databases, development environments, testing environments, road mapping tools, and operations servers" associated with "development and operation" of the so-called "Competing

4

Products." As evident from the adopted definition, the Development and Operational Systems thus include far more than the initially sought "development environments."

11. FA supposedly seeks information concerning products that "compete" with the Risk Insight 2.0 product that was jointly marketed by the parties and the subject of the present litigation. FA's definition of "Competing Products," however, encompasses products developed by Yodlee and offered to the market before it had any involvement with FA, *e.g.*, the Snapshot 1.0 and Risk Insight 1.0 products, and thus are not relevant to the current controversy. FA's definition of Competing Products also includes products developed in conjunction with FA, *e.g.*, Pre-Qualification, Intelligent Credit Engine, and Account Review, and thus are not relevant to the present controversy. FA also identified the Envestnet Credit Exchange product as a "Competing Product," even though the product is developed and sold by a non-party to this case, Advisor Credit Exchange (ACE), on the platform of Envestnet, and does not and cannot include any so-called proprietary information of FA.

12. Despite Defendants' efforts to avoid further controversy by adopting FA's overly-broad definitions, and then complying with the FA's requests in accordance with those definitions, FA once again accuses Defendants of "woefully deficient" document productions, "violations of the Court's clear instructions," and "facially incomplete" responses. FA's blanket demands for unfettered access to internal operating systems of Defendants are simply not reasonable in an industry that requires "bank level" security to protect the confidential information of both Defendants and its financial institution customers.

13. In accordance with the Court's October 8, 2020 Order, Defendants provided twenty pages of detailed explanation of the various development systems, under FA's

definition, that were involved in all of the "Competing Products" as defined by FA. *See* FA's Motion Exhibit A.

14. The only true "Competing Produce" is Snapshot 2.0, which involved the use and enhancement of Snapshot 1.0 (a product that admittedly did not involve FA) in order to provide an alternative solution to Risk Insight 2.0 customers after the termination of Risk Insight 2.0 by FA. As explained in the Defendants' Description of Competing Products, *see* FA's Motion Exhibit A, the "development environments" for Snapshot 2.0 were the laptop computers used by the software developers at Defendant Yodlee to write the software code, which was then "pushed" to, or stored, in a software repository.

15. Adopting FA's broad definitions, Defendants identified other "tools" used in the software development process, such as Bugzilla, which allows tracking of correction of software "bugs" and other errors in coding; Jira, which allows project management of the overall project; Postman and DAQ, which are used in testing of software code; and a MongoDB database for storage of information.

16. Defendants provided exports of logs and other identifying information about these various tools, including customer-level access, with the intention that FA review that information and then identify by person, date, or "incident" where additional information would be necessary. Such an approach balanced FA's request with the need to maintain active security over these tools that are currently used at Yodlee for on-going software work. Unfortunately, FA has been unwilling to examine the information and seek additional information in an incremental fashion. Instead, FA broadly complained about the lack of "inside" access for its experts and brought this motion.

**B.     Defendants have produced information related to the AWS Environments and Related Data.**

17.     Similarly, FA seeks access to the AWS environments used for the parties' joint efforts on Risk Insight 2.0. Defendants leased an AWS server for the Yodlee aggregation technology and its Risk Insight 1.0 product. FA operated its "FinancialApps Platform" on top of the Yodlee system on the AWS environment. By an act taken in May 2019 that is the subject of much of the present controversy, FA stopped all access to the AWS environment by Yodlee as well as customers of Risk Insight 2.0 by "sealing the vault," or using security encryption to shut down the operation of the Risk Insight 2.0 product by customers.[2] Yodlee does not have a "back door" to the AWS system and cannot access the portions that involved the FinancialApps platform without FA's cooperation in re-activating the system, which FA refuses to provide.

18.     Yodlee also paid for operation of a number of "tools" that were used in conjunction with the AWS system. These tools include products named "Cloud 66," "Pingdom," and "Papertrail." After FA sealed the vault and shut down operation of the Risk Insight 2.0 product, Yodlee allowed the licenses for these products to expire, rather than make expensive payments for tools that were no longer being used. Those third party vendors, *e.g.*. Cloud 66, maintain all of the logs for access to the AWS system. Yodlee has suggested that FA seek access to these logs by contacting the appropriate vendors, and

---

[2]     In May 2019, FA disabled the Risk Insight product by "sealing the vault." As explained by FA security director, Cesar Priegues, at his deposition, FA suspended access to Risk Insight by everyone, including Yodlee, FA and the customers, by using "three keys" to seal the vault. (Priegues Dep. 59-6-11.) At that time, all customer use of Risk Insight was terminated by the actions of FA.

