IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINANCIALAPPS, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>ENVESTNET, INC.<br>and YODLEE, INC.,<br><br>    Defendants. | C.A. No. 19-1337-CFC-CJB<br><br>REDACTED - PUBLIC VERSION |

**PLAINTIFF FINANCIALAPPS, LLC'S**
**EMERGENCY MOTION TO AMEND THE SCHEDULING ORDER**

Dated: December 4, 2020
Redacted Version: December 14, 2020
*Of Counsel*:

Marc E. Kasowitz
Matthew A. Kraus
A. Macdonald Caputo, Jr.
Joshua E. Hollander
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
mkasowitz@kasowitz.com
mkraus@kasowitz.com
acaputo@kasowitz.com
jhollander@kasowitz.com

C. Barr Flinn (No. 4092)
Emily V. Burton (No. 5142)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
(302) 571-6600
bflinn@ycst.com
eburton@ycst.com
pkraman@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff FinancialApps, LLC*

Plaintiff FinancialApps, LLC ("FinApps") hereby moves the Court to amend the Scheduling Order (D.I. 28, as subsequently amended by D.I. 93, 101, and 168) in the above-captioned case. FinApps further requests that the Court consider this Motion on an expedited basis. Pending the Court's approval, and in lieu of the guidelines set forth under LR 7.1.2, the parties jointly propose that the deadline for Defendants Envestnet, Inc. ("Envestnet") and Yodlee, Inc. ("Yodlee") to file their opposition to this Motion be Wednesday, December 9, 2020, and that the deadline for FinApps to file its reply be Friday, December 11, 2020. Pursuant to LR 7.1.1, counsel certifies that they have made reasonable efforts to resolve the matters set forth in this Motion. While Defendants indicated they will oppose this Motion, they do not oppose FinApps' request for expedited consideration. In support of this Motion, FinApps states as follows:

## FACTUAL BACKGROUND

1. This case arises from Defendants' fraudulent scheme to copy, misappropriate, and reverse engineer FinApps' proprietary technology (sold and marketed as "Risk Insight," and referred to herein as "Risk Insight 2.0"), in order to facilitate Defendants' unlawful development of several competing products that are virtually identical to FinApps' Risk Insight 2.0 (the "Competing Products"). FinApps has asserted claims for misappropriation of trade secrets, fraud, breach of contract, tortious interference with prospective business opportunities, unfair competition, unjust enrichment, and violation of several state deceptive trade practices statutes.

2. Pursuant to the current Scheduling Order (D.I. 168), opening expert reports are due by December 22, 2020. Discovery has been underway since early 2020, but Defendants' document productions to date are woefully deficient. Defendants have also failed to produce large swaths of highly relevant discovery, in violation of the Court's clear instructions.

3. Specifically, and as further detailed below, Defendants have failed to provide adequate access (or in most cases, any access at all) to: (i) internal development and testing environments, third-party operational systems, and related tools (the "Development and Operational Systems"), which were identified by Defendants and used in connection with the Competing Products also identified by Defendants, and to which the Court ordered Defendants to provide Plaintiffs access; (ii) Development and Operational Systems that interfaced with Risk Insight 2.0, as well as related data and log files; and (iii) Yodlee's Amazon Web Services ("AWS") environments that hosted Risk Insight 2.0, as well as the data and log files contained therein. All of this material is of critical importance to FinApps' expert reports, and will require time to review and analyze. Further, numerous other miscellaneous discovery issues persist, related to among other things, multiple outstanding depositions, Defendants' failure to collect and produce emails for key witnesses from Envestnet's email domain, and Defendants' failure to provide entire categories of highly relevant financial information. Defendants' failure to abide by their discovery obligations has prejudiced FinApps, and in particular, its experts' ability to prepare their reports.

*Access to Development and Operational Systems – Competing Products*

4. On October 8, 2020, the Court ordered Defendants to facilitate FinApps' access to the Development and Operational Systems concerning Defendants' Competing Products (the "Oct. 8 Order"). (D.I. 165.) Pursuant to the Court's directives in the Oct. 8 Order, on October 16, 2020, the parties met and conferred to discuss how to provide FinApps with access to their Developmental and Operational Systems. (D.I. 172.) During this meet and confer, FinApps requested that Defendants identify all such Developmental and Operational Systems so that FinApps could request access to those most relevant to this case. *Id.*

5. On October 28, 2020, Defendants served Defendants' Description of Competing Products and Related First Supplemental Initial Disclosures (the "Supplemental Disclosures"), in which Defendants claimed to provide a "description and inventory of ***all Development and Operational Systems used in connection with the development, testing, QA/QC, demonstration, and/or production of the 'Competing Products***.'" (Ex. A at 3-4.) On November 5, 2020, FinApps requested remote access to various projects within the Development and Operational Systems identified by Defendants, which correspond to various Competing Products, including Snapshot 1.0, Snapshot 2.0, ICE, FastLink, RIServices, RIadapter, and Account Review. (Ex. B at 11-13.)

