# EXHIBIT A REDACTED IN ITS ENTIRETY

# EXHIBIT B

| | |
|---|---|
| **From:** | Cho, Amy (SHB) <ACHO@shb.com> |
| **Sent:** | Wednesday, December 2, 2020 5:47 PM |
| **To:** | Anthony MacDonald Caputo |
| **Cc:** | 'PKraman@ycst.com'; 'Vrana, Robert'; Miller, Gary M. (SHB); Abrams, Hugh (SHB); Hansen, Ian (SHB); Richardson, Jason M. (SHB); 'Lauren DeLuca'; Elliana Openshaw; Joshua Marks; Joshua E. Hollander; Matthew A. Kraus; Elden, Gary (SHB) |
| **Subject:** | FA v. Yodlee - Stipulation to Amend Schedule |
| **Attachments:** | Proposed Amended Deadlines.docx; REDLINE Schedule.pdf |

Hi Mac,

We disagree that Defendants' discovery responses and/or productions are inadequate and have addressed those issues in other communications with Matt and Josh.  I respond only to your request to stipulate to an amended schedule.

We agree that some extension of the current discovery makes sense, but we oppose to any delay of the trial date.

We have a counter-proposal which should simplify the case for the judge, reduce costs and length of trial, and solve current scheduling issues that you have raised.  We suggest phasing the case under Fed. R. Civ. P. 42(b).  We are open to discussing the exact procedures but we think the attached schedule would work and ask for your comments on it.

1. First, the court tries the FA liability issue and determines what information is protectable as confidential under the agreements, as a trade secret or otherwise and decides the related questions as to whether there was a breach of the limitation on competing products.   If FA wanted to add other issues at this phase we would be open to discussing that.
2. As to items held protectable, the next question is whether the items were stolen, taken by reverse engineering, or otherwise improperly taken.   To the extent evidence on this issue needed to be adduced in the first phase it would be and not repeated in this phase, but some evidence would only be relevant if a specific item of information was held protectable in phase 1.  For example, suppose FA claims 12 items are protectable and that each side prevails on 6.   Then in phase 2, there would be no need to hear evidence on half the items.  In the event nothing was held protectable, there would be no need for phase 2.  It would make sense for the defamation count to be tried during this phase as well (i.e., whether Mr. Kasowitz's statements were truths or lies).
3. We then could try all remaining issues (breach of contract, etc.)
4. The last phase would involve damages.  Doing this would mean that we could defer damages experts.  In addition not only the trial but the discovery for this phase would be lessened by the results in the prior phases.  For example, assume that of 6 protectable items of information established by phase 1, there was a finding each way on 3 as to whether the item was improperly obtained.   Now work on damages discovery and the length and complexity of trial would be again cut in half.

Again, this is just a proposal for phasing and we are open to any other phasing suggestions FA has.  To make this work most efficiently, if the Court approves, both sides would submit proposed findings and conclusions before each phase and consent to the court entering the Court's findings and conclusions if the Court wishes to do so.   To the extent the Court could do this during or shortly after the phase ends, the next phase could occur soon afterwards with perhaps some discovery in between.

An advantage of proceeding this way is that it would give the parties multiple opportunities, after each phase, to see if they could settle the remaining issues.

If we proceed this way it could solve or moot some of your present discovery and schedule issues.   Indeed we would be agreeable to a single stipulation adopting phasing and dealing with all your issues.

We look forward to discussing scheduling and phasing tomorrow.

Amy

**From:** Anthony MacDonald Caputo <ACaputo@kasowitz.com>
**Sent:** Tuesday, December 1, 2020 8:44 AM
**To:** Cho, Amy (SHB) <ACHO@shb.com>
**Cc:** 'PKraman@ycst.com' <PKraman@ycst.com>; 'Vrana, Robert' <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; 'Lauren DeLuca' <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>; Matthew A. Kraus <MKraus@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

**EXTERNAL**

Amy-

We write to address the status of the numerous outstanding discovery issues to date, and to seek Defendants' agreement regarding amending the case schedule, so that these and other discovery issues can be properly addressed.

First, we have reviewed Defendants' November 24, 2020 production of materials related to the Development and Operational Systems used in connection with Competing Products, but this production is inadequate.

Specifically, as set forth in Defendants' Supplemental Disclosures (D.I. 207), and further confirmed by both Defendants' documents and testimony from Defendants' fact witnesses, JIRA was used in connection with the Competing Product Snapshot 2.0 and/or SnapShot Services, and Defendants' documents indicate that JIRA was also used in connection with RIAdapter and Account Review.  Defendants' production, however, only contains JIRA data related to the Risk Insight Embedded UI project, and the Equifax VOA/MVP project.

Similarly, Defendants' Supplemental Disclosures (D.I. 207), as well as documents and witness testimony, also confirm that Bugzilla was used in connection with the Competing Products Fastlink, Snapshot 2.0, ICE, and Account Review.  Defendants' production, however, only contains Bugzilla data related to Snapshot 1.0.  Further, the Bugzilla data Defendants have produced only covers the period from the 11/21/2015 to 11/14/2017, which of course omits the vast majority of timeframe relevant to this case.

In addition, and as predicted, your export of HTML and Excel data associated with JIRA, Bugzilla, and Confluence confirms that numerous key attachments, documents, and screenshots, as well as other highly relevant materials are contained in these systems but have been omitted from the production.  Access to all such attachments and documentation must be provided to FinApps and its experts in accordance with the Court's October 8 order, and Defendants' continued delay in facilitating such access is causing FinApps and its experts substantial prejudice, by hindering their ability to assess Defendants' misconduct.

Further and in any event, to date Defendants have not facilitated any form of access whatsoever to the other Development and Operational Systems identified in their Supplemental Disclosures and expressly requested

by FinApps on Nov. 5, 2020.  FinApps' inability to access this information is also severely prejudicial to FinApps' experts.

Second, Defendants' delay in providing FinApps with meaningful access to the AWS systems on which Risk Insight operated has also severely prejudiced FinApps.  In particular, Defendants have only agreed to provide a single set of credentials for FinApps to use, and have expressly barred FinApps' experts from such access.  Moreover, the access that Defendants have agreed to provide has been fraught with issues, and as of the time of this writing, only extends back 90 days (and does not include any portion of the relevant timeframe in this matter).

Third, and relatedly, on or around August 12, 2020, the parties held a meet and confer at which, among other things, FinApps raised questions concerning Defendants' preservation of Development and Operational Systems associated with Risk Insight, which appeared to have been decommissioned.  In response to that concern, Gary Miller gave his express assurance that all relevant information had been adequately preserved, and that Defendants had "backed everything up."  On November 3, 2020, however, almost three months later, and less than two months before the due date for expert reports, Defendants informed FinApps that Defendants did not preserve this information, do not have copies of it or access to it, and suggested that FinApps seek the information directly from the third parties that provide these services.  This process is under way, but will of course take additional time.

Fourth, a host of other miscellaneous issues also affect Defendants' productions thus far, including without limitation, Defendants' apparent failure to collect or produce envestnet.com email accounts for key witnesses (including but not limited to Stuart DePina and Brandon Rembe), Defendants' apparent failure to produce highly relevant documents identified during depositions, and the fact that Defendants have yet to respond to FinApps' 30(b)(6) notices.

All of the foregoing has severely prejudiced FinApps, and in particular, its experts.  Given the amount of highly relevant discovery that remains outstanding, and the fact that FinApps' experts require sufficient time to properly review, assess, and analyze much of this outstanding discovery in connection with their expert reports, we propose the attached modifications to the schedule in this case.  The proposed amended schedule will also correct the order of certain deadlines (*i.e.*, providing for expert discovery after the close of fact discovery).

Please note that while FinApps would prefer to stipulate to an amended schedule, in light of the deadline to amend pleadings on Friday, and the upcoming deadline for opening expert reports, FinApps will have no choice but to move the Court on Friday if the parties cannot reach an agreement.

Please advise us as to your availability for a meet and confer on this matter today, tomorrow, or Thursday.

Thanks

Anthony MacDonald Caputo
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel.  (212) 506-3302
Fax. (212) 500-3572
ACaputo@kasowitz.com

**From:** Cho, Amy (SHB) [mailto:ACHO@shb.com]
**Sent:** Tuesday, November 24, 2020 6:03 PM
**To:** Matthew A. Kraus <MKraus@kasowitz.com>
**Cc:** 'PKraman@ycst.com' <PKraman@ycst.com>; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; 'Vrana, Robert' <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; 'Lauren DeLuca' <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

Attached is the production of exports from JIRA, Bugzilla, and Confluence, which is referenced below.  We will provide customer-level access as described below.  First, we need your agreement that you will only share this information with your expert and no one else.

**From:** Cho, Amy (SHB)
**Sent:** Tuesday, November 24, 2020 11:59 AM
**To:** Matthew A. Kraus <MKraus@kasowitz.com>
**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <gmiller@shb.com>; Abrams, Hugh (SHB) <habrams@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <jmrichardson@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

Matt,

Again, you misstate the parties' prior conversations.  The parties have long since agreed that access to each other's *source codes* would be reciprocal.  As we have previously told you, not being satisfied with the form of our production does not allow you to unilaterally withhold responsive material and we reserve all rights on that matter.  If we are at an impasse on this issue, please let us know so that we can tee up a motion.

Again, we ask you for access to FA's Aha! System and propose a plan pursuant to the separately-negotiated source code to produce FA's source code in GitHub.  Simply because it is subject to a separately-negotiated protocol does not mean that you can dictate the order of the parties' productions and defer the issue indefinitely.  If we are also at an impasse on this issue, please let us know so that we can tee up a motion

If you are willing to provide a meaningful response to the above, we remain willing to engage in a meet and confer on all issues.

Amy

**From:** Matthew A. Kraus <MKraus@kasowitz.com>
**Sent:** Monday, November 23, 2020 11:32 AM
**To:** Cho, Amy (SHB) <ACHO@shb.com>
**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks

**Ex. B Page 4 of 14**

<JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures


**EXTERNAL**

Amy,

This is fairly straight-forward.  We are requesting that Defendants comply with the Court's October 8, 2020 (the "Oct. 8 Order") and facilitate access to the Development and Operational Systems for Defendants' Competing Products, as further stated in my November 5 email.  To date, Defendants have steadfastly refused to comply with the Oct. 8 Order.

As you well know, the parties have long since agreed that access to each other's Development and Operational Systems would be reciprocal.  We have been prepared since early July 2020 to provide Defendants with access to FinApps' Aha! system, and remaining willing to do so, once Defendants have provided FinApps with reciprocal access to the their Development and Operational Systems in accordance with the Oct. 8 Order.

As you are also aware, GitHub is a repository used to store FinApps' source code.  Access to this repository also must be reciprocal with Plaintiff's access to Defendants' source code of its Competing Products, and be made pursuant to the parties' separately-negotiated source code protocol.  We will not entertain any such discussions, however, unless and until FinApps is first provided with access to the Development and Operational Systems identified in my prior correspondence and FinApps' experts have had the opportunity to conduct a meaningful review of such systems.

As stated in my prior email, I believe the parties are at impasse with respect to Defendants' compliance with the Court's Oct. 8 Order, and request that we conduct a meet and confer tomorrow, so that we can promptly bring this dispute to the Court's attention.  Please let me know if you are available for a telephonic meet and confer tomorrow between 11am and 2pm est.


Regards,
Matt

---

**From:** Cho, Amy (SHB) [mailto:ACHO@shb.com]
**Sent:** Monday, November 23, 2020 9:08 AM
**To:** Matthew A. Kraus <MKraus@kasowitz.com>
**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

Matt,

There is a history in this litigation of you and your colleagues demanding information without providing answers to our questions.  The latest example is as follows: We asked you multiple times (at least twice in this chain alone) to propose a plan (that is amenable to FA), which allows Yodlee access to FA's GitHub and Aha! Accounts.  While we understand that you believe the issues are separate, we disagree.  We have repeatedly tried to work with you in good faith to get the information you think you need to pursue your claims, but the "meet and confer" process must be reciprocal.  To that end, once we get your proposal, we are happy to schedule a meet and confer with you.

Amy

**From:** Matthew A. Kraus <MKraus@kasowitz.com>
**Sent:** Friday, November 20, 2020 2:36 PM
**To:** Cho, Amy (SHB) <ACHO@shb.com>
**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

**EXTERNAL**

Amy,

Your client does not get to dictate or pre-approve the "conditions" under which it will comply with a federal court order.

We have informed you repeatedly, including in this email chain, what information will be missing from your "proposed export of materials to Excel."  Specifically, and for the avoidance of doubt, on Nov. 13, I informed you that "we require remote access, because, as we informed you previously, there is no way to export complete data sets from any of these systems."  I also informed you that we "discussed this issue further with our experts, and . . . confirmed [that] neither HTML nor Excel reports will provide an adequate substitute for remote access," because "[a]mong other reasons, HTML and Excel reports omit key details, such as audit trails and attachments (*e.g.*, documentation, screenshots of Competing Products, specifications/requirements, release notes, other SDLC artifacts), which contain highly relevant, essential information that is not available elsewhere, including HTML and Excel reports."

You have provided no substantive response to these issues, and now "suggest" that FinApps expend extensive time and resources to have our experts identify deficiencies we have already explained to you will be present in your production.  **Please be advised** that if Defendants force FinApps to incur costs to identify deficiencies in Defendants' production that we have already warned you are present, we will seek appropriate costs in connection with such work when we seek intervention from the Court  concerning Defendants' noncompliance with the Court's clear directives.  If Defendants wish to proceed in this fashion, then please make the production immediately, but as we have repeatedly informed you, such materials are not an adequate substitute for remote access, and our request for such access in accordance with the Court's October 8 Order remains outstanding.

Further, it was incumbent on you to work with your clients to determine how to facilitate access for FinApps and its experts to the Development and Operational Systems identified in Defendants' Supplemental Disclosures.  Your continuing refusal to do so demonstrates Defendants' profound noncompliance with the Court's October 8 Order.

Please let us know if you are available between 11am and 2pm EST on Tuesday,  November 24, to have a telephonic meet and confer on this issue.

Regards,
Matt

**From:** Cho, Amy (SHB) [mailto:ACHO@shb.com]
**Sent:** Thursday, November 19, 2020 12:16 PM
**To:** Matthew A. Kraus <MKraus@kasowitz.com>
**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB)

<ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

Matt,

We remaining willing to work with you to provide access to materials for your experts (not FA employees, such as Mr. Priegues) on conditions that have been approved by our client, such as the proposed export of materials to Excel. We would suggest that you review those materials and then let us know what further, limited information is needed, and we will make the appropriate inquiries with our client to see whether further access can be accommodated for that limited information. Nevertheless, we agree that we are at an impasse with regard to your insistence upon complete, immediate access to private networks of Yodlee in an manner that would be in violation of security provisions that are in place for Yodlee's on-going business.

Amy

**From:** Matthew A. Kraus <MKraus@kasowitz.com>
**Sent:** Wednesday, November 18, 2020 3:50 PM
**To:** Cho, Amy (SHB) <ACHO@shb.com>
**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

**EXTERNAL**

Amy,

The Court was clear in its October 8, 2020 Order that Defendants are required to facilitate Plaintiff's access to their Development and Operational systems for their Competing Products.  Despite our numerous requests for the facilitation of such access, Defendants have refused to provide it, nor have Defendants provided any reasonable basis for the access limitations on which they insist.   Your email below is a simple rehash of your November 11 email, and fails to address any of the issues, questions, or concerns raised in my November 13 email, particularly with respect to the fact that Excel and HTML exports from JIRA, Bugzilla, and Confluence not an adequate substitute for remote access to such systems (an issue we explained to you over a month ago in my October 15 correspondence).

Accordingly, it appears that we are at an impasse, and need to schedule a meet and confer before requesting further judicial intervention concerning Defendants' noncompliance with the Court's October 8 Order.  We propose scheduling a call for Friday, after Mr. Dvorkin's deposition, or between 11am and 2pm EST on Tuesday.  Please let us know what works for you.

Regards,
Matt

**From:** Cho, Amy (SHB) [mailto:ACHO@shb.com]
**Sent:** Tuesday, November 17, 2020 4:04 PM
**To:** Matthew A. Kraus <MKraus@kasowitz.com>

7

**Ex. B Page 7 of 14**

**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

Matt,

As an initial matter and contrary to your assertion, the judge did not rule that we must facilitate access to all of the listed databases.  The Court said that "some form of access" was warranted and that "the Court does not have enough information to determine the particulars with regard to such access, such as, for example, what form the access should take, or how it should be accomplished, or what safeguards should be in place, or what limits should be placed on such access."

In the abstract, it's difficult and burdensome for our client to allow unfettered access into these databases due to the bank-level security of most of this.  My suggestion is as follows:

1. We will provide your expert with the information we can gather quickly and provide you this week (highlighted items (1)-(3) after ** below).
2. After you or your expert look at that information, FA's counsel should, in good faith, narrow their requests in a way that is proportional to the needs of the case.
3. Negotiate in conjunction with the source code anything that is remaining as to (2).  As I have repeatedly stated, although this information may not include "source code," we cannot give FA employees, including Cesar, unfettered access and must follow the processes set forth in the stipulated P.O.  We believe this incremental approach will allow parties to transfer information in a secure and proportional way.

Finally, we can no longer delay access to FA's source code. We've asked for multiple meet and confers on this issue.  We ask that *by Friday*, you propose a plan that is amenable to FA in which Yodlee can access FA's GitHub and Aha! accounts.  As you know, the expert discovery deadline is quickly approaching.  We disagree that any extension to the discovery deadline is warranted.

Amy

***

1. For things in JIRA, Bugzilla, and Confluence, we are able to produce exports (either Excel or html).  Someone from your side can use the readable Excel, html in a format that is convenient for him/her.
2. For things in MongoDB, Swagger, and DAG, we can give you customer-level access through login information, etc. For example, we can give access to various applications, portal and API end points wherever possible.  We will provide URLs and login credentials.  There will not be direct access to servers.  There will be no direct access to Mongo DB.  You will be able to review the data stored in the DB through API and Applications.  For Snapshot 1.0, there is no standalone Yodlee environment, so we can't give you access to that.  For Snapshot 2.0, we have active demo URLs and will be able to give you most of those components.  For RI Adaptor, there is no active working environment as this relied on connectivity to FA API end point, which has now been brought down.  If you want access to that, we'll need help from FA to bring up the API end point.
3. Anything else involves source code-type confidential information that needs to be negotiated as part of the source code negotiation.  Related, we need you to provide FA's source code, which you have represented is in GitHub and ready to go.  And for anything in AWS, until FA "unseals the vault" (per FA witnesses), our access to some information is limited.

**From:** Matthew A. Kraus <MKraus@kasowitz.com>
**Sent:** Friday, November 13, 2020 7:44 PM
**To:** Cho, Amy (SHB) <ACHO@shb.com>
**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

**EXTERNAL**

Amy,

First, as we have explained numerous times, FinApps is not requesting "unfettered access" to Defendants' databases, as you incorrectly claim.  FinApps is merely requesting that you facilitate access to Defendants' Development and Operational Systems for its Competing Products, pursuant to the Court's October 8, 2020 Order.  Specifically, on November 5, following the submission of Defendants' Supplemental Disclosures, we provided Defendants with a comprehensive list of the specific systems and projects to which FinApps was seeking access.  We reiterate our request that Defendants facilitate access to all such systems and projects in accordance with the Court's Order.

