IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINANCIALAPPS, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>ENVESTNET, INC.<br>and YODLEE, INC.,<br><br>    Defendants. | C.A. No. 19-1337-GBW-CJB<br><br><br><br>REDACTED - PUBLIC VERSION<br>Filed April 20, 2023 |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT ON DEFAMATION COUNTERCLAIM

| | |
|---|---|
| KASOWITZ BENSON TORRES LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Marc E. Kasowitz<br>Matthew A. Kraus<br>A. Macdonald Caputo, Jr.<br>Joshua E. Hollander<br>1633 Broadway<br>New York, NY 10019<br>(212) 506-1700<br>mkasowitz@kasowitz.com<br>mkraus@kasowitz.com<br>acaputo@kasowitz.com<br>jhollander@kasowitz.com<br><br>Dated: April 13, 2023 | C. Barr Flinn (No. 4092)<br>Pilar G. Kraman (No. 5199)<br>Robert M. Vrana (No. 5666)<br>Rodney Square<br>1000 N. King Street<br>Wilmington, Delaware 19801<br>(302) 571-6600<br>bflinn@ycst.com<br>pkraman@ycst.com<br>rvrana@ycst.com<br><br>*Attorneys for Plaintiff FinancialApps, LLC* |

# TABLE OF CONTENTS

Page

ARGUMENT ..................................................................................................................1

I.   Defendants Have Alleged Only Three Defamatory Statements ..............................1

II.  Envestnet Fails To Rebut The Fair Reporting Privilege ..........................................3

     A.   Envestnet Identifies No "Embellishment" Or "Inaccuracy" ........................3

     B.   The Restatement Supports Dismissal Of Defendants'
          Defamation Claim ........................................................................................4

III. Envestnet Fails To Rebut The Innocent Construction Rule ....................................6

IV.  Defendants Cannot Demonstrate Negligence Or Malice ........................................7

V.   Envestnet Concedes The Truth Of The Allegedly Defamatory Statements ..........10

CONCLUSION ...............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Blakeman v. Freedom Rides, Inc.*,
   2013 WL 3503165 (D. Del. July 10, 2013) ....................................................................10

*Bryson v. News Am. Pubs., Inc.*,
   174 Ill. 2d 77 (Ill. 1996)..................................................................................................6

*Coghlan v. Beck*,
   984 N.E.2d 132 (Ill. App. 1 Dist. 2013) .........................................................................2

*Cole v. Ross*,
   2012 WL 6016888 (S.D. Ill. Dec. 3, 2012)......................................................................2

*Costello v. Cap. Cities Comms., Inc.*,
   125 Ill. 2d 402 (Ill. 1988)................................................................................................9

*Drabik v. Drabik*,
   2013 WL 2285791 (N.D. Ill. May 23, 2013) ..................................................................3

*Green v. Rogers*,
   234 Ill. 2d 478 (Ill. 2009)............................................................................................2, 3

*Green v. Rogers*,
   917 N.E.2d 450 (Ill. 2009) .............................................................................................2

*Harrison v. Chicago Sun-Times, Inc.*,
   341 Ill. App. 3d 555 (Ill. App. 1 Dist. 2003) ................................................................10

*Harte-Hanks Comms. v. Connaughton*,
   491 U.S. 657 (1989)........................................................................................................8

*Horrell v. Lynch*,
   2006 WL 2735448 (N.D. Ill. Sept. 22, 2006) .................................................................2

*Huron Consulting Servs. LLC v. Murtha*,
   2012 WL 6962119 (Ill. App. 1 Dist. Feb. 15, 2012)...........................................3, 4, 6, 7

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
   227 Ill. 2d 381 (Ill. 2008)................................................................................................7

*Jacobson v. CBS Broad., Inc.*,
   19 N.E.3d 1165 (Ill. App. 1 Dist. 2014) .........................................................................8

*Kurczaba v. Pollock*,
   318 Ill. App. 3d 686 (Ill. App. 1 Dist. 2000) ..................................................................5

*Maui Jim v. SmartBuy Guru Enters.*,
 386 F. Supp. 3d 926 (N.D. Ill. 2019) ...........................................................................................7

*Missner v. Clifford*,
 393 Ill. App. 3d 751 (Ill. App. 1 Dist. 2009) ...............................................................................5