Yodlee will authorize any access to the historical logs that is necessary. Instead of simply contacting those vendors, FA has chosen to attack Yodlee for failure to maintain logs that were never in Yodlee's possession.

### C. Other perceived "deficiencies" are not ripe or can be resolved through the meet-and-confer process.

19. Other perceived "deficiencies" can be resolved by the end of fact discovery. Defendants note that FA's letter dated November 11, 2020 (attached as Exhibit H to FA's motion), which requested a variety of financial information was sent *before* FA sent formal document requests regarding the same material. *See* Exs. 1 and 2 (FA's discovery requests served on November 23, 2020).

## III. DEFENDANTS INTEND TO PURSUE ADDITIONAL DISCOVERY TOO, BUT A SIX-MONTH EXTENSION IS NOT NEEDED TO RESOLVE OUTSTANDING ISSUES.

20. As in most complex litigation, Defendants have a number of follow-up items in discovery, too. To preview for the Court, some examples of outstanding discovery disputes are as follows:

   a. Both Mr. Sullivan and Mr. Weatherly were insufficiently prepared to testify on several Rule 30(b)(6) topics for which they had been designated, respectively. Ex. 3. Counsel for FA improperly instructed witnesses not to answer questions and otherwise engaged in dilatory tactics that wasted significant time on the record. Defendants have requested FA make both witnesses available again—this time, having been prepared properly—to answer questions related to the topics. *See id.*

   b. Mr. Sullivan testified as to a number of documents that were responsive to outstanding discovery requests but not produced. These documents include, among other things, ledgers, financial records, FA's development costs, documents related to the valuation of assets, confidentiality agreements, demo presentations, security policies, work logs, and whitepapers. Defendants have asked FA to produce these documents immediately. *See id.*

8

    c.  FA refuses to provide a date for parties to exchange privilege logs. *See* Ex. 4. It is particularly important to exchange these logs prior to the deposition of Marc Kasowitz so that parties can meet and confer in good faith about any privilege-related issues beforehand (*e.g.*, privilege waivers, the at-issue doctrine).

    d.  To date, FA has unilaterally refused to exchange access of the source code pursuant to the agreed-upon protocol because it is unhappy with Defendants' productions. Defendants' position is that FA's rationale for withholding relevant and responsive discovery is improper. *See* Ex. 5.

21.    To be clear, Defendants are not asking the Court for intervention at this time on these discovery issues. Although Defendants believe FA's discovery responses, 30(b)(6) witnesses, and document productions are deficient, Defendants are willing to meet and confer in good faith on these issues, follow the necessary processes, and, if they are at an impasse with Defendants, raise these issues with the Court.

22.    This can all be done by the March 12, 2021 fact discovery cut-off date.

## **CONCLUSION**

For all the foregoing reasons, and the reasons stated in Defendants' Motion for Trial Phasing (filed herewith), Defendants respectfully request that the Court to adopt the Phasing Proposal and Proposed Amended Case Schedule set forth in their Motion for Trial Phasing.

| | |
|---|---|
| OF COUNSEL: | CONNOLLY GALLAGHER LLP |
| Gary M. Elden<br>Gary M. Miller<br>Hugh Abrams<br>Amy Y. Cho<br>Jason Richardson<br>Ian M. Hansen<br>SHOOK, HARDY & BACON LLP<br>111 S. Wacker Dr., Suite 4700<br>Chicago, IL  60606<br>(312) 704-7700<br><br>Dated:  December 9, 2020 | */s/ Lauren P. DeLuca*<br>Henry E. Gallagher, Jr. (No. 495)<br>Lauren P. DeLuca (No. 6024)<br>1201 North Market St., 20th Floor<br>Wilmington, DE 19801<br>(302) 757-7300<br>hgallagher@connollygallagher.com<br>ldeluca@connollygallagher.com<br><br>*Attorneys for Defendants Envestnet, Inc. and Yodlee, Inc.* |