6. To date, Defendants have failed to facilitate FinApps' access to nearly *all* of the Development and Operational Systems, which Plaintiff has specifically requested, notwithstanding that Defendants identified them as having been used by the Competing Products that Defendants *also* identified. In fact, rather than facilitating such access – despite being under Court order to do so – Defendants opted to wait until November 24, 2020 to make a limited document production that is facially incomplete (just as FinApps warned Defendants it would be (Ex. B at 6, 9)), and which omits various attachments, screenshots, and other important material.

7. Specifically, Defendants refused to provide FinApps *any* form of access to their JIRA and Bugzilla systems, despite identifying these systems in their Supplemental Disclosures. Instead, Defendants insisted on making a limited document production based on an export of certain HTML and Excel reports from JIRA and Bugzilla, ignoring FinApps' repeated admonishments that this would not "provide an adequate substitute for remote access," because such exports would "omit key details, such as audit trails and attachments (*e.g.*, documentation, screenshots of Competing Products, specifications/requirements, release notes, other SDLC

3

artifacts), which contain highly relevant, essential information that is not available elsewhere, including HTML and Excel reports." (Ex. B at 6.)

8. Shortly thereafter, FinApps and its experts reviewed Defendants' production, and confirmed that, among other things, (i) Defendants failed to provide JIRA and Bugzilla data for all of the Competing Products or all of the relevant timeframe; and (ii) the exports Defendants did provide omitted numerous key attachments, documents, and screenshots, as well as other highly relevant materials contained in these systems, consistent with FinApps' prior warnings. (Ex. B at 2-3.) On December 1, 2020, FinApps raised these deficiencies with Defendants, who responded by purporting to "disagree that Defendants' discovery responses and/or productions are inadequate," without further explication. (*Id.* at 1.)

9. On December 1, 2020, Defendants purported to provide Plaintiff's expert with limited "customer level" access to certain portals and test data related to the development and testing of Snapshot 2.0 – a product with identical functionality to Risk Insight 2.0, and which multiple of Defendants' fact witnesses have testified was developed and deployed specifically to replace Risk Insight 2.0. The provided materials relate exclusively to Snapshot 2.0, however, and none of the other Competing Products. Further, even a cursory review of these materials confirms that they are inadequate, facially incomplete, and do not match the actual environments or data used to develop or test Snapshot 2.0 during the relevant time period, as confirmed by Defendants' own contemporaneous emails.

10. Notably, other than this limited and inadequate access to certain Snapshot 2.0 materials, Defendants have facilitated *absolutely no access whatsoever* to the other Development and Operational Systems identified in their Supplemental Disclosures. As FinApps explained to the Court in connection with the briefing that preceded the Oct. 8 Order, access to the Development

4

and Operational Systems associated with Defendants' Competing Products is critically important, and Defendants' delays have severely prejudiced FinApps' experts, preluding them from undertaking the analysis they need to perform to opine on Defendants' misconduct.

### *Access to Development and Operational Systems – Risk Insight 2.0*

11. In connection with its November 20, 2019 requests for production, FinApps requested information and data related to the Development and Operational Systems that interfaced with Risk Insight 2.0's AWS environments, which were owned and controlled by Yodlee (including Pingdom, Papertrail, and Cloud 66, among others). The data stored in these systems include access, activity, and other system logs documenting all activity executed within the various Risk Insight 2.0 environments, including activities related to Defendants' misconduct.

12. On August 12, 2020, after uncovering documents that appear to show that Defendants have cancelled the subscriptions to various Development and Operational Systems used in connection with Risk Insight 2.0 (including Pingdom, Papertrail, and Cloud 66) *after* the commencement of this litigation (Ex. C), FinApps sought and received Defendants' assurances, at a meet and confer, that such materials had been properly preserved prior to cancellation and would be provided to FinApps in due course. (Ex. D at 5.) In fact, at the meet and confer, Defendants' lead counsel expressly represented that all such materials had been "backed up." And, on August 17, 2020, in a memorialization of the August 12 meet and confer, Defendants further confirmed that "each of the Risk Insight operations servers and other services that interfaced with the Risk Insight AWS environments have been fully preserved and maintained by Yodlee during the pendency of the litigation." (*Id.* at 6.)

13. On November 3, 2020, however – less than eight weeks before the due date for opening expert reports – Defendants informed FinApps for the first time that "[a]s for Pingdom,

5

Papertrail, and Cloud 66, Yodlee does not have access to those databases since Yodlee stopped paying for those subscriptions," and suggested that FinApps "subpoena those parties directly." (Ex. E at 1.) As a result of Defendants' failure to preserve this critical evidence – or even timely inform FinApps of this failure – FinApps must now incur significant expense to seek this evidence directly from the relevant third-party providers.[1] This process is underway, but it will likely take weeks for the relevant data and information to be provided to FinApps, as well as significant time for FinApps' experts to review, analyze, and incorporate it into their report.