Second, with respect to JIRA, Bugzilla, and Confluence, we require remote access, because, as we informed you previously, there is no way to export complete data sets from any of these systems.  We discussed this issue further with our experts, and we have confirmed neither HTML nor Excel reports will provide an adequate substitute for remote access.  Among other reasons, HTML and Excel reports omit key details, such as audit trails and attachments (*e.g.*, documentation, screenshots of Competing Products, specifications/requirements, release notes, other SDLC artifacts), which contain highly relevant, essential information that is not available elsewhere, including HTML and Excel reports.  Accordingly, FinApps will need remote access to JIRA, Bugzilla, and Confluence, and we request that Defendants facilitate such access immediately.  Please also provide FinApps with remote access to Open Air, as it appears it was omitted from your prior email.

Third, with respect to MongoDB, Swagger, and DAG, customer-level access through login information may be acceptable, provided that such access (i) allows for full-read access to all collections in MongoDB, and (ii) provides FinApps with access to all DAG accounts used for testing the Competing Products, including RIServices.  Please confirm that customer-level access will provide FinApps with such accessibility.  With respect to RI Adapter, please provide us with an inventory of what data and information has been preserved by Yodlee, and in what environment, if any, such data and information is located.

Fourth, your statement that "[access to] anything else involves source code-type confidential information that needs to be negotiated as part of the source code negotiation" is both puzzling and incorrect.  As we have made clear to Defendants, FinApps' request for access to Defendants' Development and Operational Systems expressly excludes source code.  For the avoidance of doubt, we are not requesting access to any "source code" in connection with our requests concerning the Development and Operational Systems (nor have we ever, at any point).  Instead, as we have explained to you repeatedly, we are seeking access to Developmental and Operational Systems, including any relevant environments, so that we can examine the data that is generated in these systems by virtue of their use.  It is simply a different concept than "source code."  Your attempt to conflate the parties' reciprocal exchange of source code with Defendants' facilitation of access to its Development and Operational Systems is improper and prejudicial to FinApps' ability to prosecute its case.  Defendants must facilitate access to their Development and Operational Systems so that FinApps can then review the data and information stored therein before the parties can discuss source code access.

Moreover, to the extent that any of the data or information contained in Defendants' Development and Operational systems is sensitive or requires additional protection, Defendants are free to designate it as "Highly Confidential" pursuant to the Protective Order governing this case, which is extremely robust.  Thus, in accordance with the Court's October 8 Order, please facilitate access to the following Development and Operational Systems as soon as possible: (i) QA/test environments (including all such environments used in connection with the execution of Postman scripts); and (ii) Any non-code data/repositories on JBOSS servers.

Fifth, per my November 5 email, FinApps made additional requests for access to a number of items identified in Defendants' Supplemental Disclosures specifically related to certain competing products, including but not limited to ICE, FastLink, Snapshot 1.0, and Snapshot 2.0.  Please confirm that you will facilitate access to all such identified items as well.

Sixth, your assertion that until FinApps "unseals the vault," Defendants' access to some AWS information is "limited," is not accurate.  To be clear, "sealing the vault" does not affect or restrict Yodlee's access to the AWS environments.  Yodlee has always been, and remains, the owner of the AWS account, and should be able to obtain whatever access it needs.  Further, we have confirmed that Yodlee was provided with the "keys" to the Vault service, and therefore, should have the ability to "unseal the vault" at any time, to the extent that it has not already been "unsealed."

Finally, more than four months have passed since Defendants initially agreed to provide FinApps with access to the Development and Operational Systems for their Competing Products, and more than 5 weeks have elapsed since the Court ordered Defendants to facilitate such access.  Defendants' unjustified delay in providing FinApps such access is significantly prejudicing FinApps' ability to prosecute its case, and in particular, FinApps' experts' ability to prepare their reports.  Accordingly, please be advised that Defendants' delay, and the prejudice it has caused (and will continue to cause) will likely necessitate further modifications to the current schedule with the Court.

FinApps reserves all rights and waives none.

Regards,
Matt

---

**From:** Cho, Amy (SHB) [mailto:ACHO@shb.com]
**Sent:** Wednesday, November 11, 2020 1:42 PM
**To:** Matthew A. Kraus <MKraus@kasowitz.com>
**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

**\*\*EXTERNAL EMAIL\*\***

---

Matt, et al.

I just realized I replied to the wrong string.  Sorry.  You may delete my last two emails.  Below is the same response (copied and pasted) so that we can keep track of this string separately.

Due to the bank-level security of most of these databases, we cannot give you unfettered access.  This is what we can do:

1. For things in JIRA, Bugzilla, and Confluence, we are able to produce exports (either Excel or html).  Someone from your side can use the readable Excel, html in a format that is convenient for him/her.

2. For things in MongoDB, Swagger, and DAG, we can give you customer-level access through login information, etc. For example, we can give access to various applications, portal and API end points wherever possible.  We will provide URLs and login credentials.  There will not be direct access to servers.  There will be no direct access to Mongo DB.  You will be able to review the data stored in the DB through API and Applications.  For Snapshot 1.0, there is no standalone Yodlee environment, so we can't give you access to that.  For Snapshot 2.0, we have active demo URLs and will be able to give you most of those components.  For RI Adaptor, there is no active working environment as this relied on connectivity to FA API end point, which has now been brought down.  If you want access to that, we'll need help from FA to bring up the API end point.

3. Anything else involves source code-type confidential information that needs to be negotiated as part of the source code negotiation.  Related, we need you to provide FA's source code, which you have represented is in GitHub and ready to go.  And for anything in AWS, until FA "unseals the vault" (per FA witnesses), our access to some information is limited.

If this is acceptable to you, we can start with items 1 and 2.  For 3, we should schedule time to meet and confer with our experts.  Please propose some times next week.

Amy

---

**From:** Matthew A. Kraus <MKraus@kasowitz.com>
**Sent:** Thursday, November 5, 2020 9:46 AM
**To:** Cho, Amy (SHB) <ACHO@shb.com>
**Cc:** PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Joshua E. Hollander <JHollander@kasowitz.com>
**Subject:** FA v. Yodlee - Description of Competing Products and Related First Supplemental Initial Disclosures

**EXTERNAL**

Amy,

I write concerning Defendants' Description of Competing Products and Related First Supplemental Initial Disclosures dated October 28, 2020 (the "Supplemental Disclosures"), which purport to provide a "description and inventory of all Development and Operational Systems used in connection with the development, testing, QA/QC, demonstration, and or production of the 'Competing Products.'"

The Supplemental Disclosures raise numerous questions, contain material internal inconsistencies, and lack sufficient detail concerning the descriptions and inventories provided therein.  Although we will subsequently address those and related issues under separate cover, in the interest of time, we request immediate access to the Development and Operational Systems identified in the Supplemental Disclosures.

Specifically, Plaintiff requests remote access to:

1. Jira, for all projects related to the following:
    a. Snapshot 1.0 (including Snapshot Services APIs)

    b.   Snapshot 2.0 (including Snapshot API Services, Portals, FastLink PDF Generator, Swagger, etc. and any products developed for, or in connection with, Equifax)

    c.   ICE

    d.   FastLink (including FastLink APIs)

    e.   RIServices (*See*, e.g., YOD01859705)

    f.   RIAdapter (*See*, e.g., YOD00742776)

    g.   Account Review

2. <u>Bugzilla, for all projects related to the following</u>:
   a. Snapshot 1.0 (including Snapshot Services APIs)
   b. Snapshot 2.0 (including Snapshot API Services, Portals, FastLink PDF Generator, Swagger, etc. and any products developed for, or in connection with, Equifax)
   c. ICE
   d. FastLink (including FastLink APIs)
   e. RIServices
   f. RIAdapter
   g. Account Review

3. <u>MongoDB, for all projects related to the following</u>:
   a. Snapshot 1.0 (including Snapshot Services APIs)
   b. Snapshot 2.0 (including Snapshot API Services, Portals, FastLink PDF Generator, Swagger, etc. and any products developed for, or in connection with, Equifax)
   c. Account Review

4. <u>QA/test environments (including all such environments used in connection with the execution of Postman scripts), for all projects related to the following</u>:
   a. Snapshot 1.0 (including Snapshot Services APIs)
   b. Snapshot 2.0 (including Snapshot API Services, Portals, FastLink PDF Generator, Swagger, etc. and any products developed for, or in connection with, Equifax)
   c. ICE
   d. FastLink (including FastLink APIs)
   e. RIServices
   f. RIAdapter

5. <u>DAG/IQBank test data (including all Postman test scripts), for all projects related to the following</u>:
   a. Snapshot 1.0 (including Snapshot Services APIs)
   b. Snapshot 2.0 (including Snapshot API Services, Portals, FastLink PDF Generator, Swagger, etc. and any products developed for, or in connection with, Equifax)
   c. ICE
   d. FastLink (including FastLink APIs)
   e. RIServices
   f. RIAdapter

6. <u>Open Air, for all projects related to the following</u>:
   a. Snapshot 1.0 (including Snapshot Services APIs)
   b. Snapshot 2.0 (including Snapshot API Services, Portals, FastLink PDF Generator, Swagger, etc. and any products developed for, or in connection with, Equifax)
   c. ICE
   d. FastLink (including FastLink APIs)
   e. RIServices
   f. RIAdapter
   g. Account Review

7. Confluence, for all projects related to the following:
    a. Snapshot 1.0 (including Snapshot Services APIs)
    b. Snapshot 2.0 (including Snapshot API Services, Portals, FastLink PDF Generator, Swagger, etc. and any products developed for, or in connection with, Equifax)
    c. ICE
    d. FastLink (including FastLink APIs)
    e. RIServices
    f. RIAdapter
    g. Account Review

8. Swagger, including access to the relevant API documentation portal and swagger YAML files, for all projects related to the following:
    a. Snapshot 1.0 (including Snapshot Services APIs)
    b. Snapshot 2.0 (including Snapshot API Services, Portals, FastLink PDF Generator, Swagger, etc. and any products developed for, or in connection with, Equifax)
    c. ICE
    d. FastLink (including FastLink APIs)
    e. RIServices
    f. RIAdapter
    g. Account Review

9. Any non-code data/repositories on JBOSS servers, for all projects related to the following:
    a. Snapshot 1.0 (including Snapshot Services APIs)
    b. Snapshot 2.0 (including Snapshot API Services, Portals, FastLink PDF Generator, Swagger, etc. and any products developed for, or in connection with, Equifax)
    c. ICE
    d. FastLink (including FastLink APIs)
    e. RIServices
    f. RIAdapter
    g. Account Review

Additionally, Plaintiff further requests access to the following:
- With respect to ICE, the (i) "automated testing framework," (ii) "version of ICE [that] was released by Olga Amaya on March 7, 2018," (iii) "Amazon Redshift" projects, and (iv) "QA Endpoint" projects, as referenced in the Supplemental Disclosures;
- With respect to FastLink (including FastLink APIs), all "Microsoft Word" documents that "plan, track, and manage the project and roadmap," as referenced in the Supplemental Disclosures;
- With respect to Snapshot 2.0, the "Yodlee Stage systems," including but not limited to the "Snapshot FastLink, Snapshot API Services, Snapshot PDF Generator, Snapshot Support Portal, Swagger, the Snapshot POC Portal and the Snapshot Sales Demo Portal," as referenced in the Supplemental Disclosures; and
- With respect to Snapshot 1.0 and Snapshot 2.0, documentation and configurations for "Backbone.JS" and "Node.JS" server applications as referenced in the Supplemental Disclosures.

Finally, Plaintiff requests that Defendants provide a complete inventory for all of Yodlee's JIRA and Bugzilla projects, so that Plaintiff can ensure that it has been provided with access to all relevant projects that used these systems.

Given the technical nature of accessing the above-listed Development and Operational Systems, we propose that the parties schedule a call with Plaintiff's experts to facilitate such access.  Please let us know your availability for this call.  Thanks.

Regards,

**Ex. B Page 13 of 14**

Matt

Matthew A. Kraus
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1814
Fax. (212) 835-5214
MKraus@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

**Ex. B Page 14 of 14**

# EXHIBIT C

| From: | Katie McCarthy |
|---|---|
| Sent: | Monday, July 29, 2019 10:44 PM GMT |
| To: | Neil Perrelli; Tim Thai; Neha Pande; Mokrala Phani Ram; Deepak Malik; Vijay Arcot; Jeff Schulte; Veeraraghavulu Akkari; Vikram Ghattamaraja Rao; Ganesh Mani; Adinarayana Setty Grandim Sreenath; Manohar Nayak; Kirti Kumar; Francois Hedouin; Lakshminarayanan Swamy Iyer; Saran Makam; Nagarajan Nemmara Raman |
| Subject: | RE: Credit Insights AWS/3rd party Decommissioning |

Thank you for joining the call today. Please find latest status below.

Cost reductions:
AWS Stage account: est $4440 (daily run rate reduction $202 → $54)
AWS Production Account: est $9180 (daily run rate reduction $400 → $94)
Freshdesk: $2360
Papertrail: $395
Pingdom: $89.95
Atlassian: $480
Total Savings so far: ~$17K/mo

Meeting Notes:

| Description | Owner | Comments | Estimated Date | Status |
|---|---|---|---|---|
| All stage environment AWS instances can be terminated | Veera | *Done. The 1st attachment has all the details.* | 7/24/19 | DONE |
| All production AWS EC2 instances that are run-time only and have no persistent data can be terminated | Veera | *Done. The 2nd attachment has all the details .* | 7/23/19 | DONE |
| EC2 instances that are required for accessing data can be stopped and kept available for restart for future data access requirements | Veera to send a list of all instances to Katie | *Done. The 2nd attachment has all the details. Instances are marked in yellow.* | 7/23/19 | DONE |
| Customer and report data need to be backed up and made readily available for future customer inquiries.  This includes: Reports/data on S3 MongoDB Key Vault data | Veera to do research on what is stored in S3 | *S3 has both orders(reports) and application logs (API, portals, Embedded rails, etc)* Katie will determine next steps on deletion of logs or other unnecessary data | 7/23/19 | DONE |
| Shutdown server, delete EC2 instance. No backup required - 10.18.2.13 – Secondary | Neha/Balaji | | 7/31/19 | Not Started |
| Shutdown server, delete EC2 instance. No backup required - 10.18.2.250 – Secondary | Neha/Balaji | | 8/1/19 | Not Started |
| 10.18.4.24 - Backup 1. Store backup in S3 and SC9 backup server 2. Restore backup and test data integrity 3. Delete EC2 instance | Neha/Balaji | | 8/1/19 | Not Started |
| 10.18.2.100 - Primary 1. Backup server data 2. Take EC2 instance snapshot 3. Delete the instance | Neha/Balaji | | 8/2/19 | Not Started |
| Katie to provide access to MongoDB Cloud Manager to Balaji | Katie | Emailed accountcreation as I didn't realize that I was not an admin | 7/29/19 | In Progress |
| Balaji to check size and take a local dump to store locally just in case | Balaji | | | Dependent on above |
| Katie to set up separate meeting with Balaji, Neha and Sreenath for MongoDB next steps | Katie | | | Dependent on above |

CONFIDENTIAL                                                                 YOD00449813

Other Third Party Cancellations:

| Vendor | Description | Expiration | Cost | Action Owner |
|---|---|---|---|---|
| Iron.io | container workloads | 2/2020? 30 day notice | ~$21K/yr | Katie/Tim working on termination letter |
| MongoDB Cloud Manager | DB management for Pre-prod only | 2/14/2020 | $2653/yr + usage ~$143.18/mo | Working with Balaji to determine next steps to get local dump and then cancel |
| Cloud66 Cloud | DevOps as a Service - Demo, Sandbox, UAT | Month to month | varies | Katie/Tim to reached out to cloud66 for backup cancel – need Ganesh help on technical details needed |
| Cloud66 Dedicated | DevOps as a Service – Prod | 10/1/2019 | ~$68/yr | Katie/Tim to reached out to cloud66 for backup cancel – need Ganesh help on technical details needed |
| Cloud66 Support | Support for Cloud66 | 1/1/2019 | $2400/yr | Katie/Tim working on termination letter |
| Freshdesk | Customer support | Month to month | $2360/mo | Cancelled – takes 24 hours, so will confirm tomorrow that its fully closed |
| Papertrail | log management | Month to month | $395/mo | Cancelled |
| Pingdom | Downtime monitoring | Month to month | $89.95/mo | Cancelled |
| Atlassian | Confluence | Monthly on 1st | $480/mo | Cancelled - Migrated to ENV account and PDFs/XMLs captured in Vendor files |

Thank you,
Katie McCarthy
Sr Manager, Cloud Business Operations

**From:** Neha Pande <npande1@yodlee.com>
**Sent:** Thursday, July 25, 2019 4:38 AM
**To:** Katie McCarthy <kmccarthy@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>; Mokrala Phani Ram <MRam@yodlee.com>; Deepak Malik <deepak.malik@yodlee.com>; Vijay Arcot <VArcot@yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Katie McCarthy <kmccarthy@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Ganesh Mani <GMani@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Saran Makam <SMakam@yodlee.com>; Nagarajan Nemmara Raman <NRaman@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Hi Katie,

Please find below plan for action item "**Neha/Balaji** to check on backups for MongoDB ".
I will share an update again on completion of the same. Kindly let me know in case of any queries.

| Node IP | Role | Action | ETA | Status |
|---|---|---|---|---|
| 10.18.2.13 | Secondary | Shutdown server, delete EC2 instance. **No backup required** | 29-Jul | Not Started |
| 10.18.2.250 | Secondary | Shutdown server, delete EC2 instance. **No backup required** | 30-Jul | Not Started |

**Ex. C Page 2 of 10**

| 10.18.4.24 | Backup | 1. Store backup in S3 and SC9 backup server<br>2. Restore backup and test data integrity<br>3. Delete EC2 instance | 30-Jul | Not Started |
| 10.18.2.100 | Primary | 1. Backup server data<br>2. Take EC2 instance snapshot<br>3. Delete the instance | 31-Jul | Not Started |

Regards,
Neha Pande
Project Manager- Data Operations
Bangalore|+91 7034235601



---

**From:** Jeff Schulte <JSchulte@yodlee.com>
**Sent:** Thursday, July 25, 2019 12:24 AM
**To:** Veeraraghavulu Akkari <VAkkari@yodlee.com>; Katie McCarthy <kmccarthy@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Ganesh Mani <GMani@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Saran Makam <SMakam@yodlee.com>; Nagarajan Nemmara Raman <NRaman@yodlee.com>; Neha Pande <npande1@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>; Mokrala Phani Ram <MRam@yodlee.com>; Deepak Malik <deepak.malik@yodlee.com>; Vijay Arcot <VArcot@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Nice progress and thank you!
Jeff

---

**From:** Veeraraghavulu Akkari <VAkkari@yodlee.com>
**Sent:** Wednesday, July 24, 2019 2:05 AM
**To:** Katie McCarthy <kmccarthy@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Ganesh Mani <GMani@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Saran Makam <SMakam@yodlee.com>; Nagarajan Nemmara Raman <NRaman@yodlee.com>; Neha Pande <npande1@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>; Mokrala Phani Ram <MRam@yodlee.com>; Deepak Malik <deepak.malik@yodlee.com>; Vijay Arcot <VArcot@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Hi Katie, The action items which are assigned to me are completed. I have updated the comments.