*Myers v. D.C. Hous. Auth.*,
 2021 WL 1167032 (D.D.C. Mar. 16, 2021) ..................................................................................5

*Owen v. Carr*,
 134 Ill. App. 3d 855 (Ill. App. 1 Dist. 1985) ...............................................................................7

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
 381 F.3d 717 (7th Cir. 2004) ....................................................................................................5, 7

*Rosenberg v. Helinski*,
 328 Md. 664 (Md. 1992) ..............................................................................................................5

*Russell v. Del. Online*,
 2016 WL 3437597 (D. Del. June 20, 2016) .................................................................................2

*Shanahan v. City of Chi.*,
 82 F.3d 776 (7th Cir. 1996) .........................................................................................................1

*Stover v. J. Pub. Co.*,
 105 N.M. 291 (N.M. App. 1985) .................................................................................................5

*Sun v. Xu*,
 2020 WL 12815227 (C.D. Ill. May 6, 2020) ...............................................................................5

*Tuite v. Corbitt*,
 224 Ill. 2d 490 (Ill. 2006) .........................................................................................................3, 6

*U.S Express Lines Ltd. v. Higgins*,
 281 F.3d 383 (3rd Cir. 2002) .......................................................................................................2

*Vachet v. Cent. Newspapers, Inc.*,
 816 F.2d 313 (7th Cir. 1987) .....................................................................................................10

*Waugaman v. City of Greensburg*,
 841 F. App'x 429 (3d Cir. 2021) .................................................................................................1

**Other Authorities**

Restatement (Second) of Torts § 611 (1977) ......................................................................................4

In its opening brief (D.I. 453 ("Br.")), FinApps demonstrated its entitlement to summary dismissal of Envestnet's defamation counterclaim on three independently dispositive grounds: first, the three allegedly defamatory statements are protected by the fair reporting privilege and the innocent construction rule; second, neither FinApps nor its agent acted with negligence or actual malice; and third, unrebutted record evidence confirms the allegedly defamatory statements to be substantially true. In opposition (D.I. 491 ("Opp.")), Envestnet fails to refute any of these grounds for dismissal, and does not raise any triable issue of material fact. Instead, Envestnet attempts to amend its pleading through opposition briefing, injecting multiple previously unalleged statements not even made by FinApps' lead counsel, Marc Kasowitz. Next, Envestnet asserts the fair reporting privilege is inapplicable, based on purported "embellishments" and "inaccuracies" it fails to identify, and an inapplicable exception. With no support, Envestnet also claims the innocent construction rule is inapplicable. Envestnet also fails to show that FinApps or its agent acted either negligently or with actual malice. Finally, Envestnet fails to substantively respond to (and thus concedes) FinApps' demonstration that the allegedly defamatory statements are substantially true.

## ARGUMENT

**I.     Defendants Have Alleged Only Three Defamatory Statements**

Envestnet's attempt to amend its pleading through opposition briefing is improper. *See Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996) ("plaintiff may not amend his complaint through . . . brief[ing] in opposition to a motion for summary judgment"); *Waugaman v. City of Greensburg*, 841 F. App'x 429, 433 (3d Cir. 2021) (same). Here, Envestnet raises multiple statements never specifically alleged previously (the "Unalleged Statements") (Opp. 2):

- "DePina's offers [to purchase FA technology] were not in good faith;"
- "Envestnet kept telling his client to expose more and more of its code;"
- "Envestnet kept FinApps on ice by slowwalking payments of its fees or in some cases not paying at all."

Notably, Defendants amended their Counterclaim allegations nearly *three years ago* to allege two additional defamatory statements, but omitted the foregoing (D.I. 160 ¶¶ 96-98). Defendants questioned Kasowitz regarding the Unalleged Statements at deposition on March 5, 2021 (during which he confirmed he did not make them) (*see* Ex. A at 50:2-12, 55:7-17, 65:1-13), and raised them in their recent motion to compel (*see* D.I. 406 at 3; D.I. 490 at 3 n.2). Defendants have never, however, sought to further amend their pleading to include the Unalleged Statements. The Court should not permit them to do so now via briefing. *See Cole v. Ross*, 2012 WL 6016888, at *3 (S.D. Ill. Dec. 3, 2012) (granting summary judgment where claimant had "every opportunity" to amend but "failed to do so at every turn").