### *Access to Yodlee's AWS Environments and Related Data*

14. In addition to Development and Operational Systems data related to the Risk Insight 2.0 AWS environments, FinApps also requested access to each of the specific Risk Insight 2.0 environments hosted on Yodlee's AWS account (including without limitation Production, Demo, UAT, and Sandbox environments, or their functional equivalent), as well as any AWS logs related to or created, generated, or maintained in connection with Risk Insight 2.0 (including without limitation, audit logs, access logs, activity logs, system logs, and user logs). Among other things, access to these environments and the data and logs they contain will provide FinApps' experts with information concerning Defendants' misuse, misappropriation, and reverse engineering of Risk Insight 2.0, its components, and its proprietary technology in connection with Defendants' attempts to build Competing Products.

15. Despite multiple meet and confers on this subject since July 2020, however, Defendants have yet to produce *any* data related to Risk Insight 2.0's "lower" environments (*i.e.*, the UAT, Demo, and Sandbox environments), where FinApps believes significant misconduct

---

[1] FinApps intends to seek all costs and expenses incurred in issuing and serving these third-party subpoenas due to Defendants' failure to abide by their preservation obligations and refusal to seek the evidence themselves from the third-parties.

6

occurred. Further, the limited data that Defendants have produced relates solely to Risk Insight 2.0's Production environment and, in any event, lacks the critical system and activity logs that are central to FinApps' request, among other things.[2] Even if this material were made available promptly, it would still take months for FinApps' experts to review, analyze, and incorporate this material into their reports, further underscoring the need for a schedule extension.

### *Additional Discovery Deficiencies and Outstanding Depositions*

16. Numerous significant discovery issues in addition to those set forth above also persist, and also militate in favor of the amendments to the schedule sought by FinApps.

17. For example, at the outset of discovery, FinApps requested (and Defendants agreed) that, to the extent some or all of Defendants' custodians have both a Yodlee and an Envestnet email domain, both would be collected and searched in connection with FinApps' document requests. Defendants' document production to date, however, does not appear to contain *any* custodial emails for the Envestnet email domain associated with certain key custodians, including Stuart DePina, Brandon Rembe, Arun Anur, Tom Hemple, Bill Parsons, and Julie Solomon.

18. Similarly, entire categories of material documents appear to be missing from Defendants' document production, including but not limited to documents concerning (i) actual sales, revenues, profits, and related financial information for Risk Insight 2.0; (ii) projected sales, revenues, profits, and related financial information for Risk Insight 2.0; (iii) financial information related to professional services performed in connection with Risk Insight 2.0; (iv) actual sales,

---

[2] Defendants purport to have produced an "access log" associated with Risk Insight 2.0's Production environment, but this document merely comprises a list of users with credentials to access the system. Moreover, and inexplicably, Defendants provided only a single set of credentials for access to "CloudTrail," the AWS service that purportedly contains historical log files, and have expressly barred FinApps' experts from using such access, without any basis for doing so. (Ex. F at 1-2.) Defendants' recalcitrance is arbitrary, unreasonable, and has prevented FinApps' experts from performing a meaningful review of the Production environment.

revenues, profits, and related financial information for Defendants' Competing Products; and (v) projected sales, revenues, profits, and related financial information for Defendants' Competing Products. (Ex. H.) FinApps raised these deficiencies with Defendants on November 11, 2020, but Defendants have yet to provide a response. These documents are directly relevant to FinApps' damages (and FinApps' damages expert's report), and also will demonstrate the valuable nature of FinApps' trade secrets and Defendants' motivation for misappropriating them. Without such documents, FinApps has been, and continues to be, significantly prejudiced.

19. Further discovery issues impacting the schedule of this case relate to critical depositions of Defendants' witnesses, which also remain outstanding. Specifically, on November 6, 2020, FinApps served Notices of Rule 30(b)(6) Depositions on both Defendants. On November 24, 2020, Defendants unilaterally informed FinApps that they would "respond with objections and responses by December 14." (Ex. G at 1.) Given that it is highly likely the parties will need to meet and confer subsequent to the service of Defendants' responses and objections, and that Defendants have yet to disclose the identities or schedule of Defendants' designated witnesses, it will be several weeks before FinApps can depose Defendants' Rule 30(b)(6) witnesses.