Please let me know if you have any questions.

**Ex. C Page 3 of 10**

 YOD00449815

Regards,
Veera

---

**From:** Veeraraghavulu Akkari
**Sent:** Tuesday, July 23, 2019 4:32 PM
**To:** Katie McCarthy <kmccarthy@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Ganesh Mani <GMani@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Saran Makam <SMakam@yodlee.com>; Nagarajan Nemmara Raman <NRaman@yodlee.com>; Neha Pande <npande1@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>; Mokrala Phani Ram <MRam@yodlee.com>; Deepak Malik <deepak.malik@yodlee.com>; Vijay Arcot <VArcot@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Hi Katie, Please find the updates in comments section.

Regards,
Veera

---

**From:** Katie McCarthy <kmccarthy@yodlee.com>
**Sent:** Tuesday, July 23, 2019 10:28 AM
**To:** Vikram Ghattamaraja Rao <VRao@yodlee.com>; Ganesh Mani <GMani@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Saran Makam <SMakam@yodlee.com>; Nagarajan Nemmara Raman <NRaman@yodlee.com>; Neha Pande <npande1@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Thank you all for joining the meeting. Below are the actions and notes.

Meeting Notes:

| Description | Owner | Comments | Estimated Date |
|---|---|---|---|
| All stage environment AWS instances can be terminated | Veera | *Done. The 1st attachment has all the details.* | 7/26/19 |
| All production AWS EC2 instances that are run-time only and have no persistent data can be terminated | Veera | *Done. The 2nd attachment has all the details .* | 7/26/19 |
| EC2 instances that are required for accessing data can be stopped and kept available for restart for future data access requirements | Veera to send a list of all instances to Katie | *Done. The 2nd attachment has all the details. Instances are marked in yellow.* | |
| Customer and report data need to be backed up and made readily available for future customer inquiries. This includes: Reports/data on S3 MongoDB Key Vault data | Veera to do research on what is stored in S3 | *S3 has both orders(reports) and application logs (API, portals, Embedded rails, etc)* | |

**Ex. C Page 4 of 10**

YOD00449816

Other Actions:

1. **Neha/Balaji** to check on backups for MongoDB
2. **Katie** to provide access to MongoDB Cloud Manager to Balaji
   a. **Balaji** to check size and take a local dump to store locally just in case
3. **Katie** to set up separate meeting with Balaji, Neha and Sreenath for MongoDB next steps
4. **Katie** to set up follow up meeting to go over the rest of AWS
5. **Katie** to research what other services in AWS are used and come up with termination plan
6. **Katie** to connect with Ganesh on Cloud66 backup

Third Party Cancellations:

| Vendor | Description | Expiration | Cost | Action Owner |
|---|---|---|---|---|
| Iron.io | container workloads | 2/2020? 30 day notice | ~$21K/yr | Katie/Tim working on termination letter |
| MongoDB Cloud Manager | DB management for Pre-prod only | 2/14/2020 | $2653/yr + usage ~$143.18/mo | Working with Balaji to determine next steps to get local dump and then cancel |
| Cloud66 Cloud | DevOps as a Service - Demo, Sandbox, UAT | Month to month | varies | Katie/Tim to reached out to cloud66 for backup cancel – need Ganesh help on technical details needed |
| Cloud66 Dedicated | DevOps as a Service – Prod | 10/1/2019 | ~$68/yr | Katie/Tim to reached out to cloud66 for backup cancel – need Ganesh help on technical details needed |
| Cloud66 Support | Support for Cloud66 | 1/1/2019 | $2400/yr | Katie/Tim working on termination letter |
| Freshdesk | Customer support | Month to month | $2360/mo | Cancelled – takes 24 hours, so will confirm tomorrow that its fully closed |
| Papertrail | log management | Month to month | $395/mo | Cancelled |
| Pingdom | Downtime monitoring | Month to month | $89.95/mo | Cancelled |
| Atlassian | Confluence | Monthly on 1st | $472.50/mo | Katie reached out to Berger for access and will work with IT on migration |

Thank you,
Katie McCarthy
Sr Manager, Cloud Business Operations

**From:** Vikram Ghattamaraja Rao <VRao@yodlee.com>
**Sent:** Monday, July 22, 2019 4:42 AM
**To:** Katie McCarthy <kmccarthy@yodlee.com>; Ganesh Mani <GMani@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Lakshminarayanan Swamy Iyer <Iiyer@yodlee.com>; Saran Makam <SMakam@yodlee.com>; Nagarajan Nemmara Raman <NRaman@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

We are good with the FD dump, please proceed with the deletion.

Regards
Vikram

**Ex. C Page 5 of 10**

**From:** Katie McCarthy <kmccarthy@yodlee.com>
**Sent:** Saturday, 20 July 2019 4:02 AM
**To:** Ganesh Mani <GMani@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Saran Makam <SMakam@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Perfect, thank you all for your responses. Below are the immediate actions that we will take.

Francois, do you have any input on Freshdesk?

| Vendor | Description | Expiration | Cost | Notes | Action Owner |
|---|---|---|---|---|---|
| Iron.io | container workloads | 2/2020? 30 day notice | ~$21K/yr | *Yes, it can be cancelled.* | Katie/Tim to cancel |
| MongoDB Cloud Manager | DB management | 2/14/2020 | $2653/yr + usage ~$143.18/mo | is there data in this? <GM> Need confirmation from Sreenath/Balaji | Need to discuss further before action is taken – can add it to Monday's agenda |
| Cloud66 Cloud | DevOps as a Service - Demo, Sandbox, UAT | Month to month | varies | *Configuration should be backed up* | Katie/Tim to reach out to cloud66 for backup cancel |
| Cloud66 Dedicated | DevOps as a Service – Prod | 10/1/2019 | ~$68/yr | *Configuration should be backed up* | Katie/Tim to reach out to cloud66 for backup cancel |
| Cloud66 Support | Support for Cloud66 | 1/1/2019 | $2400/yr | Need to send termination so it doesn't renew | Katie/Tim to cancel |
| Freshdesk | Customer support | Month to month | $2360/mo | I've made an export of everything (attached) – is any other data needed? | Francois to confirm >Katie/Tim to cancel |
| Papertrail | log management | Month to month | $395/mo | | Katie/Tim to cancel |
| Pingdom | Downtime monitoring | Month to month | $89.95/mo | | Katie/Tim to cancel |
| Atlassian | Confluence | Monthly on 1st | $472.50/mo | we will migrate the documentation to our Enterprise account | Katie reached out to Berger for access and will work with IT on migration |
| AWS | Compute and more | Month to month | ~$30K/mo | | Meeting scheduled for Monday night PST |

Thank you,
Katie McCarthy
Sr Manager, Cloud Business Operations

**From:** Ganesh Mani <GMani@yodlee.com>
**Sent:** Thursday, July 18, 2019 11:01 PM
**To:** Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>; Katie McCarthy <kmccarthy@yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Saran Makam

**Ex. C Page 6 of 10**

CONFIDENTIAL                                                              YOD00449818

<SMakam@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Hi Sreenath,

We would need to take Mongo cluster backup as we have to retain the reports and data as per legal compliance.

Regards,
Ganesh

**From:** Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>
**Sent:** Thursday, July 18, 2019 10:58 PM
**To:** Manohar Nayak <Manohar@Yodlee.com>; Ganesh Mani <GMani@yodlee.com>; Katie McCarthy <kmccarthy@yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Saran Makam <SMakam@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Manohar,

Should we maintain Mongo cluster backup (in-house or AWS) so that it can be recovered when required? Or we should just delete the data without any backup?

Thanks,
Sreenath

**From:** Manohar Nayak <Manohar@Yodlee.com>
**Sent:** Friday, July 19, 2019 11:24 AM
**To:** Ganesh Mani <GMani@yodlee.com>; Katie McCarthy <kmccarthy@yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Saran Makam <SMakam@yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Katie,

We store sensitive data in Mongo DB and S3 bucket. We need to make sure the data is securely wiped and retain the evidence.

Regards,
Manohar

**Ex. C Page 7 of 10**

**From:** Ganesh Mani <GMani@yodlee.com>
**Sent:** Thursday, July 18, 2019 10:48 PM
**To:** Katie McCarthy <kmccarthy@yodlee.com>; Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Saran Makam <SMakam@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Hi Katie,
I have given my responses inline.

Regards,
ganesh

**From:** Katie McCarthy <kmccarthy@yodlee.com>
**Sent:** Wednesday, July 17, 2019 11:00 PM
**To:** Jeff Schulte <JSchulte@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Ganesh Mani <GMani@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Saran Makam <SMakam@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>
**Cc:** Neil Perrelli <neilp@Yodlee.com>; Tim Thai <tthai1@yodlee.com>
**Subject:** RE: Credit Insights AWS/3rd party Decommissioning

Hi Folks,

Below is a list of all third party relationship that we will have to cancel. I have a few notes that I need confirmations on and I have assigned some owners, please correct the owners if you think I am wrong. As for AWS, I will set up a meeting to go through the decommissioning separately.

| Vendor | Description | Expiration | Cost | Notes | Action Owner |
|---|---|---|---|---|---|
| Iron.io | container workloads | 2/2020? 30 day notice | ~$21K/yr | no data, correct? *<GM> Yes, it can be cancelled.* | Ganesh to confirm >Katie/Tim to cancel |
| MongoDB Cloud Manager | DB management | 2/14/2020 | $2653/yr + usage ~$143.18/mo | is there data in this? *<GM> Need confirmation from Sreenath/Balaji* | Ganesh to confirm >Katie/Tim to cancel |
| Cloud66 Cloud | DevOps as a Service - Demo, Sandbox, UAT | Month to month | varies | No data that would need to be kept, correct? *<GM> Configuration should be backed up. We are not expect to do the backup. Can you reach out to the vendor to help taking backup?* | Ganesh to confirm >Katie/Tim to cancel |
| Cloud66 Dedicated | DevOps as a Service – Prod | 10/1/2019 | ~$68/yr | No data that would need to be kept, correct? | Ganesh to confirm >Katie/Tim to cancel |

**Ex. C Page 8 of 10**

YOD00449820

| | | | | *<GM> Configuration should be backed up. We are not expert to do the backup. Can you reach out to the vendor to help taking backup?* | |
|---|---|---|---|---|---|
| Cloud66 Support | Support for Cloud66 | 1/1/2019 | $2400/yr | Need to send termination so it doesn't renew | Katie/Tim |
| Freshdesk | Customer support | Month to month | $2360/mo | I've made an export of everything (attached) – is any other data needed? | Francois to confirm >Katie/Tim to cancel |
| Papertrail | log management | Month to month | $395/mo | Pretty certain this can be cancelled right away, please confirm no data is needed from this account *<GM> It can be cancelled.* | Ganesh to confirm >Katie/Tim to cancel |
| Pingdom | Downtime monitoring | Month to month | $89.95/mo | Pretty certain this can be cancelled right away, please confirm no data is needed from this account *<GM> It can be cancelled.* | Ganesh to confirm >Katie/Tim to cancel |
| Atlassian | Confluence | Monthly on 1st | $472.50/mo | Is the documentation even needed anymore? If so, can we migrate the documentation to our Enterprise account? Who has admin access to the account? *<GM> It should be backed up. Can you check with IT/Devops team to see if we can migrate them to our confluence?* | Kirti to confirm >depends on answer |
| AWS | Compute and more | Month to month | ~$30K/mo | See Jeff's notes below *<GM> Mongo, Backoffice, Vault/Consul EC2 instances should be kept available along with S3.* | Will set up meeting to discuss owners/action plan Ganesh, Veeraraghavulu, Lakshminarayanan and Sreenath – would any other be required? |

Lastly, **Manohar and Saran**, do you require any certificates of destruction or anything from these third party vendors? I plan to go through a termination checklist with a few of them, but please detail out which ones (if any) might be critical to security and that we might want to take some extra steps beyond simple cancellation.

Thank you,
Katie McCarthy
Sr Manager, Cloud Business Operations

**From:** Jeff Schulte <JSchulte@yodlee.com>
**Sent:** Monday, July 15, 2019 9:42 PM
**To:** Katie McCarthy <kmccarthy@yodlee.com>; Kirti Kumar <KKumar@yodlee.com>; Vikram Ghattamaraja Rao <VRao@yodlee.com>; Francois Hedouin <FHedouin@yodlee.com>; Veeraraghavulu Akkari <VAkkari@yodlee.com>; Ganesh Mani <GMani@yodlee.com>; Lakshminarayanan Swamy Iyer <liyer@yodlee.com>; Adinarayana Setty Grandim Sreenath <ASreenath@yodlee.com>; Saran Makam <SMakam@yodlee.com>; Manohar Nayak <Manohar@Yodlee.com>

**Ex. C Page 9 of 10**

**Cc:** Neil Perrelli <neilp@Yodlee.com>
**Subject:** Credit Insights AWS/3rd party Decommissioning

Team – We have ET clearance to proceed with decommissioning the FA/Credit Insights environment. Here are the overall parameters:

1) All stage environment AWS instances can be terminated
2) All production AWS EC2 instances that are run-time only and have no persistent data can be terminated
3) EC2 instances that are required for accessing data can be stopped and kept available for restart for future data access requirements
4) Third party services that are purely run-time and hold no client data can be terminated
5) Customer and report data need to be backed up and made readily available for future customer inquiries. This includes:
   a. Reports/data on S3
   b. MongoDB
   c. Key Vault data

Katie McCarthy is going to be taking the lead on getting this group together to build and execute on a cleanup plan. I assume there are a few additional details that need to be considered and we'll be relying on the collective knowledge of the group to make the proper decisions on what to terminate and what data to keep.

Our current run-rate is $30K/mo. The target for the group should be to get the retention of the critical data down to under $2K/mo.

Thanks, Jeff

**Ex. C Page 10 of 10**

# EXHIBIT D

From: Joshua E. Hollander [mailto:JHollander@kasowitz.com]
Sent: Monday, August 31, 2020 6:34 PM
To: ACHO@shb.com; GMILLER@shb.com; HABRAMS@shb.com
Cc: MKraus@kasowitz.com; ACaputo@kasowitz.com; PKraman@ycst.com; ldeluca@connollygallagher.com;
RVrana@ycst.com
Subject: RE: FinApps v. Envestnet, et al. / Memorialization of 8.12.2020 Meet and Confer

Amy,

We stand by our August 21 edits to the proposed memorialization of the August 12 meet and confer, and we disagree
with your characterization that the memorialization has "turned into advocacy pieces."  To the contrary, our edits
accurately reflect our conversation during the meet and confer.

In any event, we agree to have another meet and confer for Defendants to report on their "progress" on providing
Plaintiff access to, among other things, the specific Risk Insight environments hosted on Yodlee's AWS account, and each
of the Risk Insight development and operational servers and other services that interfaced with the Risk Insight
environments.

With respect to the other issues memorialized from the August 12 meet and confer, we have been and remain prepared
to discuss all of them.  Please let us know a date this week for a meet and confer.

Thanks,
Josh


From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Thursday, August 27, 2020 12:22 PM
To: Joshua E. Hollander <JHollander@kasowitz.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB)
<HABRAMS@shb.com>
Cc: Matthew A. Kraus <MKraus@kasowitz.com>; Anthony MacDonald Caputo <ACaputo@kasowitz.com>;
'PKraman@ycst.com' <PKraman@ycst.com>; 'Lauren DeLuca' <ldeluca@connollygallagher.com>
Subject: RE: FinApps v. Envestnet, et al. / Memorialization of 8.12.2020 Meet and Confer

Hi Josh,

I wanted to update you that we have gathered information related to the issues discussed in our 8/12 meet and confer
and have made progress.  We are confirming some issues with several more Yodlee employees (some of which are in
India) and plan to circle back soon.  We trust that you are looking into outstanding issues with your client as well.

As for your edits to the memorialization of the 8/12 meet and confer, we disagree with your revisions.  That said, we do not believe it's productive for each party to continue revising the summary, which has now turned into advocacy pieces.  We believe our time would be better spent circling back for another meet and confer after we have each solidified our respective investigations with our clients.

Thanks,
Amy

From: Cho, Amy (SHB)
Sent: Monday, August 24, 2020 12:35 PM
To: 'Joshua E. Hollander' <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>; Miller, Gary M. (SHB) <gmiller@shb.com<mailto:gmiller@shb.com>>; Abrams, Hugh (SHB) <habrams@shb.com<mailto:habrams@shb.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>; Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'PKraman@ycst.com' <PKraman@ycst.com<mailto:PKraman@ycst.com>>; 'Lauren DeLuca' <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>
Subject: RE: FinApps v. Envestnet, et al. / Memorialization of 8.12.2020 Meet and Confer

Hi Josh,

We will respond to the below email this week.  Thanks.

Amy

From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Friday, August 21, 2020 3:32 PM
To: Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>; Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB) <HABRAMS@shb.com<mailto:HABRAMS@shb.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>; Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'PKraman@ycst.com' <PKraman@ycst.com<mailto:PKraman@ycst.com>>; 'Lauren DeLuca' <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>
Subject: RE: FinApps v. Envestnet, et al. / Memorialization of 8.12.2020 Meet and Confer

EXTERNAL
Amy,

Below are KBT's edits to SHB's proposed draft of the memorialization of the August 12, 2020 meet and confer, along with a redline reflecting KBT's edits.  Please confirm the points below, or let us know if you believe any of the points are stated inaccurately.

Thanks,
Josh

Memorialization of 8.12.2020 Meet and Confer

1.  SHB represented that all data stored in Yodlee's AWS accounts, including data in connection with each of the specific Risk Insight environments hosted on Yodlee's AWS account, including the UAT environment, the Demo environment, the Sandbox environment, and the Production environments have been fully preserved and maintained by Yodlee during the pendency of the litigation.  KBT disagrees with SHB's characterization of what SHB represented during the meet and

confer.  In KBT's view, SHB represented that each Risk Insight environment hosted on Yodlee's AWS account, including but not limited to the UAT environment, the Demo environment, the Sandbox environment, and the Production environment, have been fully preserved and maintained by Yodlee during the pendency of the litigation, in addition to all of the data contained in each of those environments.

2.  SHB informed KBT that FA ran its platform on top of the Yodlee systems.  KBT informed SHB that this is not correct. KBT informed SHB that FA did not "r[un] its platform on top of Yodlee systems," and that the Risk Insight platform ran in Yodlee's Risk Insight environments, which were hosted on Yodlee's AWS account.

3.  SHB represented that when FA took away its platform, the Risk Insight system as it existed when the parties' contract was in effect was no longer functional.  KBT informed SHB this is not correct.  KBT informed SHB that FA did not "t[ake] away its platform."  KBT informed SHB that FA only sealed the platform's configuration keys, but did not remove or "take away" anything from the Risk Insight environments hosted on Yodlee's AWS account.