Nor does "incorporat[ion]" by reference (Br. 1) meet the heightened pleading standard applicable to *per se* defamation claims. As Envestnet's legal authority confirms, "defamation *per se* . . . must be pled with a heightened level of precision and particularity." *Green v. Rogers*, 234 Ill. 2d 478, 495 (Ill. 2009) (dismissing for lack of specificity); *see also Coghlan v. Beck*, 984 N.E.2d 132, 150 (Ill. App. 1 Dist. 2013) (same).[1] Here, Envestnet fails to even allege the Unalleged Statements were false, *see Horrell v. Lynch*, 2006 WL 2735448, at *6 (N.D. Ill. Sept. 22, 2006) (dismissing due to failure to show "statements were false"), or made by Kasowitz. Envestnet asserts the Unalleged Statements "put at issue, paraphrase or quote Mr. Kasowitz" (Opp. 2), but vague references to "paraphrased" statements are insufficient to allege that a "defendant *in fact*" made *per se* defamatory statements. *Green*, 234 Ill. 2d at 496. Moreover, Brooke Southall, one of the journalists who interviewed Kasowitz, confirmed Kasowitz did not

---

[1] *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3rd Cir. 2002), *Russell v. Del. Online*, 2016 WL 3437597, at *1 n.1 (D. Del. June 20, 2016), and *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009) are inapposite; all three opinions merely confirm that exhibits attached to a complaint may be considered on a motion to dismiss, and all three resulted in dismissal.

make the Unalleged Statements (D.I. 456, Ex. 1 at 59:25-60:5, 60:19-61:4) that, in any event, fairly and accurately report the Complaint's allegations (D.I. 7 ¶¶ 96-119, 160-63, 183-92).

Envestnet also fails to allege (or show) that the Unalleged Statements fall into the "five categories" of defamation *per se* recognized by Illinois law (which they do not). *Green*, 234 Ill. 2d at 491-92. Thus, the Unalleged Statements – if actionable at all – constitute *per quod* defamation, requiring Envestnet to "plead and prove special damages," *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (Ill. 2006), which it has not, and cannot because Envestnet expressly concedes that its reputational harm "is uncertain and cannot be calculated" (Ex. B.; *see also* Ex. C ¶ 14).

## II. Envestnet Fails To Rebut The Fair Reporting Privilege

As shown, the fair reporting privilege protects all three allegedly defamatory statements. (Br. 2-8). Envestnet's various assertions in opposition fail, as detailed below.

### A. Envestnet Identifies No "Embellishment" Or "Inaccuracy"

Envestnet's claim that the allegedly defamatory statements "went beyond the Complaint" or were "inaccurate" (Opp. 14) lacks merit. First, Envestnet asserts, without any support, that "Kasowitz . . . was repeating as fact, on his own authority as a prominent litigator, that there was 'evidence' and 'proof' known to him that the allegations were correct" (*id.*). The undisputed facts demonstrate, however, that Kasowitz only ever discussed FinApps' allegations, never used the word "evidence," and referred solely to the documentary "proof" referenced in and attached to the Complaint (*see* Br. 5-6; *see also* D.I. 456, Ex. 1 at 32:13-33:5, Ex. 3 at 47:16-49:14).[2]

---

[2] Envestnet's legal authority is inapposite. In *Drabik v. Drabik*, 2013 WL 2285791, at *2 (N.D. Ill. May 23, 2013), the court declined to apply the fair reporting privilege pre-discovery due to the absence of an evidentiary record, and in *Huron Consulting Servs. LLC v. Murtha*, 2012 WL 6962119, at *9 (Ill. App. 1 Dist. Feb. 15, 2012), unlike here, the allegedly defamatory statements were presented as fact without reference to any pleading or underlying allegations.

3

Second, Envestnet's purported "objection" – demanding that the Court bar Kasowitz's highly probative testimony – is legally meritless (Opp. 9). Envestnet repeatedly stated that Kasowitz's testimony is "crucial" and "key" to its case (D.I. 406 at 16; D.I. 188 at 3), deposed Kasowitz for ten hours, relied on his testimony in opposition (Opp. 3-7, 9-10), and represented it was not seeking to disqualify Kasowitz (D.I. 413, Ex. N. at 8:24-13:20). Envestnet cannot now manufacture an issue of fact by selectively deploying sworn testimony it introduced into the record.