20. Finally, as the Court is aware, FinApps has also requested leave to conduct an additional 50 hours of deposition discovery of Defendants' fact witnesses.[3]

21. On December 1, 2020, FinApps sought Defendants' consent to amend the schedule, to address outstanding discovery issues prior to the deadline for opening expert reports. (Ex. B at 2-3.) In response, Defendants expressly ignored the issues raised by FinApps, and instead offered a proposed schedule that fails to address any of the issues outlined by FinApps, and further fails to respond to the prejudice and other concerns raised by FinApps. In particular, Defendants'

---

[3] FinApps' request is scheduled to be heard by the Court on Monday, December 7, 2020.

8

proposed schedule provides insufficient time for the above issues to be resolved, and does not account whatsoever for the time it will take experts to analyze any of the aforementioned discovery for their reports. The parties met and conferred on December 3, 2020, and are now at an impasse.

## **ARGUMENT**

22. Pursuant to Fed. R. Civ. P. 16(b)(4), a scheduling order may be amended for good cause where the current schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *ICU Med. Inc. v. Rymed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009). Good cause "hinges on diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres v. SPI Pharma, Inc.*, No. 06-540-GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009). Here, FinApps meets this standard because, at all times, FinApps has acted with diligence, repeatedly seeking Defendants' compliance with discovery requests and deadlines, while promptly bringing issues to the Court when necessary. Meanwhile, Defendants have yet to articulate any prejudice stemming from the amendment FinApps seeks.

23. As described above, substantively wide-ranging discovery critical to FinApps' case remains outstanding. Across the board, however, Defendants have either refused to provide materials they are obligated to produce and in some cases have already agreed to provide, ignored FinApps' requests for such materials, or failed to respond to the litany of deficiencies articulated by FinApps over the course of months.

24. Moreover, even after all of the outstanding discovery discussed above is completed, FinApps' experts will require sufficient time to review and analyze the discovery for incorporation into their expert reports. Each of the discovery issues described above (let alone all of them taken together) is independently sufficient to warrant the amendment requested here. Discovery in this matter is now several months behind where it should be. Even the most extraordinary of efforts

would not permit the parties to meet either the existing expert discovery deadline or Defendants' proposed amended deadline.

25. FinApps has exercised all reasonable diligence in seeking this extension. As soon as FinApps learned of Defendants' refusal to provide crucial discovery in time for its use in FinApps' opening expert reports, counsel inquired about a stipulated extension. (Ex. B at 2-3.) When Defendants refused (*id.* at 1-2), FinApps promptly prepared and filed this motion.

26. Prior extensions of the case schedule by stipulation leave no remaining space to accommodate the additional months needed to complete fact discovery and allow for an orderly exchange of expert reports. As a result, maintaining the current Scheduling Order would severely prejudice FinApps, especially given that it is Defendants' own discovery issues and delays that have precluded the parties from meeting the remaining deadlines in the current Scheduling Order.

## CONCLUSION

WHEREFORE, FinApps respectfully requests that the Court grant this Motion and enter the proposed Amended Scheduling Order attached hereto.

<table>
<tr><td>

Dated: December 4, 2020

*Of Counsel*:

Marc E. Kasowitz
Matthew A. Kraus
A. Macdonald Caputo, Jr.
Joshua E. Hollander
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
mkasowitz@kasowitz.com
mkraus@kasowitz.com
acaputo@kasowitz.com
jhollander@kasowitz.com

</td><td>

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

*/s/ Pilar G. Kraman*
C. Barr Flinn (No. 4092)
Emily V. Burton (No. 5142)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
(302) 571-6600
bflinn@ycst.com
eburton@ycst.com
pkraman@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff FinancialApps, LLC*

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, Esquire, hereby certify that on December 14, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered participants.

I further certify that on December 14, 2020, I caused the foregoing document to be served by e-mail on the following counsel of record:

>Henry E. Gallagher, Jr.
>Lauren P. DeLuca
>CONNOLLY GALLAGHER LLP
>1201 North Market Street, 20th Floor
>Wilmington, DE 19801
>hgallagher@connollygallagher.com
>ldeluca@connollygallagher.com
>
>Gary M. Miller
>Gary M. Elden
>Hugh A. Abrams
>Amy Y. Cho
>Ian M. Hansen
>SHOOK, HARDY & BACON, L.L.P.
>111 S. Wacker Drive, Suite 4700
>Chicago, IL 60606
>gmiller@shb.com
>gelden@shb.com
>habrams@shb.com
>acho@shb.com
>ihansen@shb.com
>
>Jason M. Richardson
>SHOOK, HARDY & BACON, L.L.P.
>One Montgomery Street, Suite 2600
>San Francisco, CA 94104
>jmrichardson@shb.com
>
>*Attorneys for Defendants, Envestnet, Inc. and Yodlee, Inc.*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Pilar G. Kraman*
C. Barr Flinn (No. 4092)
Emily V. Burton (No. 5142)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
bflinn@ycst.com
eburton@ycst.com
pkraman@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff FinancialApps, LLC*

24864483.1