4.  SHB represented that Yodlee cannot rebuild the Risk Insight environments unless FA's platform were again live.  KBT informed SHB that this is not correct.  KBT informed SHB that the Risk Insight environments do not need to be "rebuil[t]," and that, unless Yodlee decommissioned the Risk Insight environments, or any portion thereof, they should each still exist on Yodlee's AWS account.

5.  SHB advised KBT that Yodlee does not know if FA's platform remains on the AWS servers because, without the "key," Yodlee cannot access the original system.  KBT informed SHB that the platform's configuration keys related only to Risk Insight's Production environment and did not impact the "lower environments," i.e., the UAT environment, the Demo environment, and the Sandbox environment.  KBT informed SHB that, even without the configuration keys, Defendants should still be able to access Risk Insight's lower environments.  KBT agreed to follow up with its client to determine if that understanding is correct.

6.  SHB has agreed to make available to Plaintiff for discovery purposes documents, logs, and other material that was preserved from the foregoing Risk Insight environments hosted on Yodlee's AWS account.  KBT informed SHB that Plaintiff demands access to the actual Risk Insight environments hosted on Yodlee's AWS account, for which SHB represented that each of the Risk Insight environments have been fully preserved and maintained by Yodlee during the pendency of the litigation.

7.  SHB also commented that, if FA wished to recreate the Risk Insight environments as they existed when the parties' contract was in effect, that would require FA's participation as it has control over its platform.  KBT informed SHB that this is not correct.  KBT informed SHB that there is nothing to "recreate" of the Risk Insight environments.  KBT informed SHB that the Risk Insight environments were hosted on Yodlee's AWS account, which Yodlee – not FA – exclusively owned and controlled.  KBT informed SHB that FA was only able to access Yodlee's AWS account using credentials that were supplied by Yodlee and that were subsequently revoked by Yodlee.  SHB suggested that the parties could work cooperatively to achieve that result.  SHB cannot guarantee that simply providing the "key" will cause the system to revert to its original configuration; but, SHB commented that they could work with KBT to determine if the original configuration can be restored.  KBT informed SHB that this is not correct.  KBT informed SHB that, unless Yodlee decommissioned the Risk Insight environments, or any portion thereof, or otherwise failed to preserve data associated therewith, the Risk Insight environments should still exist on Yodlee's AWS account.

8.  SHB represented that each of the Risk Insight operations servers and other services that interfaced with the Risk Insight AWS environments (referenced above in Point 1), including but not limited to Cloud 66, Iron.io<https://protect-us.mimecast.com/s/oighCzpqM2u8MKkNc4hw-e?domain=iron.io>, Freshdesk, Papertrail, Pingdom, and Atlassian, have been fully preserved and maintained by Yodlee during the pendency of the litigation.  SHB has agreed to make available to Plaintiff for discovery purposes documents, logs, and other material that was archived in the foregoing Risk Insight operations servers and other services that interfaced with the Risk Insight AWS environments.  KBT informed SHB that Plaintiff demands access to these Risk Insight operations servers and other services, and that there is evidence of

**Ex. D Page 3 of 9**

Defendants' misconduct that is not captured by the "documents, logs, and other material that was archived" in such operations servers and other services.

9. KBT requested access to the systems associated with the development and operation of Defendants' Competing Products, including but not limited to access to the databases, development and testing environments, development road mapping tools, operations servers associated with the development and operation of Defendants' Competing Products, and other related services (including but not limited to Cloud 66, https://protect-us.mimecast.com/s/oighCzpqM2u8MKkNc4hw-e?domain=iron.io, Freshdesk, Papertrail, Pingdom, and Atlassian, or their functional equivalents as applicable with respect to Defendants' Competing Products), as well as all of the data associated with each of those accounts (including but not limited to any activity logs, audit logs, and the like). SHB asked what KBT meant by the term Competing Products and which of Plaintiff's Requests for Production sought discovery concerning Defendants' Competing Products. KBT reminded SHB that (i) the parties have previously met and conferred about this specific issue on multiple occasions, and (ii) Defendants previously agreed to produce discovery concerning Defendants' Competing Products, based on (iii) a definition already approved by the Court.

10. SHB still remains unclear on what documents KBT is looking for as to the Competing Products (as defined in Defendants' Amended Responses to First Set of Interrogatories). SHB states that there are several products that Plaintiff identified as "Competing Products" based on a good-faith attempt to interpret and respond to the interrogatory but do not admit that any of those products were in fact "competing." SHB states that many of those products were never produced or released. SHB states that documents pertaining to some or all of those products have been produced. SHB requests that KBT identify which products it wants information on, specify what information it wants about that product, and identify the discovery request that would call for production of the information. SHB states that after a determination of the specific aspects of the "Competing Products" for which KBT seeks access to "systems," SHB agrees to meet and confer to determine what sort of access is appropriate and feasible for purposes of this litigation. KBT states that SHB did not specifically raise these points, or make this specific request, during the August 12 meet and confer. Nevertheless, KBT refers SHB to the August 20, 2020 letter sent from Matthew A. Kraus to Amy Y. Cho, which directly responds to SHB's request reflected in Point 10.

11. KBT represented that Plaintiff's GitHub and Aha! accounts, and the data contained therein, have been preserved and maintained by Plaintiff during the pendency of the litigation. KBT has agreed to provide access to Defendants to the aforementioned GitHub and Aha! accounts, but reminded Defendants that access to GitHub, which contains Plaintiff's source code, has always been understood to be contingent on the party's resolution of the Source Code Protocol, which has only occurred recently.

12. SHB asked whether Plaintiff has access to the Freshdesk account associated with Risk Insight. KBT informed SHB that (i) the Freshdesk account associated with Risk Insight was owned and controlled by Yodlee; (ii) Yodlee provided credentials to Plaintiff to access the Freshdesk account associated with Risk Insight; and (iii) Yodlee subsequently revoked Plaintiff's credentials. SHB asked Plaintiff to search for and produce any documents it has in its possession related to Freshdesk complaints. KBT informed SHB that all Freshdesk data and information is contained in the Freshdesk account associated with Risk Insight, which was owned and controlled by Yodlee. SHB asked that Plaintiff also search for and produce any Freshdesk documents in its custody and control.

13. SHB asked whether Plaintiff has access to any documents that were hosted on Risk Insight's Demo environment. KBT informed SHB that Risk Insight's Demo environment was controlled by Yodlee, hosted on Yodlee's AWS account, and could be accessed only through a Yodlee.com<https://protect-us.mimecast.com/s/nwCKCAD83JsrNjwJf8d8KT?domain=yodlee.com> URL, to which Plaintiff no longer has access since its credentials were revoked by Defendants. SHB explained again that it no longer has access to any such information since FA "revoked the key for Yodlee," and/or removed the FA Risk Insight platform from the AWS accounts. KBT informed SHB that this is not correct. KBT informed SHB that FA did not "remove[]" anything from the Risk Insight environments hosted on Yodlee's AWS account. KBT informed SHB that FA only sealed the platform's configuration keys, and that those configuration keys related only to Risk Insight's Production environment and had no impact on the "lower environments," including the Demo environment. KBT informed SHB that, unless Yodlee decommissioned the

Demo environment, the Demo environment should still exist via the URL, https://demo.riskinsight.yodlee.com<https://protect-us.mimecast.com/s/yxXPCBB13KFP7vwJFNT2Pv?domain=demo.riskinsight.yodlee.com>, which was hosted on Yodlee's AWS account.  Nevertheless, KBT agreed to ask its client whether Plaintiff still has access to any archived copies of electronic documents and demos that were hosted on Risk Insight's Demo environment.  SHB explained that Plaintiff should have those documents and demos since Plaintiff was the party responsible for creating and putting those documents and demos on Risk Insight's Demo environment and Plaintiff [sic] no longer has access since FA removed its platform.  KBT informed SHB that this is not correct.  KBT informed SHB that FA did not "remove[] its platform" from the Risk Insight environments hosted on Yodlee's AWS account.  KBT informed SHB that Defendants should still have access to the Risk Insight Demo environment since it was hosted on Yodlee's AWS account, for which Yodlee exclusively owned and controlled.

14.  KBT agreed to ask its client whether it maintains a non-custodial document repository containing patent-related documents.  SHB explained that a separate document request [Defendants' Document Request No. 6] seeks the FA versions of all non-privileged documents and communications relating to the FA patents and patent applications.  With respect to Plaintiff's communications concerning patent-related documents, KBT informed SHB that all non-privileged communications that "hit" on Defendants' search terms (which were negotiated and agreed upon) will be produced, to the extent any exist.  In addition to the non-privileged communications, KBT also agreed to ask its client whether it maintained a patent file and agreed to produce any non-privileged documents contained in that file, to the extent any exist.

15.  Resolved issues: (1) SHB has produced Prashant Paliwal's e-mails pursuant to Plaintiff's Second RFPs; and (2) the First Supplemental Protective Order will be filed by Delaware counsel.

From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Monday, August 17, 2020 1:05 PM
To: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>; Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB) <HABRAMS@shb.com<mailto:HABRAMS@shb.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>; Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'PKraman@ycst.com' <PKraman@ycst.com<mailto:PKraman@ycst.com>>; 'Lauren DeLuca' <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>
Subject: RE: FinApps v. Envestnet, et al. / Memorialization of 8.12.2020 Meet and Confer

**EXTERNAL EMAIL**

_____

Josh,

Thank you for providing the first draft of the summary of last week's meet and confer.  Our edits are below.  Please let me know if you believe anything is stated inaccurately.

**

Memorialization of 8.12.2020 Meet and Confer

1.  SHB represented that all data stored in Yodlee's AWS accounts, including data in connection with each of the specific Risk Insight environments hosted on Yodlee's AWS account, including the UAT environment, the Demo environment, the Sandbox environment, and the Production environments have been fully preserved and maintained by Yodlee during

the pendency of the litigation.  SHB informed KBT that FA ran its platform on top of the Yodlee systems.  When FA took away its platform, the Risk Insight system as it existed when the parties' contract was in effect was no longer functional.  Further, Yodlee cannot rebuild the Risk Insight environments unless FA's platform were again live.  KBT stated that its understanding is that FA "revoked the key for Yodlee," but that the FA platform remained on the AWS servers. SHB advised KBT that Yodlee does not know if FA's platform remains on the AWS servers because, without the "key," Yodlee cannot access the original system.  KBT agreed to follow up with its client to determine if that understanding is correct.  SHB has agreed to make available to Plaintiff for discovery purposes documents, logs, and other material that was preserved from the foregoing Risk Insight environments hosted on Yodlee's AWS account.  Parties are to meet and confer as to the format of production.  SHB also agreed that, if FA wished to recreate the Risk Insight environments as they existed when the parties' contract was in effect, that would require FA's participation as it has control over its platform.  SHB suggested that the parties could work cooperatively to achieve that result. SHB cannot guarantee that simply providing the "key" will cause the system to revert to its original configuration; but, SHB agrees to work with KBT to determine if the original configuration can be restored.  KBT indicated that it did not want to recreate the Risk Insight environments, but would like to receive production of the data preserved from those environments.

2.  SHB represented that each of the Risk Insight operations servers and other services that interfaced with the Risk Insight AWS environments have been fully preserved and maintained by Yodlee during the pendency of the litigation.  SHB has agreed to make available to Plaintiff for discovery purposes documents, logs, and other material that was archived in the foregoing Risk Insight operations servers and other services that interfaced with the Risk Insight AWS environments.  Parties are to meet and confer as to the format of production.

3.  KBT requested access to the systems associated with the development and operation of Defendants' Competing Products, including but not limited to access to the databases, development and testing environments, development road mapping tools, operations servers associated with the development and operation of Defendants' Competing Products, and other related services.  SHB asked what KBT meant by the term Competing Products and which of Plaintiff's Requests for Production sought discovery concerning Defendants' Competing Products.  KBT reminded SHB that (i) the parties have previously met and conferred about this specific issue on multiple occasions, and (ii) Defendants previously agreed to produce discovery concerning Defendants' Competing Products, based on (iii) a definition already approved by the Court.  SHB still remains unclear on what documents KBT is looking for as to the Competing Products (as defined in Defendants' Amended Responses to First Set of Interrogatories).  There are several products that Plaintiff identified as "Competing Products" based on a good-faith attempt to interpret and respond to the interrogatory but do not admit that any of those products were in fact "competing."  Many of those products were never produced or released.  Documents pertaining to some or all of those products have been produced.  SHB requests that KBT identify which products it wants information on, specify what information it wants about that product, and identify the discovery request that would call for production of the information. After a determination of the specific aspects of the "Competing Products" for which KBT seeks access to "systems," SHB agrees to meet and confer to determine what sort of access is appropriate and feasible for purposes of this litigation.

4.  KBT represented that FA's Risk Insight platform, including its GitHub and Aha! accounts, and the data contained therein, have been preserved and maintained by Plaintiff during the pendency of the litigation.  KBT has agreed to provide access to Defendants to all data concerning the Risk Insight platform, including the aforementioned GitHub and Aha! accounts, but reminded Defendants that access to GitHub, which contains Plaintiff's source code, has always been understood to be contingent on the party's resolution of the Source Code Protocol, which has only occurred recently.

5.  SHB asked whether Plaintiff has access to the Freshdesk account associated with Risk Insight.  KBT informed SHB that (i) the Freshdesk account associated with Risk Insight was owned and controlled by Yodlee; (ii) Yodlee provided credentials to Plaintiff to access the Freshdesk account associated with Risk Insight; and (iii) Yodlee subsequently revoked Plaintiff's credentials.  Plaintiff agreed to search for and produce any documents it has in its possession related to Freshdesk complaints.  SHB asks that Plaintiff also search for and produce any Freshdesk documents in its custody and control.

6. SHB asked whether Plaintiff has access to any documents that were hosted on Risk Insight's Demo environment. KBT informed SHB that Risk Insight's Demo environment was controlled by Yodlee, hosted on Yodlee's AWS account, and could be accessed only through a Yodlee.com<https://protect-us.mimecast.com/s/qtMgCDkw3Mtj5XErTZNUN6?domain=yodlee.com> URL, to which Plaintiff no longer has access since its credentials were revoked by Defendants. SHB explained again that it no longer has access to any such information since FA "revoked the key for Yodlee," and/or removed the FA Risk Insight platform from the AWS accounts. Nevertheless, KBT agreed to ask its client whether Plaintiff still has access to any archived copies of electronic documents and demos that were hosted on Risk Insight's Demo environment. SHB explained that Plaintiff should have those documents and demos since Plaintiff was the party responsible for creating and putting those documents and demos on Risk Insight's Demo environment and Plaintiff no longer has access since FA removed its platform.

7. KBT agreed to ask its client whether it maintains a non-custodial document repository containing patent-related documents. SHB explained that a separate document request [Defendants' Document Request No. 6] seeks the FA versions of all non-privileged documents and communications relating to the FA patents and patent applications. With respect to Plaintiff's communications concerning patent-related documents, KBT informed SHB that all non-privileged communications that "hit" on Defendants' search terms (which were negotiated and agreed upon) will be produced, to the extent any exist. In addition to the non-privileged communications, KBT also agreed to ask its client whether it maintained a patent file and agreed to produce that file.

8. Resolved issues: (1) Per KBT's request, SHB has produced the Palliwal e-mails; and (2) first supplemental protective order will be filed by Delaware counsel.


From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Friday, August 14, 2020 2:23 PM
To: Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB) <HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>; Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'PKraman@ycst.com' <PKraman@ycst.com<mailto:PKraman@ycst.com>>; 'Lauren DeLuca' <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>
Subject: FinApps v. Envestnet, et al. / Memorialization of 8.12.2020 Meet and Confer


EXTERNAL
Gary, Hugh, and Amy,

Below please find a proposed memorialization of our meet and confer on August 12, 2020. Please confirm the points below, or let us know if you believe any of the points are stated inaccurately.

Thanks,
Josh

Memorialization of 8.12.2020 Meet and Confer

1. SHB represented that each of the specific Risk Insight environments hosted on Yodlee's AWS account, including but not limited to the UAT environment, the Demo environment, the Sandbox environment, and the Production environment, as well as all of the data contained therein, have been fully preserved and maintained by Yodlee during the pendency of the litigation. SHB has agreed to provide access, or otherwise make available to Plaintiff for discovery purposes, to the foregoing Risk Insight environments hosted on Yodlee's AWS account.

**Ex. D Page 7 of 9**

2.  SHB represented that each of the Risk Insight operations servers and other services that interfaced with the Risk Insight AWS environments (referenced above in Point 1), including but not limited to Cloud 66, Iron.io<https://protect-us.mimecast.com/s/KI0-CERK3Ns13BvoTZwD1F?domain=iron.io>, Freshdesk, Papertrail, Pingdom, and Atlassian, have been fully preserved and maintained by Yodlee during the pendency of the litigation.  SHB has agreed to provide access, or otherwise make available to Plaintiff for discovery purposes, to the foregoing Risk Insight operations servers and other services that interfaced with the Risk Insight AWS environments.

3.  KBT requested access to the systems associated with the development and operation of Defendants' Competing Products, including but not limited to access to the databases, development and testing environments, development road mapping tools, operations servers associated with the development and operation of Defendants' Competing Products, and other related services (including but not limited to Cloud 66, Iron.io<https://protect-us.mimecast.com/s/KI0-CERK3Ns13BvoTZwD1F?domain=iron.io>, Freshdesk, Papertrail, Pingdom, and Atlassian, or their functional equivalents as applicable with respect to Defendants' Competing Products), as well as all of the data associated with each of those accounts (including but not limited to any activity logs, audit logs, and the like).  SHB asked what KBT meant by the term Competing Products and which of Plaintiff's Requests for Production sought discovery concerning Defendants' Competing Products.  KBT reminded SHB that (i) the parties have previously met and conferred about this specific issue on multiple occasions, and (ii) Defendants previously agreed to produce discovery concerning Defendants' Competing Products, based on (iii) a definition already approved by the Court.

4.  KBT represented that Plaintiff's GitHub and Aha! accounts, and the data contained therein, have been preserved and maintained by Plaintiff during the pendency of the litigation.  KBT has agreed to provide access to Defendants to the aforementioned GitHub and Aha! accounts, but reminded Defendants that access to GitHub, which contains Plaintiff's source code, has always been understood to be contingent on the party's resolution of the Source Code Protocol, which has only occurred recently.

5.  SHB asked whether Plaintiff has access to the Freshdesk account associated with Risk Insight.  KBT informed SHB that (i) the Freshdesk account associated with Risk Insight was owned and controlled by Yodlee; (ii) Yodlee provided credentials to Plaintiff to access the Freshdesk account associated with Risk Insight; and (iii) Yodlee subsequently revoked Plaintiff's credentials.

6.  SHB asked whether Plaintiff has access to any documents that were hosted on Risk Insight's Demo environment.  KBT informed SHB that Risk Insight's Demo environment was controlled by Yodlee, hosted on Yodlee's AWS account, and could be accessed only through a Yodlee.com<https://protect-us.mimecast.com/s/qtMgCDkw3Mtj5XErTZNUN6?domain=yodlee.com> URL, to which Plaintiff no longer has access since its credentials were revoked by Defendants.  Nevertheless, KBT agreed to ask its client whether Plaintiff still has access to any documents that were hosted on Risk Insight's Demo environment.