Third, Envestnet's claim that "[t]he defamatory statements covered matters not in the Complaint" inaccurately conflates two purported statements (Opp. 14). The first, that "'Envestnet' engaged in 'reverse engineering'" (*id.*), was detailed in the Complaint (*see* Br. 6, 9-20; D.I. 7 ¶¶ 18, 46, 156-63, 216). The second, that Envestnet "tricked FA into revealing 'code'" (Opp. 14), was never made by Kasowitz, as confirmed by Southall (D.I. 456, Ex. 1 at 60:19-61:4).

Fourth, Envestnet appears to argue that the fair reporting privilege is inapplicable because Kasowitz's statements cannot be "prove[n] accurate" (Opp. 14). The fair reporting privilege, however, does not require that statements be "proven" accurate, merely that they fairly and accurately report the content of a complaint. *Huron*, 2012 WL 6962119, at *9 ("availability of the privilege depends on the fairness and accuracy of the report."). Envestnet at no point explains how any statements at issue inaccurately reported the content of FinApps' Complaint (Opp. 14).

### B. The Restatement Supports Dismissal Of Defendants' Defamation Claim

Envestnet also claims that the fair reporting "privilege protects reporters, not defamers" (Opp. 11). This is incorrect, as Restatement comment c confirms that the privilege is "not . . . limited to [] publishers," but rather "extends to **any person** who makes an oral, written or printed report." Restatement (Second) of Torts § 611 cmt. c (1977).

Envestnet next argues that the fair reporting privilege cannot be self-conferred (Opp. 11-12), but again, Restatement comment c confirms that its argument is unavailing: "[a]

4

person cannot confer this privilege upon himself by making the *original defamatory publication* [and] reporting to other people what he had stated." Restatement (Second) of Torts § 611 cmt. c (1977). Here, the only "original defamatory publications" alleged are Kasowitz's comments to the press. Envestnet has never alleged, and fails to argue, that the "original defamatory publication" was the Complaint.[3]

Envestnet's legal authority also confirms the self-conferral exception is inapplicable. In *Missner v. Clifford*, the court determined that the defendant "caused the publication of the original defamatory statements in the . . . complaint." 393 Ill. App. 3d 751, 757 (Ill. App. 1 Dist. 2009). Similarly, in *Kurczaba v. Pollock*, the Court expressly noted that "defendant made the original defamatory publication (the . . . complaint)." 318 Ill. App. 3d 686, 708 (Ill. App. 1 Dist. 2000). Likewise, in *Sun v. Xu*, the defendant argued that plaintiff "cannot make defamatory statements in her Complaint." Brief of Counter-Plaintiff at 7, 2020 WL 12815227 (C.D. Ill. May 6, 2020), ECF No. 34. *Republic Tobacco Co. v. N. Atl. Trading Co.* is even further afield; there, unlike here, the defendant disseminated demonstrably false information privately to "customers," not fair and accurate reports of a judicial proceeding to a public journal. 381 F.3d 717, 732 (7th Cir. 2004).

Further, the self-reporting exception "attaches only where the claimant files a defamatory complaint, then republishes it in order to avoid liability." *Myers v. D.C. Hous. Auth.*, 2021 WL 1167032, at *5 (D.D.C. Mar. 16, 2021).[4] Here, FinApps has pursued its claims in good faith for

---

[3] In fact, Envestnet repeatedly asserts that "[t]he statements put at issue paraphrase or quote Mr. Kasowitz, *not* the Complaint" (Opp. 2), "the defamatory statements went *beyond* the Complaint" (*id.* 14), and "[t]he defamatory statements covered matters *not* in the Complaint" (*id.*). Nor does the litigation privilege excuse Envestnet's pleading failure; it could have sought leave to amend to allege FinApps' Complaint is defamatory, but chose not to do so.

[4] *See also Rosenberg v. Helinski*, 328 Md. 664, 686 (Md. 1992) (the self-conferral exception is designed "to deter those persons who . . . abuse the privilege accorded to fair and accurate reports of judicial proceedings"); *Stover v. J. Pub. Co.*, 105 N.M. 291, 295 (N.M. App. 1985) ("the exception . . . was obviously intended to prevent the abuse").