7.  KBT agreed to ask its client whether it maintains a non-custodial document repository containing patent-related documents.  With respect to Plaintiff's communications concerning patent-related documents, KBT informed SHB that all non-privileged communications that "hit" on Defendants' search terms (which were negotiated and agreed upon) will be produced, to the extent any exist.


Joshua E. Hollander
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel.  (212) 506-3329
Fax. (212) 954-5150
JHollander@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT E

| | |
|---|---|
| **From:** | Cho, Amy (SHB) <ACHO@shb.com> |
| **Sent:** | Tuesday, November 3, 2020 2:40 PM |
| **To:** | Joshua E. Hollander |
| **Cc:** | Matthew A. Kraus; PKraman@ycst.com; Anthony MacDonald Caputo; Vrana, Robert; Miller, Gary M. (SHB); Abrams, Hugh (SHB); Hansen, Ian (SHB); Richardson, Jason M. (SHB); Lauren DeLuca; Elliana Openshaw; Joshua Marks |
| **Subject:** | RE: FA v. Yodlee - Follow up from Weatherly Dep |
| **Attachments:** | YOD-DB00000003.zip; FA Risk insight.xlsx |

Josh,

For AWS, Yodlee was able to download an access log from Cloud Trails. It is attached and produced with this email.

As for Pingdom, Papertrail, and Cloud 66, Yodlee does not have access to those databases since Yodlee stopped paying for those subscriptions after FA shut down RI. FA will have to subpoena those parties directly. To help FA with its investigation, Yodlee agrees to give authorization for those entities to release logs. For ease of reference, attached is account information for those entities (and others in case FA is interested) to help FA craft its subpoena.

Amy


-----Original Message-----
From: Cho, Amy (SHB)
Sent: Tuesday, November 3, 2020 11:22 AM
To: 'Joshua E. Hollander' <JHollander@kasowitz.com>
Cc: Matthew A. Kraus <MKraus@kasowitz.com>; PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <gmiller@shb.com>; Abrams, Hugh (SHB) <habrams@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <jmrichardson@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh,

1. 11/18 is fine for Mr. Weatherly.
2. We need any information provided in Response to Nos. 2 and 4 (NDAs, confidentiality agreements, recordings of presentations) well in advance of the Sullivan deposition scheduled for Nov. 10.
3. We will be producing information re: AWS materials this week.

Amy


-----Original Message-----

From: Joshua E. Hollander <JHollander@kasowitz.com>
Sent: Tuesday, November 3, 2020 8:59 AM
To: Cho, Amy (SHB) <ACHO@shb.com>
Cc: Matthew A. Kraus <MKraus@kasowitz.com>; PKraman@ycst.com; Anthony MacDonald Caputo
<ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB)
<GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB)
<ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca
<ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks
<JMarks@kasowitz.com>
Subject: Re: FA v. Yodlee - Follow up from Weatherly Dep

EXTERNAL

Amy,

Mr. Weatherly is available for the 30(b)(6) deposition on Nov. 17 or 18. Please let us know if one of those dates
works for Defendants.

We will have answers for you regarding items 1-4 this week.

Thanks,
Josh


On Nov 1, 2020, at 5:08 PM, Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>> wrote:

When will you produce items #1-4 below?

Also, do you have available 30b6 dates for Mr. Weatherly yet?

From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Friday, October 30, 2020 8:42 PM
To: Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>; Matthew A. Kraus
<MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
'PKraman@ycst.com<mailto:PKraman@ycst.com>' <PKraman@ycst.com<mailto:PKraman@ycst.com>>;
Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'Vrana, Robert'
<RVrana@ycst.com<mailto:RVrana@ycst.com>>
Cc: Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; 'Lauren DeLuca'
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep


EXTERNAL
Amy,

Given the crucial importance of the AWS materials, please confirm that they will be produced by November 6,

if not sooner.

With respect to #6, please be advised that we not only disagree with your position regarding waiver, but also fail to understand your basis for that position, as you have provided no support or explanation for it.

Regards,
Josh


From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Friday, October 30, 2020 3:22 PM
To: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>; Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
'PKraman@ycst.com<mailto:PKraman@ycst.com>' <PKraman@ycst.com<mailto:PKraman@ycst.com>>;
Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'Vrana, Robert' <RVrana@ycst.com<mailto:RVrana@ycst.com>>
Cc: Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB) <HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB) <ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; 'Lauren DeLuca' <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw <EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks <JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh,

To answer your last question, we will be producing additional information regarding AWS. We will also be producing the agreements visitors sign using Yodlee's Envoy system.

We appear to be at an impasse on the #6. Our position is fairly straightforward. We believe FA waived privilege as to Mr. Weatherly's understanding of the MSA during your questioning of that witness. We understand you disagree with our position.

Amy


From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Wednesday, October 28, 2020 8:32 PM
To: Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>; Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
'PKraman@ycst.com<mailto:PKraman@ycst.com>' <PKraman@ycst.com<mailto:PKraman@ycst.com>>;
Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'Vrana, Robert' <RVrana@ycst.com<mailto:RVrana@ycst.com>>
Cc: Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB) <HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB) <ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; 'Lauren DeLuca' <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw <EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks

3

**Ex. E Page 3 of 9**

<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep


EXTERNAL
Amy,

The below responds to the points raised in your October 27, 2020 email:

1. Kasowitz will ask Mr. Weatherly whether Priegues' Exhibits 56 and 57 were the documents to which he referred when testifying about the "security protocol" or "security protocols list" at his deposition. If they are not, FA agrees to produce referenced documents. Please provide the estimated timing of such production after Mr. Weatherly gets back from his vacation.

Response: We have inquired with Mr. Weatherly as to the documents he was referring to with respect to the "security protocol" and "security protocol lists," and we hope to have an answer by tomorrow.

2. Kasowitz will confirm whether all confidentiality agreements/NDAs to which Mr. Weatherly referred were produced. This search is for documents that may not necessarily have been picked up by the search terms used by the parties. Similarly, Shook will check that all NDAs in Defendants' possession with Mr. Sullivan and existing/prospective customers were produced. Shook also agrees to check for any related logs. We will update you regarding the NDA issue this week. Please provide the estimating timing on your end.

Response: We are confirming whether there are any NDAs or confidentiality agreements entered by FinApps' employees or independent contractors of FinApps and, to the extent they exist, we will produce them. With respect to our request of Yodlee, to confirm, we requested that Yodlee search for and produce all NDAs or confidentiality agreements entered between Yodlee, on the one hand, and any customer or prospective customer of Risk Insight, on the other hand.

3. Thank you for agreeing to provide Yodlee with access to GitHub. FA agrees to prioritize the production of the demos when providing access to this platform. Please provide the estimated timing of such production.

Response: As we informed you, GitHub contains FinApps' source code and, as such, the production of GitHub must be pursuant to the parties' source code protocol.

4. Thank you for checking for additional recordings. Please provide the estimated timing of your response.

Response: We are confirming whether any other FinApps' presentation(s) made at FinDevR conferences were recorded and, to the extent they were and FinApps is in possession of the recordings, we will produce them.

5. Thank you for clarifying that the documents to which Mr. Weatherly referred were Yodlee documents produced in this litigation.

6. Yodlee has set out its position regarding waiver of privilege both in the deposition transcript, in our emails following the deposition and at the meet and confer. In the event that FA disagrees that the parties are at issue as to whether FA waived privilege as to Mr. Weatherly's understanding of the MSA, FA needs to promptly produce the requested communications.

Response: We disagree that "Yodlee has set out its position regarding waiver" whatsoever, and to be clear, we still do not understand what waiver Yodlee contends has occurred, its extent, or the legal basis for Yodlee's theory of waiver. Further, we have reviewed the final transcript and it does not demonstrate Mr. Weatherly's

waiver of any attorney client privilege at his deposition. We also do not understand to what communications you are referring.

* * *

In addition, as discussed during our October 22, 2020 meet and confer, we are still awaiting your confirmation as to whether Defendants intend to produce any further data related to the Risk Insight AWS environments and the Risk Insight development and operational systems.

As we informed you, the production Defendants made on September 25, 2020 is grossly deficient. Among other things, Defendants' September 25 production did not include any data related to the Risk Insight demo, UAT, or sandbox environments, and did not include any data related to the Risk Insight development and operational systems, such as Pingdom, Papertrial, and Cloud66. Moreover, the data produced by Defendants related to Risk Insight's production environment is incomplete and is missing, among other things, audit and usage logs.

Please confirm by no later than Friday, October 30, 2020 whether Defendants intend to produce any further data related to the Risk Insight AWS environments and the Risk Insight development and operational systems.

Thanks,
Josh


From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Tuesday, October 27, 2020 11:04 AM
To: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>; Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
'PKraman@ycst.com<mailto:PKraman@ycst.com>' <PKraman@ycst.com<mailto:PKraman@ycst.com>>;
Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'Vrana, Robert' <RVrana@ycst.com<mailto:RVrana@ycst.com>>
Cc: Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB) <HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB) <ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; 'Lauren DeLuca' <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw <EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks <JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Kasowitz team,

During last week's call, you agreed to the following:

1. Kasowitz will ask Mr. Weatherly whether Priegues' Exhibits 56 and 57 were the documents to which he referred when testifying about the "security protocol" or "security protocols list" at his deposition. If they are not, FA agrees to produce referenced documents. Please provide the estimated timing of such production after Mr. Weatherly gets back from his vacation.

1. Kasowitz will confirm whether all confidentiality agreements/NDAs to which Mr. Weatherly referred were produced. This search is for documents that may not necessarily have been picked up by the search terms used

by the parties. Similarly, Shook will check that all NDAs in Defendants' possession with Mr. Sullivan and existing/prospective customers were produced. Shook also agrees to check for any related logs. We will update you regarding the NDA issue this week. Please provide the estimating timing on your end.

2. Thank you for agreeing to provide Yodlee with access to GitHub. FA agrees to prioritize the production of the demos when providing access to this platform. Please provide the estimated timing of such production.

3. Thank you for checking for additional recordings. Please provide the estimated timing of your response.

4. Thank you for clarifying that the documents to which Mr. Weatherly referred were Yodlee documents produced in this litigation.

5. Yodlee has set out its position regarding waiver of privilege both in the deposition transcript, in our emails following the deposition and at the meet and confer. In the event that FA disagrees that the parties are at issue as to whether FA waived privilege as to Mr. Weatherly's understanding of the MSA, FA needs to promptly produce the requested communications.

Amy

From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Thursday, October 22, 2020 12:53 PM
To: Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>; Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
'PKraman@ycst.com<mailto:PKraman@ycst.com>' <PKraman@ycst.com<mailto:PKraman@ycst.com>>;
Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'Vrana, Robert' <RVrana@ycst.com<mailto:RVrana@ycst.com>>
Cc: Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB) <HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB) <ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; 'Lauren DeLuca' <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw <EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks <JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep


EXTERNAL
Amy,

The below responds to your inquiries reflected in your October 8 email:

(1) We are not sure what you mean by the "security protocol" or "security protocols list," but we assume you are referring to the Security Policy and the EAV Security Policy introduced at Cesar Priegues' deposition as Exhibits 56 and 57. To the extent you are seeking communications relating to the Security Policy or the EAV Security Policy, FA has already produced all non-privileged custodial emails pursuant to the parties' negotiated and agreed-upon search terms. If you are seeking additional communications beyond what was produced, we can discuss at today's meet and confer.

(2) The NDAs and/or confidentiality agreements to which Mr. Weatherly was referring were those entered into between actual or prospective Risk Insight customers and Yodlee. We are not currently aware of any NDAs and/or confidentiality agreements entered into as between FA or independent contractors, on one hand, and actual or potential Risk Insight customers, on the other, but we are looking into it due to your request. To the extent you are seeking communications regarding any of the foregoing, again, FA has already produced all non-privileged custodial emails pursuant to the parties' negotiated and agreed-upon search terms. If you are seeking additional communications beyond what was produced, we can discuss at today's meet and confer.

(3) As Mr. Priegues testified, any static demonstrations that were uploaded to Yodlee's demo environment on Yodlee's AWS account are contained in GitHub. We have already agreed to provide Yodlee with access to GitHub.

(4) FA is aware of two other FinDevR events in which FA made presentations that may have been recorded. To the extent that recordings of these events exist, and are in FA's possession, custody, or control (which we are trying to determine), we will produce them. FA is not aware that any other similar presentations exist and were recorded.

(5) The documents reviewed by Mr. Weatherly that show the "side-by-side comparisons of Yodlee's Snapshot reports, their new API standards matching up line for line with ours in side-by-side notes where they're trying to reverse engineer our technology and do a one-for-one field match on the products that we have, as well as email documentation internally between each other saying that they are trying to copy and take what is ours and not to talk to anyone that they're trying to do it" are Yodlee documents that Defendants produced in this litigation.

(6) As an initial matter, your request is improper, as it expressly seeks privileged communications between Mr. Weatherly and counsel. Further, and in any event, your questions are nonsensical, and reflect a fundamental misapprehension of Mr. Weatherly's testimony. As the record amply confirms, Mr. Weatherly testified repeatedly that he believed the materials FA provided to Yodlee to be confidential and proprietary. Contrary to your baseless insinuation, Mr. Weatherly's belief was not based on, and in fact is expressly independent of, Defendants' obligation to treat FA's materials as confidential pursuant to the MSA (which speaks for itself).


Joshua E. Hollander
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-3329
Fax. (212) 954-5150
JHollander@kasowitz.com


This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.
From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Thursday, October 8, 2020 3:01 PM
To: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>; Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
'PKraman@ycst.com<mailto:PKraman@ycst.com>' <PKraman@ycst.com<mailto:PKraman@ycst.com>>; Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; 'Vrana, Robert' <RVrana@ycst.com<mailto:RVrana@ycst.com>>
Cc: Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB) <HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB) <ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; 'Lauren DeLuca' <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>

Subject: FA v. Yodlee - Follow up from Weatherly Dep

**EXTERNAL EMAIL**

_____

Kasowitz Team,

Please produce the following material referenced at Mr. Weatherly's deposition immediately: (1) the "security protocol," or "security protocols list" that allegedly listed confidential documents, and any communications between FA and others regarding that list; (2) all NDAs and/or confidentiality agreements relating to customers of FA and/or Yodlee, prospective customers, underwriters, business analysis, employees of FA, independent contractors of FA, and/or any correspondence or other documents relating to FA's efforts to maintain the alleged confidential nature of its information; (3) the developer demos, including the Embedded Script Developer Demo, the Consumer Portal Demo, and Lender Portal Demo, and any "demos" used internally at FA as part of training with FA personnel and/or Yodlee personnel (Mr. Weatherly mentioned that Mr. Priegues would have access); (4) videos of presentations related to Risk Insight (similar to the presentation on YouTube played at the deposition); (5) the documents reviewed by Mr. Weatherly that show the "side-by-side comparisons of Yodlee's Snapshot reports, their new API standards matching up line for line with ours in side-by-side notes where they're trying to reverse engineer our technology and do a one-for-one field match on the products that we have, as well as email documentation internally between each other saying that they are trying to copy and take what is ours and not to talk to anyone that they're trying to do it"; and (6) all documents, including any communications with counsel, that reflect upon, or relate to, Mr. Weatherly's "understanding" of the Master Services Agreement; Mr. Weatherly's understanding that the MSA "governs the legal terms [and] conditions of [FAs] relationship with Yodlee"; Mr. Weatherly's understanding that the MSA "covers the entire relationship between [FA] and Yodlee with respect to the Risk Insight software product"; and Mr. Weatherly's understanding that all the information provided by FA to Yodlee was confidential "given the nature of the information and the circumstances under which it was disclosed to Yodlee."

Thanks,
Amy

Amy Y. Cho
Partner
Shook, Hardy & Bacon L.L.P.

312.704.7744 | acho@shb.com<mailto:acho@shb.com>

<image001.jpg><http://www.shb.com/>

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT F

| | |
|---|---|
| **From:** | Joshua E. Hollander |
| **Sent:** | Monday, November 23, 2020 10:47 AM |
| **To:** | 'Cho, Amy (SHB)' |
| **Cc:** | Matthew A. Kraus; PKraman@ycst.com; Anthony MacDonald Caputo; Vrana, Robert; Miller, Gary M. (SHB); Abrams, Hugh (SHB); Hansen, Ian (SHB); Richardson, Jason M. (SHB); Lauren DeLuca; Elliana Openshaw; Joshua Marks |
| **Subject:** | RE: FA v. Yodlee - Follow up from Weatherly Dep |

Amy,

All we are asking for at this point (and have been asking for the past two weeks) is for Mr. Priegues to be given access credentials to CloudTrials.  Defendants are the ones who insisted that we first designate Mr. Priegues under the Protective Order in order to receive such credentials, and Plaintiff promptly designated Mr. Priegues on November 16.

We of course disagree with your objection that Mr. Priegues be prohibited from reviewing all "Highly Confidential" information of Defendants, as Mr. Priegues has been properly designated as Plaintiff's In-House Representative under Paragraphs 7 and 8 of the Protective Order.

In the meantime, however, pursuant to your suggestion, please immediately provide CloudTrial credentials for Cesar Priegues (cesar@financialapps.com) in order to move things along.

For the time being, Plaintiff agrees that no other material that is designated by Defendants as "Highly Confidential" can be shown to Mr. Priegues absent Defendants' agreement or a Court Order.  For the avoidance of doubt, Plaintiff disagrees with Defendants' position, and Plaintiff reserves all rights and waives none.

Thanks,
Josh

---

**From:** Cho, Amy (SHB) [mailto:ACHO@shb.com]
**Sent:** Monday, November 23, 2020 9:09 AM
**To:** Joshua E. Hollander <JHollander@kasowitz.com>
**Cc:** Matthew A. Kraus <MKraus@kasowitz.com>; PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh,

Under Para. 8 of the Protective Order, we write to notify you that we object to your inclusion of Cesar Priegues as the In-House Representative who would be allowed to review all highly confidential information of Yodlee.  We object on the grounds that Mr. Priegues is "intimately involved in the day-to-day management of all aspects of FA's Development Operations, including hosting, deployment, QA, and customer care."  As such, he is involved in technical matters relating to FA's software and should not be given access to highly confidential information relating to Yodlee's software.

1

**Ex. F Page 1 of 21**

We anticipate that you will disagree with our objection.  In an effort to move things along, however, we are willing to consider granting Mr. Priegues access to certain of the environments on a case-by-case basis (such as CloudTrail), but are unwilling to allow him to review all Highly Confidential information of Yodlee.  FA has technical experts who have been approved for access to all highly confidential information and those experts can be used to handle FA's reviews of the environments, instead of Mr. Priegues.  If you agree that no other material that is designated "Highly Confidential" can be shown to Mr. Priegues absent a Court Order (i.e., the terms of the Stipulated Protective Order), we will get credentials for Mr. Priegues for CloudTrail.   Please let us know if we are in agreement.


Amy

---

**From:** Joshua E. Hollander <JHollander@kasowitz.com>
**Sent:** Monday, November 16, 2020 6:49 PM
**To:** Cho, Amy (SHB) <ACHO@shb.com>
**Cc:** Matthew A. Kraus <MKraus@kasowitz.com>; PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Follow up from Weatherly Dep


**EXTERNAL**

Amy,

Please note that we have never requested "unfettered access to Yodlee's private network" (or anything even remotely analogous).