5

nearly four years, and provided substantial evidence of their legitimacy (*see* D.I. 492; D.I. 499).

## III. Envestnet Fails To Rebut The Innocent Construction Rule

As shown (Br. 8-9), the allegedly defamatory statements are also subject to the innocent construction rule, which, as Envestnet's own legal authority confirms, "requires courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning," and to interpret them "as they appeared to have been used and according to the idea they were intended to convey." *Bryson v. News Am. Pubs., Inc.*, 174 Ill. 2d 77, 90, 93 (Ill. 1996); *see also Tuite*, 224 Ill. 2d at 504 (same).

Here, the context surrounding all of the statements at issue confirms that Kasowitz "intended to convey" a summary of the allegations in the Complaint (*see* Br. 3-9; *see also* D.I. 456, Ex. 1 at 56:19-21, 72:6-11, Ex. 3 at 10:2-6, 20:23-25). Moreover, the articles at issue confirm that Kasowitz's statements related to FinApps' allegations, and also provide opinions of others assessing the strengths and weaknesses of FinApps' Complaint (D.I. 456, Ex. 56).

Rather than providing evidence that Kasowitz "intended to convey" defamatory content, Envestnet concludes, with no support, that "Kasowitz's statements . . . cannot be distinguished from [those] in *Huron*" (Opp. 16). Envestnet does not elaborate further, and misleadingly combines the Unalleged Statements with the allegedly defamatory statements (*id.*). The unrebutted record confirms, however, that Kasowitz solely discussed the allegations in the Complaint, the documentary evidence attached to it,[5] and his client's intention to prove its allegations at trial (*see* D.I. 456, Ex. 1 at 56:19-21, 72:6-11, Ex. 3 at 10:2-6, 20:23-25).

---

[5] Envestnet claims "Kasowitz made specific concrete statements," including that Envestnet was "reverse engineering," inducing FA to reveal "code," and "slow walking payment [or] not paying at all" (Opp. 16). As discussed (*supra* § II. A), the first statement refers to documents attached to the Complaint (*see* Br. 5-6; D.I. 456, Ex. 1 at 32:15-33:5, Ex. 3 at 47:16-49:14), and the latter two are unalleged and were not made by Kasowitz (Ex. A at 55:7-17, 65:1-13).

Further, Envestnet's caselaw (Opp. 14-15) is distinguishable. Unlike here, the defamatory statements in *Huron* and *Republic Tobacco* were presented as fact, not allegations to be proven at trial. *See Huron*, 2012 WL 6962119, at *8 ("the context of the defamatory statements" lacked specific references to the allegations in a pending lawsuit); *Republic Tobacco*, 381 F.3d 717 (context involved commercially disparaging statements about a competitor made in private correspondence to customers). *Missner* is inapplicable because the excerpts on which Envestnet relies concern constitutionally protected opinion (an argument not raised here), and because the court determined the innocent construction rule was inapplicable as raised. 393 Ill. App. 3d 751.

Lastly, Envestnet fails to meaningfully distinguish FinApps' authority, which is directly on point. In *Owen v. Carr*, the court applied the innocent construction rule because, as here, "[t]he entire article speaks in terms of claims, allegations, and of what [the attorney] is trying to prove in the [pending] case." 134 Ill. App. 3d 855 (Ill. App. 1 Dist. 1985). Similarly, in *Maui Jim v. SmartBuy Guru Enters.*, the court applied the rule because "[w]hen the press release is 'read as a whole and the words given their natural and obvious meaning,' the statements [] refer to Maui Jim's lawsuit and its allegations against SBG." 386 F. Supp. 3d 926, 943 (N.D. Ill. 2019).

## IV. Defendants Cannot Demonstrate Negligence Or Malice

As shown, a reasonable basis supports each allegedly defamatory statement (Br. 9-15), and Envestnet cannot show negligence (Br. § IV.A) or actual malice (Br. § IV.B). Envestnet offers no rebuttal, arguing instead that it is "a private figure" (Opp. 17).[6] Envestnet disregards Illinois law, which, as shown (Br. 14 n.8), makes clear that large, public corporations are "public figures" for defamation purposes. Envestnet's own legal authority confirms that, as a public figure, it must show that FinApps "published the defamatory falsehood either with knowledge that it was false,

---

[6] *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381 (Ill. 2008) is inapposite, as neither the parties nor lower court addressed whether plaintiff was a public figure.