To the contrary, just six days ago, you told us that "Yodlee is willing to give [us] 'read only' access to Cloud Trails so that [we] can poke around [ourselves]," and that we would be able to "click on the individual user and see the log history."  Now, however, you assert, without explanation, that CloudTrail contains "highly confidential" information akin to source code that may be accessed only on a "need-to-know basis," and purport to limit our access to only one set of credentials.

We object to Defendants' arbitrary and capricious access limitation.  Your invocation of a purported "need-to-know-basis" finds no valid basis in either the law or the parties' protective order.

For the avoidance of doubt, **please be advised** that FinApps reserves all rights, including the right to request additional credentials for access to CloudTrail.

In any event, as I previously stated, Plaintiff designates Cesar Preigues to review "Highly Confidential" discovery material under the Protective Order.  Mr. Priegues is Vice President of Development Operations at FinApps.  His general responsibilities include, among others, the day-to-day management of all aspects of Development Operations including hosting, deployment, QA, and customer care.  Mr. Priegues is not a competitive decision maker of FinApps, and his access to CloudTrail is material and necessary to discovery and the resolution of this litigation.

Accordingly, please immediately provide CloudTrial credentials for Cesar Priegues (cesar@financialapps.com).

Regards,
Josh

**From:** Cho, Amy (SHB) [mailto:ACHO@shb.com]
**Sent:** Monday, November 16, 2020 4:21 PM
**To:** Joshua E. Hollander <JHollander@kasowitz.com>
**Cc:** Matthew A. Kraus <MKraus@kasowitz.com>; PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh,

Although the Cloud Trail System is not "source code," due to the highly confidential nature of bank business (agreements with customers, PII, etc.), we simply cannot allow an FA employee unfettered access to Yodlee's private network.  The information is more complex than simply "logs," which we already provided to you on November 3.  In an effort to cooperate and provide you with more access, we have offered one representative a read-only log-in to Yodlee's internal system.  Given the sensitivity of this information we cannot do this without limitation.

There are two options here, both of which provide FA incremental access on a need-to-know basis:

1. Designate your expert as the person to have log-in access.  If there are portions your expert believes are not confidential and needs to share with FA / Kasowitz, please make that request and we'll do our best to accommodate such request.
2. Designate Cesar as the person to have log-in access.  With regard to the in-house representative, we need the following under Para. 8 of the P.O.: (1) the full name of the in-house representative and their title and general responsibilities in the organization; (2) a brief statement confirming that the in-house representative is not a competitive decision maker, and that disclosure is necessary to the resolution of this litigation.  We have five business days after receipt of notice to object in writing.

Please let me know how you'd like to proceed.

Amy

**From:** Joshua E. Hollander <JHollander@kasowitz.com>
**Sent:** Monday, November 16, 2020 2:26 PM
**To:** Cho, Amy (SHB) <ACHO@shb.com>
**Cc:** Matthew A. Kraus <MKraus@kasowitz.com>; PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Follow up from Weatherly Dep

**EXTERNAL**

Amy,

3

The CloudTrail system is not source code, but rather a purported repository for logs from Yodlee's AWS environments that host/hosted Risk Insight, as you previously explained to us.  Thus, access to this system is governed by the Protective Order in this case.  If Defendants wish to designate the contents of this system as "Highly Confidential," that is their choice.

Pursuant to Paragraph 7(c) of the Protective Order, Plaintiff designates Cesar Preigues to review "Highly Confidential" discovery material.  Attached please find Mr. Preigues' executed Agreement to be Bound by the Protective Order, which allows Mr. Priegues access to review Defendants' materials that have been designated "Highly Confidential."  Accordingly, please immediately provide CloudTrial credentials for Cesar Priegues (cesar@financialapps.com).

We continue to object to your unreasonable and baseless limitation of providing FinApps with only one set of credentials for accessing the CloudTrial system, and we reserve all rights, including but not limited to the right to request additional credentials.

Regards,
Josh

---

**From:** Cho, Amy (SHB) [mailto:ACHO@shb.com]
**Sent:** Monday, November 16, 2020 1:08 PM
**To:** Joshua E. Hollander <JHollander@kasowitz.com>
**Cc:** Matthew A. Kraus <MKraus@kasowitz.com>; PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>
**Subject:** RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh,

This information will be designated as "highly confidential." Mr. Priegues is not covered by the protective order. As I mentioned, access to Cloud Trail is akin to the software exchange because it is a private network. I would suggest that the person accessing the source code be the same person who accesses Cloud Trail. I believe this is your expert. Although, if you would like the person to be a Kasowitz person, that is fine.

Amy

-----Original Message-----
From: Joshua E. Hollander <JHollander@kasowitz.com>
Sent: Friday, November 13, 2020 6:13 PM
To: Cho, Amy (SHB) <ACHO@shb.com>
Cc: Matthew A. Kraus <MKraus@kasowitz.com>; PKraman@ycst.com; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Vrana, Robert <RVrana@ycst.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Hansen, Ian (SHB) <ihansen@shb.com>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com>; Lauren DeLuca <ldeluca@connollygallagher.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>
Subject: Re: FA v. Yodlee - Follow up from Weatherly Dep

EXTERNAL

Amy,

As stated below, limiting access to only one individual is unreasonable and will cause FinApps substantial prejudice. Further, you still have yet to provide any legitimate basis or explanation for this arbitrary limitation.

Given that we have an urgent need to conduct an initial review, however, and that assessment of the logs and other information contained within the CloudTrail service cannot be further delayed by Defendants' recalcitrance, please immediately provide credentials for Cesar Priegues (cesar@financialapps.com<mailto:cesar@financialapps.com>).

We reserve all rights, including but not limited to the right to request additional credentials.

Regards,
Josh

On Nov 13, 2020, at 2:57 PM, Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>> wrote:

Josh,

Access to Cloud Trail is akin to the software exchange because it is a private network. The only difference is we are not requiring you to come to a controlled setting at Yodlee; instead we are willing to give you remote access but it has to be limited to one person. If not you, please let us know the individual that needs credentials.

Any logs that we have of access to AWS is on Cloud Trail. However, we do not have access to the AWS system, as the FA witnesses have confirmed under oath.

Amy

From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Friday, November 13, 2020 12:23 PM
To: Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
PKraman@ycst.com<mailto:PKraman@ycst.com>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert
<RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; Lauren DeLuca
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

EXTERNAL

Amy,

Providing FinApps with a single set of credentials for CloudTrail, which only one individual can access, is arbitrary, unreasonable, and will cause FinApps substantial prejudice. Moreover, you have provided no basis whatsoever for the artificial limit you seek to impose. To conduct a meaningful review and assessment of the logs and other information contained within the CloudTrail service, Kasowitz, individuals at FinApps, and our expert, Quandary Peak -- all of whom are subject to the Protective Order governing this matter -- require remote access to the information stored in CloudTrail. Accordingly, please provide us with a minimum of three sets of credentials so that Kasowitz, FinApps, and Quandary Peak can immediately access the CloudTrail service.


Additionally, your assertion that "Yodlee's access to AWS information is limited" until FinApps "unseals the vault" is grossly inaccurate. The operational status of the Risk Insight platform has no bearing on the data and information stored in Yodlee's AWS environments, whether such data and information was properly preserved, or whether such data and information is accessible. This is because data or information written or created in an AWS environment is stored there in perpetuity, unless it is deleted by the account owner. This is true regardless of whether Risk Insight itself is operable within Yodlee's AWS environments at any given time.


Finally, and for the avoidance of doubt, "sealing the vault" does not affect or restrict Yodlee's access to the AWS environments whatsoever. Yodlee has always been, and remains, the owner of the AWS account, and should be able to obtain whatever access it needs. Further, we have confirmed that Yodlee was provided with the "keys" to the Vault service, and therefore, should have the ability to "unseal the vault" with respect to the Risk Insight platform at any time, to the extent that it has not already been "unsealed."

Regards,
Josh


From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Wednesday, November 11, 2020 12:09 PM
To: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
PKraman@ycst.com<mailto:PKraman@ycst.com>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert
<RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; Lauren DeLuca
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh,

Regarding Cloud Trails, because access needs to be limited to the person with credential, we wanted to clarify

that you will not be allowed to give your credentials to anyone else for use without further discussing with us. I'll connect with the client asap to get you read-only access. Once I have your agreement that you will not share credentials with anyone, we can move forward with Cloud Trails.

After providing read-only access to Cloud Trails, we confirm that we will have produced and/or given access to everything Yodlee is able to access with respect to RI AWS (as we have already produced Oracle DB, MongoDB, Fresh Desk, etc.) As you know, until FA "unseals the vault" (per FA witnesses), Yodlee's access to AWS information is limited. And per the below thread, if you need access to any of the third-party databases, FA will have to subpoena those parties directly. To help FA with its investigation, Yodlee has agreed to give authorization for those entities to release information and Yodlee agrees to work cooperatively with FA on that front.

I'm sorry you disagree with my use of the word "characterization." We'll just have to agree to disagree on that one.

Amy

From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Wednesday, November 11, 2020 9:44 AM
To: Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
PKraman@ycst.com<mailto:PKraman@ycst.com>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert
<RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; Lauren DeLuca
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep


EXTERNAL
Amy,

Thank you for confirming that the information that will be made available to Plaintiff through CloudTrail comprises "everything [Defendants] have" with respect to Yodlee's AWS logs and that Defendants have no additional data or information to produce to Plaintiff concerning the Risk Insight environments that were hosted on Yodlee's AWS account.

You can provide credentials to me at jhollander@kasowitz.com<mailto:jhollander@kasowitz.com>.

Finally, we take issue with your use of the word "characterization" with respect to the contents of my prior email. My correspondence with you on this issue is firmly based on the factual record to date, and includes language and descriptions taken verbatim from prior correspondence, including your memorializations of previous meet and confers between the parties.

Regards,
Josh

From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Tuesday, November 10, 2020 8:23 PM
To: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
PKraman@ycst.com<mailto:PKraman@ycst.com>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert
<RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; Lauren DeLuca
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh - everything we have will be in the "read-only" access of cloud trails. You'll be able to click on the individual user and see the log history. We just need the email address of the person who wants credentials. Once we have that, you can investigate and let us know if you have follow up questions.

We disagree with your characterization of events starting with the third sentence of your email below.

From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Tuesday, November 10, 2020 7:12 PM
To: Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
PKraman@ycst.com<mailto:PKraman@ycst.com>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert
<RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; Lauren DeLuca
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep


EXTERNAL
Amy,

Thank you for your response. We would like to implement "read only" access to CloudTrail as soon as possible -- please advise as to next steps, and credentials.

Read-only access to CloudTrail so that Plaintiff can "poke around," however, does not in any way remedy the significant deficiencies that pervade Defendants' production, and which we have been raising for months now.

As an initial matter, as we stated on Nov. 9, the AWS "access log" that Defendants provided is merely a

credentials report generated from AWS Identity and Access Management (IAM). It provides no information concerning actual activity within any AWS system, much less critical details concerning how such environments were accessed, what occurred in them, and to what end. As we have explained to you, it is our understanding that there should be a number of other Risk Insight logs and related materials that were maintained by Yodlee's AWS system, including activity logs for the Risk Insight production environment and all other lower environments. These logs and related materials are not available or accessible through CloudTrail because, among other reasons, they were stored in completely separate AWS services or other services that interfaced with the AWS system.

Moreover, Defendants' sudden lack of comprehension regarding "what [we're] looking for" is striking, as we have been discussing these issues since January of this year, and Defendants have made multiple representations that all of the relevant Risk Insight data and files located on Yodlee's AWS system had been appropriately backed up and will be produced, including but not limited to all activity logs for each of the Risk Insight environments.

To that end, we yet again request that Defendants commit to produce (i) all logs and related materials preserved from all AWS environments used in connection with Risk Insight 2.0 (including, at minimum, the Production, UAT, Demo, and Sandbox environments); and (ii) all logs and related materials archived in any operations servers and other services that interfaced with the AWS environments.

No later than Thursday, November 12, please either confirm that Defendants will do so, or confirm that the credentials log you provided and the information that will be made available to Plaintiff via read only access to CloudTrail comprises the extent of Defendants' production on this front.

Thanks,
Josh


From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Tuesday, November 10, 2020 9:09 AM
To: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>; PKraman@ycst.com<mailto:PKraman@ycst.com>>; Anthony MacDonald Caputo <ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert <RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB) <GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB) <HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB) <ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB) <JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; Lauren DeLuca <ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw <EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks <JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Hi Josh,

We produced an exported log of everyone who had access to the environments (and last date of access) from Cloud Trails. Because we are still having difficulty understanding what you're looking for, Yodlee is willing to give you "read only" access to Cloud Trails so that you can poke around yourself. If that is acceptable, I'll put that in motion. We would need agreement that any accessed information would be deemed confidential under the PO and an email address for the person to whom we would give access.

Amy


From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Monday, November 9, 2020 4:40 PM
To: Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
PKraman@ycst.com<mailto:PKraman@ycst.com>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert
<RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; Lauren DeLuca
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep


EXTERNAL
Amy,

We reviewed Defendants' recent production and confirmed that the AWS "access log" that Defendants purported to produce is not an access log, but rather just a credentials report generated from AWS Identity and Access Management (IAM). Accordingly (as and stated in my October 28, 2020 email), we still have yet to receive a full production of the data related to the Risk Insight production environment that was stored on Yodlee's AWS platform, including all of the actual logs, including but not limited to access logs, associated with this production environment.

Further, as we informed you, Defendants still have not produced any data (e.g., logs or otherwise) related to Risk Insight's "lower" environments (i.e., UAT, Demo, and Sandbox), and Defendants have not produced any data related to the Risk Insight development and operational systems that interfaced with such environments.

Therefore, please confirm by no later than Wednesday, November 11, 2020 whether Defendants have produced (i) all "documents, logs, and other material that was preserved from the foregoing Risk Insight environments [i.e., Production, UAT, Demo, and Sandbox] hosted on Yodlee's AWS account," and (ii) all "documents, logs, and other material that was archived in the [] Risk Insight operations servers and other services that interfaced with the Risk Insight AWS environments," as represented by Defendants during the parties' August 12, 2020 meet and confer, and in your August 17, 2020 email.

Thanks,
Josh


From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Tuesday, November 3, 2020 2:40 PM
To: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
PKraman@ycst.com<mailto:PKraman@ycst.com>; Anthony MacDonald Caputo

<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert
<RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; Lauren DeLuca
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh,

For AWS, Yodlee was able to download an access log from Cloud Trails. It is attached and produced with this email.

As for Pingdom, Papertrail, and Cloud 66, Yodlee does not have access to those databases since Yodlee stopped paying for those subscriptions after FA shut down RI. FA will have to subpoena those parties directly. To help FA with its investigation, Yodlee agrees to give authorization for those entities to release logs. For ease of reference, attached is account information for those entities (and others in case FA is interested) to help FA craft its subpoena.

Amy


-----Original Message-----
From: Cho, Amy (SHB)
Sent: Tuesday, November 3, 2020 11:22 AM
To: 'Joshua E. Hollander' <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
PKraman@ycst.com<mailto:PKraman@ycst.com>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert
<RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB)
<gmiller@shb.com<mailto:gmiller@shb.com>>; Abrams, Hugh (SHB)
<habrams@shb.com<mailto:habrams@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<jmrichardson@shb.com<mailto:jmrichardson@shb.com>>; Lauren DeLuca
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh,

1. 11/18 is fine for Mr. Weatherly.
2. We need any information provided in Response to Nos. 2 and 4 (NDAs, confidentiality agreements, recordings of presentations) well in advance of the Sullivan deposition scheduled for Nov. 10.
3. We will be producing information re: AWS materials this week.

Amy

-----Original Message-----
From: Joshua E. Hollander <JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>>
Sent: Tuesday, November 3, 2020 8:59 AM
To: Cho, Amy (SHB) <ACHO@shb.com<mailto:ACHO@shb.com>>
Cc: Matthew A. Kraus <MKraus@kasowitz.com<mailto:MKraus@kasowitz.com>>;
PKraman@ycst.com<mailto:PKraman@ycst.com>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com>>; Vrana, Robert
<RVrana@ycst.com<mailto:RVrana@ycst.com>>; Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com>>; Lauren DeLuca
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com>>
Subject: Re: FA v. Yodlee - Follow up from Weatherly Dep

EXTERNAL

Amy,

Mr. Weatherly is available for the 30(b)(6) deposition on Nov. 17 or 18. Please let us know if one of those dates works for Defendants.

We will have answers for you regarding items 1-4 this week.

Thanks,
Josh


On Nov 1, 2020, at 5:08 PM, Cho, Amy (SHB)
<ACHO@shb.com<mailto:ACHO@shb.com<mailto:ACHO@shb.com%3cmailto:ACHO@shb.com>>> wrote:

When will you produce items #1-4 below?

Also, do you have available 30b6 dates for Mr. Weatherly yet?

From: Joshua E. Hollander
<JHollander@kasowitz.com<mailto:JHollander@kasowitz.com<mailto:JHollander@kasowitz.com%3cmailto:JHollander@kasowitz.com>>>
Sent: Friday, October 30, 2020 8:42 PM
To: Cho, Amy (SHB)
<ACHO@shb.com<mailto:ACHO@shb.com<mailto:ACHO@shb.com%3cmailto:ACHO@shb.com>>>;
Matthew A. Kraus
<MKraus@kasowitz.com<mailto:MKraus@kasowitz.com<mailto:MKraus@kasowitz.com%3cmailto:MKraus@kasowitz.com>>>; 'PKraman@ycst.com<mailto:PKraman@ycst.com><mailto:PKraman@ycst.com>'
<PKraman@ycst.com<mailto:PKraman@ycst.com<mailto:PKraman@ycst.com%3cmailto:PKraman@ycst.com>>>; Anthony MacDonald Caputo

<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com%3cmailto:ACaputo@kasowitz.com>>>; 'Vrana, Robert'
<RVrana@ycst.com<mailto:RVrana@ycst.com<mailto:RVrana@ycst.com%3cmailto:RVrana@ycst.com>>>
Cc: Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com<mailto:GMILLER@shb.com%3cmailto:GMILLER@shb.com>>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com<mailto:HABRAMS@shb.com%3cmailto:HABRAMS@shb.com>>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com<mailto:ihansen@shb.com%3cmailto:ihansen@shb.com>>>;
Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com%3cmailto:JMRICHARDSON@shb.com>>>; 'Lauren DeLuca'
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com%3cmailto:ldeluca@connollygallagher.com>>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com%3cmailto:EOpenshaw@kasowitz.com>>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com<mailto:JMarks@kasowitz.com%3cmailto:JMarks@kasowitz.com>>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep


EXTERNAL
Amy,

Given the crucial importance of the AWS materials, please confirm that they will be produced by November 6, if not sooner.

With respect to #6, please be advised that we not only disagree with your position regarding waiver, but also fail to understand your basis for that position, as you have provided no support or explanation for it.