7

or with a reckless disregard of whether it was false or not." *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1178 (Ill. App. 1 Dist. 2014). Envestnet comes nowhere near meeting this standard.

Instead, Envestnet speculates that "[i]n the typical case, the defamer denies such awareness and doubt, so the proof must be circumstantial," and asserts – without any legal support – that "evidence of negligence and malice overlap" (Opp. 17). This is false, and in any event, Envestnet provides *no evidence* that FinApps acted negligently. Nor can it, as extensive, uncontroverted evidence – including deposition testimony, documents, and interrogatory responses – underscores that FinApps had a reasonable basis for each of the statements at issue (*see* Br. 9-15).

As shown (*id.*), Envestnet also fails to demonstrate that FinApps or its agent acted with knowledge of falsity or reckless disregard for the truth. Instead, Envestnet invokes a colloquial concept of "maliciousness" that the Supreme Court has rejected,[7] claiming that "someone hits someone else hard to hurt them" (Opp. 3, 18). Envestnet also mischaracterizes evidence. The August 14, 2019 email on which Envestnet relies (*id.*) *postdates* the articles at issue, uses the word "hit" in the past tense to describe the impact of the articles (not intent to harm), and does not demonstrate knowledge of falsity or disregard for truth by FinApps or Kasowitz. Envestnet also misleadingly elides a May 21, 2022 email chain related to FinApps' litigation strategy regarding Defendants' breach of contract, omitting the statement that "Envestnet is in good financial shape and **needs to make good on the agreement or face litigation**" (D.I. 500, Ex. 62). This email also shows no intent to harm, let alone knowledge of falsity or disregard for truth.

Further, Envestnet's claim that "Yodlee asked Weatherly to assist in 'reverse engineering' to obtain client data," is demonstrably false, and grossly mischaracterizes an email chain attached

---

[7] *See Harte-Hanks Comms. v. Connaughton*, 491 U.S. 657 (1989) (actual malice is not satisfied merely by a showing of "ill will or 'malice' in the ordinary sense of the term," but rather that "the statements were made with a reckless disregard for the truth").

8

to the Complaint (*see id.*, Ex. 63). On May 14, 2019, a Yodlee employee emailed Weatherly seeking ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*id.*, Ex. 68). Rather than assisting, Weatherly provided specific database locations for the requested information, explaining that additional work would require a formal work request (*see id.*, Ex. 63 at 7-8). Defendants then removed Weatherly from the email chain, and discussed plans to broadly ▓▓▓▓▓▓▓▓ FinApps' entire database schema (*see id.* 5-6). This email chain was later inadvertently forwarded **back** to Weatherly (*see id.* 2). Weatherly did not agree to, or assist in, ▓▓▓▓▓▓▓▓

Next, Envestnet asserts that Kasowitz failed to conduct "enough investigation," claiming he "admit[ed] to lack of knowledge" (Opp. 9-10, 18). First, although Envestnet asserts that Kasowitz did not investigate "the law on reverse engineering" (*id.*), it was *Defendants* that characterized their *own behavior* as ▓▓▓▓▓▓▓▓▓▓▓▓▓ which Kasowitz merely repeated (D.I. 456, Ex. 7). Second, Envestnet claims that Kasowitz failed to investigate "the contents of the patent filed by his client" (Opp. 9-10, 18), ignoring his explanation that the patent "doesn't at all get into the details" of the trade secret (Ex. A at 178:9-15, 205:5-7). Finally, Envestnet fails to explain the relevance of Kasowitz's knowledge regarding the "data dictionary" (Opp. 10, 18) to its defamation allegations, which do not concern this document. Envestnet's speculative and baseless attacks on the adequacy of Kasowitz's pre-complaint investigations are also irrelevant as a matter of law because "[f]ailure to investigate does not itself establish actual malice." *Costello v. Cap. Cities Comms., Inc.*, 125 Ill. 2d 402, 421 (Ill. 1988).