Regards,
Josh


From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Friday, October 30, 2020 3:22 PM
To: Joshua E. Hollander
<JHollander@kasowitz.com<mailto:JHollander@kasowitz.com<mailto:JHollander@kasowitz.com%3cmailto:JHollander@kasowitz.com>>>; Matthew A. Kraus
<MKraus@kasowitz.com<mailto:MKraus@kasowitz.com<mailto:MKraus@kasowitz.com%3cmailto:MKraus@kasowitz.com>>>; 'PKraman@ycst.com<mailto:PKraman@ycst.com><mailto:PKraman@ycst.com>'
<PKraman@ycst.com<mailto:PKraman@ycst.com<mailto:PKraman@ycst.com%3cmailto:PKraman@ycst.com>>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com%3cmailto:ACaputo@kasowitz.com>>>; 'Vrana, Robert'
<RVrana@ycst.com<mailto:RVrana@ycst.com<mailto:RVrana@ycst.com%3cmailto:RVrana@ycst.com>>>
Cc: Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com<mailto:GMILLER@shb.com%3cmailto:GMILLER@shb.com>>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com<mailto:HABRAMS@shb.com%3cmailto:HABRAMS@shb.com>>>; Hansen, Ian (SHB)

**Ex. F Page 13 of 21**

ihansen@shb.com<mailto:ihansen@shb.com<mailto:ihansen@shb.com%3cmailto:ihansen@shb.com>>>;
Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com%3cmailto:JMRICHARDSON@shb.com>>>; 'Lauren DeLuca'
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com%3cmailto:ldeluca@connollygallagher.com>>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com%3cmailto:EOpenshaw@kasowitz.com>>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com<mailto:JMarks@kasowitz.com%3cmailto:JMarks@kasowitz.com>>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Josh,

To answer your last question, we will be producing additional information regarding AWS. We will also be producing the agreements visitors sign using Yodlee's Envoy system.

We appear to be at an impasse on the #6. Our position is fairly straightforward. We believe FA waived privilege as to Mr. Weatherly's understanding of the MSA during your questioning of that witness. We understand you disagree with our position.

Amy


From: Joshua E. Hollander
<JHollander@kasowitz.com<mailto:JHollander@kasowitz.com<mailto:JHollander@kasowitz.com%3cmailto:JHollander@kasowitz.com>>>
Sent: Wednesday, October 28, 2020 8:32 PM
To: Cho, Amy (SHB)
<ACHO@shb.com<mailto:ACHO@shb.com<mailto:ACHO@shb.com%3cmailto:ACHO@shb.com>>>;
Matthew A. Kraus
<MKraus@kasowitz.com<mailto:MKraus@kasowitz.com<mailto:MKraus@kasowitz.com%3cmailto:MKraus@kasowitz.com>>>; 'PKraman@ycst.com<mailto:PKraman@ycst.com><mailto:PKraman@ycst.com>'
<PKraman@ycst.com<mailto:PKraman@ycst.com<mailto:PKraman@ycst.com%3cmailto:PKraman@ycst.com>>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com%3cmailto:ACaputo@kasowitz.com>>>; 'Vrana, Robert'
<RVrana@ycst.com<mailto:RVrana@ycst.com<mailto:RVrana@ycst.com%3cmailto:RVrana@ycst.com>>>
Cc: Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com<mailto:GMILLER@shb.com%3cmailto:GMILLER@shb.com>>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com<mailto:HABRAMS@shb.com%3cmailto:HABRAMS@shb.com>>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com<mailto:ihansen@shb.com%3cmailto:ihansen@shb.com>>>;
Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com%3cmailto:JMRICHARDSON@shb.com>>>; 'Lauren DeLuca'
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com%3cmailto:ldeluca@connollygallagher.com>>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com%3cmail

to:EOpenshaw@kasowitz.com>>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com<mailto:JMarks@kasowitz.com%3cmailto:JMarks@kasowitz.com>>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep


EXTERNAL
Amy,

The below responds to the points raised in your October 27, 2020 email:

1. Kasowitz will ask Mr. Weatherly whether Priegues' Exhibits 56 and 57 were the documents to which he referred when testifying about the "security protocol" or "security protocols list" at his deposition. If they are not, FA agrees to produce referenced documents. Please provide the estimated timing of such production after Mr. Weatherly gets back from his vacation.

Response: We have inquired with Mr. Weatherly as to the documents he was referring to with respect to the "security protocol" and "security protocol lists," and we hope to have an answer by tomorrow.

2. Kasowitz will confirm whether all confidentiality agreements/NDAs to which Mr. Weatherly referred were produced. This search is for documents that may not necessarily have been picked up by the search terms used by the parties. Similarly, Shook will check that all NDAs in Defendants' possession with Mr. Sullivan and existing/prospective customers were produced. Shook also agrees to check for any related logs. We will update you regarding the NDA issue this week. Please provide the estimating timing on your end.

Response: We are confirming whether there are any NDAs or confidentiality agreements entered by FinApps' employees or independent contractors of FinApps and, to the extent they exist, we will produce them. With respect to our request of Yodlee, to confirm, we requested that Yodlee search for and produce all NDAs or confidentiality agreements entered between Yodlee, on the one hand, and any customer or prospective customer of Risk Insight, on the other hand.

3. Thank you for agreeing to provide Yodlee with access to GitHub. FA agrees to prioritize the production of the demos when providing access to this platform. Please provide the estimated timing of such production.

Response: As we informed you, GitHub contains FinApps' source code and, as such, the production of GitHub must be pursuant to the parties' source code protocol.

4. Thank you for checking for additional recordings. Please provide the estimated timing of your response.

Response: We are confirming whether any other FinApps' presentation(s) made at FinDevR conferences were recorded and, to the extent they were and FinApps is in possession of the recordings, we will produce them.

5. Thank you for clarifying that the documents to which Mr. Weatherly referred were Yodlee documents produced in this litigation.

6. Yodlee has set out its position regarding waiver of privilege both in the deposition transcript, in our emails following the deposition and at the meet and confer. In the event that FA disagrees that the parties are at issue as to whether FA waived privilege as to Mr. Weatherly's understanding of the MSA, FA needs to promptly produce the requested communications.

Response: We disagree that "Yodlee has set out its position regarding waiver" whatsoever, and to be clear, we

still do not understand what waiver Yodlee contends has occurred, its extent, or the legal basis for Yodlee's theory of waiver. Further, we have reviewed the final transcript and it does not demonstrate Mr. Weatherly's waiver of any attorney client privilege at his deposition. We also do not understand to what communications you are referring.

* * *

In addition, as discussed during our October 22, 2020 meet and confer, we are still awaiting your confirmation as to whether Defendants intend to produce any further data related to the Risk Insight AWS environments and the Risk Insight development and operational systems.

As we informed you, the production Defendants made on September 25, 2020 is grossly deficient. Among other things, Defendants' September 25 production did not include any data related to the Risk Insight demo, UAT, or sandbox environments, and did not include any data related to the Risk Insight development and operational systems, such as Pingdom, Papertrial, and Cloud66. Moreover, the data produced by Defendants related to Risk Insight's production environment is incomplete and is missing, among other things, audit and usage logs.

Please confirm by no later than Friday, October 30, 2020 whether Defendants intend to produce any further data related to the Risk Insight AWS environments and the Risk Insight development and operational systems.

Thanks,
Josh


From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Tuesday, October 27, 2020 11:04 AM
To: Joshua E. Hollander
<JHollander@kasowitz.com<mailto:JHollander@kasowitz.com<mailto:JHollander@kasowitz.com%3cmailto:JHollander@kasowitz.com>>>; Matthew A. Kraus
<MKraus@kasowitz.com<mailto:MKraus@kasowitz.com<mailto:MKraus@kasowitz.com%3cmailto:MKraus@kasowitz.com>>>; 'PKraman@ycst.com'<mailto:PKraman@ycst.com><mailto:PKraman@ycst.com>'
<PKraman@ycst.com<mailto:PKraman@ycst.com<mailto:PKraman@ycst.com%3cmailto:PKraman@ycst.com>>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com%3cmailto:ACaputo@kasowitz.com>>>; 'Vrana, Robert'
<RVrana@ycst.com<mailto:RVrana@ycst.com<mailto:RVrana@ycst.com%3cmailto:RVrana@ycst.com>>>
Cc: Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com<mailto:GMILLER@shb.com%3cmailto:GMILLER@shb.com>>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com<mailto:HABRAMS@shb.com%3cmailto:HABRAMS@shb.com>>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com<mailto:ihansen@shb.com%3cmailto:ihansen@shb.com>>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com%3cmailto:JMRICHARDSON@shb.com>>>; 'Lauren DeLuca'
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com%3cmailto:ldeluca@connollygallagher.com>>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com%3cmailto:EOpenshaw@kasowitz.com>>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com<mailto:JMarks@kasowitz.com%3cmailto:JMarks@ka

sowitz.com>>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep

Kasowitz team,

During last week's call, you agreed to the following:


1. Kasowitz will ask Mr. Weatherly whether Priegues' Exhibits 56 and 57 were the documents to which he referred when testifying about the "security protocol" or "security protocols list" at his deposition. If they are not, FA agrees to produce referenced documents. Please provide the estimated timing of such production after Mr. Weatherly gets back from his vacation.

1. Kasowitz will confirm whether all confidentiality agreements/NDAs to which Mr. Weatherly referred were produced. This search is for documents that may not necessarily have been picked up by the search terms used by the parties. Similarly, Shook will check that all NDAs in Defendants' possession with Mr. Sullivan and existing/prospective customers were produced. Shook also agrees to check for any related logs. We will update you regarding the NDA issue this week. Please provide the estimating timing on your end.
2. Thank you for agreeing to provide Yodlee with access to GitHub. FA agrees to prioritize the production of the demos when providing access to this platform. Please provide the estimated timing of such production.
3. Thank you for checking for additional recordings. Please provide the estimated timing of your response.
4. Thank you for clarifying that the documents to which Mr. Weatherly referred were Yodlee documents produced in this litigation.
5. Yodlee has set out its position regarding waiver of privilege both in the deposition transcript, in our emails following the deposition and at the meet and confer. In the event that FA disagrees that the parties are at issue as to whether FA waived privilege as to Mr. Weatherly's understanding of the MSA, FA needs to promptly produce the requested communications.


Amy

From: Joshua E. Hollander
<JHollander@kasowitz.com<mailto:JHollander@kasowitz.com<mailto:JHollander@kasowitz.com%3cmailto:JHollander@kasowitz.com>>>
Sent: Thursday, October 22, 2020 12:53 PM
To: Cho, Amy (SHB)
<ACHO@shb.com<mailto:ACHO@shb.com<mailto:ACHO@shb.com%3cmailto:ACHO@shb.com>>>;
Matthew A. Kraus
<MKraus@kasowitz.com<mailto:MKraus@kasowitz.com<mailto:MKraus@kasowitz.com%3cmailto:MKraus@kasowitz.com>>>; 'PKraman@ycst.com<mailto:PKraman@ycst.com><mailto:PKraman@ycst.com>'
<PKraman@ycst.com<mailto:PKraman@ycst.com<mailto:PKraman@ycst.com%3cmailto:PKraman@ycst.com>>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com%3cmailto:ACaputo@kasowitz.com>>>; 'Vrana, Robert'
<RVrana@ycst.com<mailto:RVrana@ycst.com<mailto:RVrana@ycst.com%3cmailto:RVrana@ycst.com>>>
Cc: Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com<mailto:GMILLER@shb.com%3cmailto:GMILLER@shb.com>>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com<mailto:HABRAMS@shb.com%3cmailto:HABRAMS@shb.com>>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com<mailto:ihansen@shb.com%3cmailto:ihansen@shb.com>>>;
Richardson, Jason M. (SHB)

<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com%3cmailto:JMRICHARDSON@shb.com>>>; 'Lauren DeLuca'
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com%3cmailto:ldeluca@connollygallagher.com>>>; Elliana Openshaw
<EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com<mailto:EOpenshaw@kasowitz.com%3cmailto:EOpenshaw@kasowitz.com>>>; Joshua Marks
<JMarks@kasowitz.com<mailto:JMarks@kasowitz.com<mailto:JMarks@kasowitz.com%3cmailto:JMarks@kasowitz.com>>>
Subject: RE: FA v. Yodlee - Follow up from Weatherly Dep


EXTERNAL
Amy,

The below responds to your inquiries reflected in your October 8 email:

(1) We are not sure what you mean by the "security protocol" or "security protocols list," but we assume you are referring to the Security Policy and the EAV Security Policy introduced at Cesar Priegues' deposition as Exhibits 56 and 57. To the extent you are seeking communications relating to the Security Policy or the EAV Security Policy, FA has already produced all non-privileged custodial emails pursuant to the parties' negotiated and agreed-upon search terms. If you are seeking additional communications beyond what was produced, we can discuss at today's meet and confer.

(2) The NDAs and/or confidentiality agreements to which Mr. Weatherly was referring were those entered into between actual or prospective Risk Insight customers and Yodlee. We are not currently aware of any NDAs and/or confidentiality agreements entered into as between FA or independent contractors, on one hand, and actual or potential Risk Insight customers, on the other, but we are looking into it due to your request. To the extent you are seeking communications regarding any of the foregoing, again, FA has already produced all non-privileged custodial emails pursuant to the parties' negotiated and agreed-upon search terms. If you are seeking additional communications beyond what was produced, we can discuss at today's meet and confer.

(3) As Mr. Priegues testified, any static demonstrations that were uploaded to Yodlee's demo environment on Yodlee's AWS account are contained in GitHub. We have already agreed to provide Yodlee with access to GitHub.

(4) FA is aware of two other FinDevR events in which FA made presentations that may have been recorded. To the extent that recordings of these events exist, and are in FA's possession, custody, or control (which we are trying to determine), we will produce them. FA is not aware that any other similar presentations exist and were recorded.

(5) The documents reviewed by Mr. Weatherly that show the "side-by-side comparisons of Yodlee's Snapshot reports, their new API standards matching up line for line with ours in side-by-side notes where they're trying to reverse engineer our technology and do a one-for-one field match on the products that we have, as well as email documentation internally between each other saying that they are trying to copy and take what is ours and not to talk to anyone that they're trying to do it" are Yodlee documents that Defendants produced in this litigation.

(6) As an initial matter, your request is improper, as it expressly seeks privileged communications between Mr. Weatherly and counsel. Further, and in any event, your questions are nonsensical, and reflect a fundamental misapprehension of Mr. Weatherly's testimony. As the record amply confirms, Mr. Weatherly testified repeatedly that he believed the materials FA provided to Yodlee to be confidential and proprietary. Contrary to your baseless insinuation, Mr. Weatherly's belief was not based on, and in fact is expressly independent of,

Defendants' obligation to treat FA's materials as confidential pursuant to the MSA (which speaks for itself).

Joshua E. Hollander
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-3329
Fax. (212) 954-5150
JHollander@kasowitz.com<mailto:JHollander@kasowitz.com>

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

From: Cho, Amy (SHB) [mailto:ACHO@shb.com]
Sent: Thursday, October 8, 2020 3:01 PM
To: Joshua E. Hollander
<JHollander@kasowitz.com<mailto:JHollander@kasowitz.com<mailto:JHollander@kasowitz.com%3cmailto:JHollander@kasowitz.com>>>; Matthew A. Kraus
<MKraus@kasowitz.com<mailto:MKraus@kasowitz.com<mailto:MKraus@kasowitz.com%3cmailto:MKraus@kasowitz.com>>>; 'PKraman@ycst.com<mailto:PKraman@ycst.com><mailto:PKraman@ycst.com>'
<PKraman@ycst.com<mailto:PKraman@ycst.com<mailto:PKraman@ycst.com%3cmailto:PKraman@ycst.com>>>; Anthony MacDonald Caputo
<ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com<mailto:ACaputo@kasowitz.com%3cmailto:ACaputo@kasowitz.com>>>; 'Vrana, Robert'
<RVrana@ycst.com<mailto:RVrana@ycst.com<mailto:RVrana@ycst.com%3cmailto:RVrana@ycst.com>>>
Cc: Miller, Gary M. (SHB)
<GMILLER@shb.com<mailto:GMILLER@shb.com<mailto:GMILLER@shb.com%3cmailto:GMILLER@shb.com>>>; Abrams, Hugh (SHB)
<HABRAMS@shb.com<mailto:HABRAMS@shb.com<mailto:HABRAMS@shb.com%3cmailto:HABRAMS@shb.com>>>; Hansen, Ian (SHB)
<ihansen@shb.com<mailto:ihansen@shb.com<mailto:ihansen@shb.com%3cmailto:ihansen@shb.com>>>; Richardson, Jason M. (SHB)
<JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com<mailto:JMRICHARDSON@shb.com%3cmailto:JMRICHARDSON@shb.com>>>; 'Lauren DeLuca'
<ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com<mailto:ldeluca@connollygallagher.com%3cmailto:ldeluca@connollygallagher.com>>>
Subject: FA v. Yodlee - Follow up from Weatherly Dep

**EXTERNAL EMAIL**

_____

Kasowitz Team,

Please produce the following material referenced at Mr. Weatherly's deposition immediately: (1) the "security protocol," or "security protocols list" that allegedly listed confidential documents, and any communications between FA and others regarding that list; (2) all NDAs and/or confidentiality agreements relating to customers

of FA and/or Yodlee, prospective customers, underwriters, business analysis, employees of FA, independent contractors of FA, and/or any correspondence or other documents relating to FA's efforts to maintain the alleged confidential nature of its information; (3) the developer demos, including the Embedded Script Developer Demo, the Consumer Portal Demo, and Lender Portal Demo, and any "demos" used internally at FA as part of training with FA personnel and/or Yodlee personnel (Mr. Weatherly mentioned that Mr. Priegues would have access); (4) videos of presentations related to Risk Insight (similar to the presentation on YouTube played at the deposition); (5) the documents reviewed by Mr. Weatherly that show the "side-by-side comparisons of Yodlee's Snapshot reports, their new API standards matching up line for line with ours in side-by-side notes where they're trying to reverse engineer our technology and do a one-for-one field match on the products that we have, as well as email documentation internally between each other saying that they are trying to copy and take what is ours and not to talk to anyone that they're trying to do it"; and (6) all documents, including any communications with counsel, that reflect upon, or relate to, Mr. Weatherly's "understanding" of the Master Services Agreement; Mr. Weatherly's understanding that the MSA "governs the legal terms [and] conditions of [FAs] relationship with Yodlee"; Mr. Weatherly's understanding that the MSA "covers the entire relationship between [FA] and Yodlee with respect to the Risk Insight software product"; and Mr. Weatherly's understanding that all the information provided by FA to Yodlee was confidential "given the nature of the information and the circumstances under which it was disclosed to Yodlee."

Thanks,
Amy

Amy Y. Cho
Partner
Shook, Hardy & Bacon L.L.P.

312.704.7744 | acho@shb.com<mailto:acho@shb.com<mailto:acho@shb.com%3cmailto:acho@shb.com>>

<image001.jpg><http://www.shb.com/<http://www.shb.com>>

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT G

| | |
|---|---|
| **From:** | Cho, Amy (SHB) <ACHO@shb.com> |
| **Sent:** | Tuesday, November 24, 2020 1:19 PM |
| **To:** | Joshua E. Hollander; Abrams, Hugh (SHB); Miller, Gary M. (SHB) |
| **Cc:** | Matthew A. Kraus; Anthony MacDonald Caputo; Elliana Openshaw; Joshua Marks; Hansen, Ian (SHB); Richardson, Jason M. (SHB) |
| **Subject:** | RE: Financial Apps, LLC v. Envestnet, Inc., et al., C.A. No. 19-1337-CFC-CJB |

Hi Josh,

We will respond with objections and responses by December 14.