Lastly, Envestnet claims that "FA provides only (inadmissible) Kasowitz testimony and a content-free declaration by FA CEO Sullivan" (Opp. 18-19). Envestnet does not explain how Sullivan's declaration is "content free," offers no legal basis to challenge the admissibility of it or Kasowitz's sworn testimony, and ignores FinApps' 30(b)(6) testimony (D.I. 456, Ex. 10), its

9

interrogatory responses (*id.*, Ex. 6), and contemporaneous documentary evidence (*id.*, Exs. 7-9, 11, 55), all of which were identified in the Opening Brief (D.I. 453 at 13, 15, 10).

## V. Envestnet Concedes The Truth Of The Allegedly Defamatory Statements

As shown, "the allegedly defamatory statements were substantially (if not entirely) true" (Br. § V). Citing no authority, Envestnet asserts that "FA seeks a summary judgment that . . . its offending statements are truthful" (Opp. 19). Envestnet's truncated argument is both incorrect and contrary to Illinois law, under which demonstrating the truth in defense to defamation claims *is not* equivalent to a merits-based demonstration of liability. *See Vachet v. Cent. Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987); *Harrison v. Chicago Sun-Times, Inc.*, 341 Ill. App. 3d 555, 569 (Ill. App. 1 Dist. 2003) (dismissing defamation claim where statement that plaintiff "kidnapped" daughter was "substantially true" despite kidnapping not violating state law).

Instead of substantively rebutting FinApps' evidence demonstrating the substantial truth of the allegedly defamatory statements,[8] Envestnet cites its own affirmative summary judgment briefing and baselessly contends its conduct was "plainly legal" (Opp. 8). Envestnet fails to substantively respond to or rebut FinApps' showing that the allegedly defamatory statements were "substantially true," however, and thus concedes the point. *See, e.g.*, *Blakeman v. Freedom Rides, Inc.*, 2013 WL 3503165, at *13 (D. Del. July 10, 2013) (failure to address argument for dismissal on summary judgment deemed abandonment of claim).

## CONCLUSION

For the foregoing reasons, FinApps respectfully requests that the Court grant its motion for summary judgment dismissing with prejudice Envestnet's defamation counterclaim.

---

[8] Extensive record evidence demonstrates, among other things, that ██████ ██████ ██████ ██████ ██████ Br. 9-20; *id.*, Exs. 3-55), ██████ ██████ (Br. 15-20; *id.*, Exs. 8-55).

Dated: April 13, 2023

                                                YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: */s/ Pilar G. Kraman*
C. Barr Flinn (No. 4092)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
bflinn@ycst.com
pkraman@ycst.com
rvrana@ycst.com

- AND -

Marc E. Kasowitz, Esq.
(*Admitted Pro hac vice*)
Matthew A. Kraus, Esq.
(*Admitted Pro hac vice*)
A. MacDonald Caputo, Jr., Esq.
(*Admitted Pro hac vice*)
Joshua E. Hollander, Esq.
(*Admitted Pro hac vice*)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
mkasowitz@kasowitz.com
mkraus@kasowitz.com
acaputo@kasowitz.com
jhollander@kasowitz.com

*Attorneys for Plaintiff FinancialApps, LLC*

# CERTIFICATE OF SERVICE

I, Pilar G. Kraman, Esquire, hereby certify that on April 13, 2023, I caused a true and correct copy of the foregoing document to be served in the manner indicated below upon the following counsel of record:

**By EMAIL:**

Henry E. Gallagher, Jr.
Lauren P. DeLuca
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
hgallagher@connollygallagher.com
ldeluca@connollygallagher.com

Gary M. Miller
Gary M. Elden
Amy Y. Cho
Ian M. Hansen
Justin R. Donoho
SHOOK, HARDY & BACON, L.L.P.
111 S. Wacker Drive, Suite 4700
Chicago, IL 60606
gmiller@shb.com
gelden@shb.com
acho@shb.com
ihansen@shb.com
jdonoho@shb.com

Jason M. Richardson
SHOOK, HARDY & BACON, L.L.P.
One Montgomery Street, Suite 2600
San Francisco, CA 94104
jmrichardson@shb.com

John D. Garretson
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
jgarretson@shb.com

*Attorneys for Defendants, Envestnet, Inc. and Yodlee, Inc.*

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

*/s/ Pilar G. Kraman*
C. Barr Flinn (No. 4092)
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
bflinn@ycst.com
pkraman@ycst.com
rvrana@ycst.com

*Attorneys for Plaintiff FinancialApps, LLC*