Amy

**From:** Joshua E. Hollander <JHollander@kasowitz.com>
**Sent:** Monday, November 23, 2020 5:29 PM
**To:** Cho, Amy (SHB) <ACHO@shb.com>; Abrams, Hugh (SHB) <HABRAMS@shb.com>; Miller, Gary M. (SHB) <GMILLER@shb.com>
**Cc:** Matthew A. Kraus <MKraus@kasowitz.com>; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>
**Subject:** FW: Financial Apps, LLC v. Envestnet, Inc., et al., C.A. No. 19-1337-CFC-CJB

**EXTERNAL**

Amy,

FinApps served its Rule 30(b)(6) deposition notices on Defendants over two weeks ago.  Please advise when we can expect Defendants' responses.

Thanks,
Josh


Joshua E. Hollander
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel.  (212) 506-3329
Fax. (212) 954-5150
JHollander@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

**From:** Vrana, Robert [mailto:RVrana@ycst.com]
**Sent:** Friday, November 6, 2020 10:40 PM
**To:** 'Abrams, Hugh A.' <habrams@shb.com>; 'Cho, Amy Y.' <acho@shb.com>; 'Davis, Brenda (LAA)' <bdavis@connollygallagher.com>; 'DeLuca, Lauren P.' <ldeluca@connollygallagher.com>; 'Elden, Gary M.'

1

**Ex. G Page 1 of 2**

<gelden@shb.com>; 'Gallagher Jr., Henry E. ' <hgallagher@connollygallagher.com>; 'Miller, Gary' <gmiller@shb.com>
**Cc:** Burton, Emily <EBurton@ycst.com>; Anthony MacDonald Caputo <ACaputo@kasowitz.com>; Elliana Openshaw <EOpenshaw@kasowitz.com>; Flinn, Barr <bflinn@ycst.com>; Hanick, Linda <lhanick@ycst.com>; Joshua E. Hollander <JHollander@kasowitz.com>; Joshua Marks <JMarks@kasowitz.com>; Marc E. Kasowitz <MKasowitz@kasowitz.com>; Kraman, Pilar <PKraman@ycst.com>; Matthew A. Kraus <MKraus@kasowitz.com>
**Subject:** Financial Apps, LLC v. Envestnet, Inc., et al., C.A. No. 19-1337-CFC-CJB

**\*\*EXTERNAL EMAIL\*\***

Counsel,

Attached please find copies of the following:

- Plaintiff's Amended Responses and Objections to Defendants' Fourth Set of RFPs

- Plaintiff's Notice of 30(b)(6) Deposition of Defendant Envestnet

- Plaintiff's Notice of 30(b)(6) Deposition of Defendant Yodlee

Thanks,
Rob



**Robert M. Vrana, Associate**
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P:  302.571.6726 | F: 302.576.3741
RVrana@ycst.com | www.youngconaway.com | vCard

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

# EXHIBIT H

**Joshua Marks**

| | |
|---|---|
| **From:** | Matthew A. Kraus |
| **Sent:** | Wednesday, November 11, 2020 10:50 AM |
| **To:** | Cho, Amy (SHB) |
| **Cc:** | PKraman@ycst.com; Anthony MacDonald Caputo; Vrana, Robert; Miller, Gary M. (SHB); Abrams, Hugh (SHB); Hansen, Ian (SHB); Richardson, Jason M. (SHB); Lauren DeLuca; Elliana Openshaw; Joshua Marks; Joshua E. Hollander |
| **Subject:** | FA v. Yodlee - Production Deficiencies |
| **Attachments:** | 11-11-2020 Letter to Cho.pdf |

Counsel, please see attached.

Matthew A. Kraus
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel.  (212) 506-1814
Fax. (212) 835-5214
MKraus@kasowitz.com

# KASOWITZ BENSON TORRES LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019

(212) 506-1700

FAX: (212) 506-1800

MATTHEW A. KRAUS
DIRECT DIAL: (212) 506-1814
DIRECT FAX: (212) 835-5214
MKRAUS@KASOWITZ.COM

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

November 11, 2020

**BY EMAIL**

Amy Y. Cho, Esq.
Shook Hardy & Bacon LLP
111 South Wacker Drive
Chicago, Illinois 60606

Re:    *FinancialApps, LLC v. Envestnet, Inc. et al.*, No. 19-cv-1337 (D. Del.)

Dear Amy:

On behalf of Plaintiff FinancialApps, LLC ("FinApps"), we write concerning material deficiencies in Defendants' production of documents in response to FinApps' First Requests for Production, served on November 20, 2019 (the "Requests"). As detailed below, key categories of responsive documents appear to be missing from Defendants' document production, including but not limited to documents concerning (i) actual sales, revenues, profits, and related financial information for Risk Insight 2.0; (ii) projected sales, revenues, profits, and related financial information for Risk Insight 2.0; (iii) financial information related to professional services performed in connection with Risk Insight 2.0; (iv) actual sales, revenues, profits, and related financial information for Defendants' Competing Products;[1] and (v) projected sales, revenues, profits, and related financial information for Defendants' Competing Products. FinApps requests that Defendants supplement their production to address the deficiencies set forth below expeditiously, but in no event later than Monday, November 16, 2020.

**I.    Defendants Agreed to Search for and Produce Financial Documents and Information Relating to Risk Insight and Defendants' Competing Products**

Information concerning actual and projected financials (such as sales, revenues, and profits) for Risk Insight 2.0, professional service fees for Risk Insight 2.0, and actual and projected financials (such as sales, revenues, and profits) for each of Defendants' Competing

---

[1]    "Competing Products" shall mean any software and/or related services that offered substantially similar functionality as FinApps' Software (the "Competing Products"), which include but are not limited to Snapshot 1.0, Snapshot 2.0, Snapshot Solutions, Snapshot Services (collectively, "Snapshot"), the Equifax MVP product, the Equifax VOA product, Pre-Qualification, Intelligent Credit Engine, Account Review, Envestnet Credit Exchange, and an embedded user interface that Defendants were developing in secret based on FinApps' technology.

K ASOWITZ  B ENSON  T ORRES llp

Amy Y. Cho, Esq.
November 11, 2020
Page 2

Products, is both highly relevant, and critical to FinApps' ability to assess and prove its damages in this matter.

Accordingly, on November 20, 2019, FinApps expressly requested documents concerning Defendants' actual revenues, profits, costs, and losses with regard to Risk Insight 2.0 (*see* Ex. A, Request Nos. 11, 35, and 38), including documents concerning monthly revenue reports related to Risk Insight 2.0 (*see* Ex. A, Request No. 35), as well as any calculations, derivations, summaries, projections, or forecasts related to Risk Insight 2.0 (*see* Ex. A, Request No. 38).  Similarly, FinApps expressly requested documents concerning Defendants' actual and projected sales, revenues, profits, costs, and losses related to any Competing Product (*see* Ex. A, Request Nos. 3 and 12), including documents concerning any sales, marketing, or licensing of any Competing Product to third-parties (*see* Ex. A, Request Nos. 3 and 29).

On December 20, 2019, Defendants served responses and objections to FinApps' Requests ("Defendants' R&Os" or "Responses"), after which the parties met and conferred to discuss Defendants' R&Os on January 17, 2020.  (*See* Ex. B.)  The outcome of this meet and confer was memorialized in an email from Anthony Caputo dated January 23, 2020, which counsel for Defendants confirmed was "generally correct."[2]  (*See* Ex. C.)  Pursuant to this memorialization, with respect to Risk Insight 2.0, Defendants agreed to:

- "[S]earch financial databases and accounting systems maintained at Yodlee and Envestnet and produce documents that identify revenues, profits, costs, and/or losses associated with Yodlee's efforts with regard to Risk Insight."  (*See* Ex. B, Response No. 11; *see also* Ex. C (confirming that "Defendants' counsel generally agree[s] to produce documents responsive to [Request 11] . . .  and further agree[s] to search non-custodial files (electronic and hardcopy) for documents responsive to [Request 11]").)

- "[P]roduce non-privileged documents" concerning "monthly revenue reports" associated with Risk Insight 2.0 by running "search terms over electronically stored information in the form of archived electronic mail retrieved from identified custodians.  (*See* Ex. B, Response No. 35.)

- "[S]earch for documents relating to Risk Insight contracts in non-custodial document repositories (including shared network drives and internal Microsoft Sharepoint sites) maintained at Yodlee" in connection with Request 35.  (*See* Ex. B, Response No. 35.)

- "[S]earch financial databases and accounting systems maintained at Yodlee and produce non-privileged documents" concerning "monthly revenue reports" associated with Risk Insight 2.0 in connection with Request 35.  (*See* Ex. B, Response No. 35; *see also* Ex. C (confirming that "non-custodial files would be searched in connection with this request").)

---

[2]     The issue concerning the definition of "Competing Product" was later resolved by the Court, and in any event has no bearing on deficiencies raised in this letter.

K A S O W I T Z   B E N S O N   T O R R E S LLP

Amy Y. Cho, Esq.
November 11, 2020
Page 3

- "[S]earch financial databases and accounting systems maintained at Yodlee and Envestnet and produce non-privileged documents" concerning "(i) revenues and profits from the sale of Risk Insight to clients, including sales of professional services and custom work; and (ii) any calculations, derivations, summaries, projections, or forecasts of such revenues and profits generated by either Defendant."  (*See* Ex. B, Response No. 38.)

- "[S]earch for documents relating to 'custom work' in non-custodial document repositories (including shared network drives and internal Microsoft Sharepoint sites) maintained at Yodlee" in connection with Request 38.  (*See* Ex. B, Response No. 38; *see also* Ex. C (confirming that "non-custodial files would be searched in connection with this request").)

Similarly, and also pursuant to the Parties' memorialization, with respect to Competing Products, Defendants agreed to:

- "[S]earch for [and] produce non-privileged documents" concerning "'sales and marketing' of Risk Insight" and "sales and marketing of any Competing Product," by running "search terms over electronically stored information in the form of archived electronic mail retrieved from identified custodians."  (*See* Ex. B, Response No. 3; *see also* Ex. C (confirming that "Defendants' counsel generally agree[s] to produce documents responsive to [Request 3] . . .  and further agree[s] to search non-custodial files (electronic and hardcopy) for documents responsive to [Request 3]").)

- "[S]earch for and produce non-privileged documents" concerning the "(iv) actual sales, prospective sales, any sales pipelines, or sales projections concerning any Competing Product; and (v) financial information or projected financials concerning any Competing Product."  (*See* Ex. B, Response No. 12; *see also* Ex. C (confirming that "Defendants would be willing to produce documents related to Yodlee and Envestnet's software, applications, and products that have features, functionality, and uses similar to Risk Insight, or any components thereof").)

As set forth below, Defendants have failed to produce most if not all of the financial information referenced above, despite their agreement to do so.

## II.    **Defendants' Productions Are Deficient**

Notwithstanding Defendants' agreement to produce the financial information set forth above, even a cursory review of Defendants' productions to date make clear that serious deficiencies exist, and are causing FinApps significant prejudice.

### A.    **Non-Custodial Documents**

As a general matter, it appears that Defendants have not searched "non-custodial files (electronic and hard copy)" concerning (i) actual sales, revenues, profits, and related financial information for Risk Insight 2.0; (ii) projected sales, revenues, profits, and related financial

K A S O W I T Z   B E N S O N   T O R R E S LLP

Amy Y. Cho, Esq.
November 11, 2020
Page 4

information for Risk Insight 2.0; (iii) financial information related to professional services performed in connection with Risk Insight 2.0; (iv) actual sales, revenues, profits, and related financial information for Defendants' Competing Products; and (v) projected sales, revenues, profits, and related financial information for Defendants' Competing Products.

Indeed, to the extent that Defendants have produced any documents related to any of the foregoing financial information, they appear to be custodial documents (in addition to suffering from various other deficiencies discussed below). Moreover, we have been unable to locate any documents that appear to be sourced from the "financial databases and accounting systems" that Defendants agreed to search with respect to many of the Requests at issue here.

### B.   Specific Deficiencies Concerning Risk Insight 2.0

*Request No. 11*

Defendants' custodial email production appears to lack information concerning actual sales, revenues, profits, and related financial information for Risk Insight 2.0. Historical data appears to be organized by broad product "verticals" at Yodlee, such as "Credit." *See, e.g.*, YOD06363729, at -730; YOD01061709, at -718-719.

Further, it is clear that Defendants failed to "search financial databases and accounting systems" and other potential sources of non-custodial data for historical financial information concerning Risk Insight 2.0, as there appear to be no non-custodial documents in Defendants' production concerning such information. Similarly, although Defendants have produced limited custodial documents that appear to contain forecast and projected financials for Risk Insight 2.0, there appears to be no non-custodial information on this subject.

FinApps requests that Defendants supplement their productions with all relevant non-privileged documents responsive to Request No. 11, including but not limited to relevant non-custodial documents, concerning actual or historical and projected sales, revenues, profits, and related financial information associated with Risk Insight 2.0. To the extent that such documents do not exist or have already been produced, FinApps requests that Defendants either so confirm or identify such documents by Bates number.

*Request No. 35*

Defendants' custodial email production is virtually devoid of monthly revenue reports related to Risk Insight 2.0, including communications and other information related to such reports. We have located only a single custodial document that may be a revenue report covering Risk Insight 2.0 for the period between February 2018 and October 2018 (*see* YOD00397777), but there appear to be no other similar documents in Defendants' custodial production.

Further, it is clear that Defendants failed to "search financial databases and accounting systems" and other potential sources of non-custodial data concerning monthly revenue reports

**Ex. H Page 5 of 7**

K A S O W I T Z   B E N S O N   T O R R E S LLP

Amy Y. Cho, Esq.
November 11, 2020
Page 5

related to Risk Insight 2.0, as there appear to be no non-custodial documents in Defendants' production concerning such information.

FinApps requests that Defendants supplement their productions with all relevant non-privileged documents responsive to Request No. 35, including but not limited to relevant non-custodial documents, concerning monthly revenue reports related to Risk Insight 2.0. To the extent that such documents do not exist or have already been produced, FinApps requests that Defendants either so confirm or identify such documents by Bates number.

*Request No. 38*

As discussed above in connection with Request No. 11, Defendants' custodial email production appears to lack information concerning actual sales, revenues, profits, and related financial information for Risk Insight 2.0, and FinApps reiterates its request for such information to the extent that it would be responsive to Request No. 38, as well as Request No. 11.

Defendants' custodial email production also appears to be lacking with respect to information concerning custom work and professional services performed by FinApps in connection with Risk Insight 2.0, and the related fees to which FinApps is entitled.

Further, it is clear that Defendants have not searched "financial databases and accounting systems" or other potential sources of non-custodial information concerning custom work and professional services performed by FinApps in connection with Risk Insight 2.0, as there appear to be no non-custodial documents in Defendants' production concerning such information.

FinApps requests that Defendants supplement their productions with all relevant non-privileged documents responsive to Request No. 38, including but not limited to relevant non-custodial documents, concerning custom work and professional services performed by FinApps in connection with Risk Insight 2.0. To the extent that such documents do not exist or have already been produced, FinApps requests that Defendants either so confirm or identify such documents by Bates number.

### C.   Specific Deficiencies Concerning Defendants Multiple Competing Products

*Request Nos. 3 & 12*

Defendants' custodial email production also appears lack information concerning actual/historical and projected/forecasted sales, revenues, profit, and related financial information for any Competing Product. Although we have located a few multiyear projections associated with the Equifax Competing Product (*see, e.g.*, YOD00703126), there are none with respect to Defendants' other Competing Products, including but not limited to Snapshot 2.0.

Further, it is yet again clear that Defendants have failed to search non-custodial data for actual or historical financial information concerning their Competing Products, as there appear to be no non-custodial documents in Defendants' production concerning such information.

# Kasowitz Benson Torres llp

Amy Y. Cho, Esq.
November 11, 2020
Page 6

Similarly, there is no projected or forecast financial information concerning Defendants' Competing Products from non-custodial sources, either.

FinApps requests that Defendants supplement their productions with all relevant non-privileged documents responsive to Request Nos. 3 and 12, including but not limited to relevant non-custodial documents, concerning actual or historical and projected sales, revenues, profits, and related financial information associated with all Competing Products.  To the extent that such documents do not exist or have already been produced, FinApps requests that Defendants either so confirm or identify such documents by Bates number.

\*         \*         \*

Accordingly, FinApps requests that Defendants expeditiously cure their production deficiencies as identified herein, but in no event later than Monday, November 16, 2020.

Plaintiff FinApps reserves all and waives none of its rights.

Sincerely,

/s/ *Matthew A. Kraus*

Matthew A. Kraus

cc:    Pilar G. Kraman, Esq.
       Gary M. Miller, Esq.
       Hugh A. Abrams, Esq.
       Lauren P. DeLuca, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINANCIALAPPS, LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>ENVESTNET, INC.<br>and YODLEE, INC.,<br><br>          Defendants. | C.A. No. 19-1337-CFC-CJB |

**[PROPOSED] ORDER AMENDED SCHEDULING ORDER**

This ___ day of December, 2020, upon consideration of Plaintiff FinancialApps, LLC's Emergency Motion to Amend Scheduling Order, and any opposition thereto,

IT IS HEREBY ORDERED that the Scheduling Order Scheduling Order (D.I. 28, as subsequently amended by D.I. 93, 101, 168) in the above-captioned case is amended as set forth below:

| Event | Current Deadline | Amended Deadline |
|---|---|---|
| Discovery Cut-Off | March 12, 2021 | March 12, 2021 |
| Completion of Fact Depositions | Nov. 20, 2020 | March 12, 2021 |
| Joinder of Other Parties / Amendment of Pleadings | Dec. 4, 2020 | March 26, 2021 |
| Opening expert reports | Dec. 22, 2020 | June 11, 2021 |
| Rebuttal expert reports | Jan. 26, 2021 | July 9, 2021 |
| Reply expert reports | Feb. 12, 2021 | July 30, 2021 |
| Completion of expert depositions | March 12, 2021 | Aug. 31, 2021 |
| Dispositive motions | April 7, 2021 | Oct. 1, 2021 |
| *Daubert* motions | April 9, 2021 | Oct. 5, 2021 |
| Answering briefs in opposition to dispositive motions | May 7, 2021 | Oct. 29, 2021 |
| Answering briefs in opposition to *Daubert* motions | May 10, 2021 | Nov. 2, 2021 |
| Reply briefs in support of dispositive motions | May 21, 2021 | Nov. 19, 2021 |

| Reply briefs in support of *Daubert* motions | May 24, 2021 | Nov. 23, 2021 |
| Pretrial Conference | Sept. 9, 2021 | March ___, 2022 |
| Trial | Sept. 20, 2021 | March ___, 2022 |

 

_____
United States Magistrate Judge

27404035