IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINANCIALAPPS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 19-1337-CFC-CJB |
| v. | ) |
| | ) REDACTED PUBLIC VERSION |
| ENVESTNET, INC. and | ) |
| YODLEE, INC., | ) Filed: April 20, 2023 |
| | ) |
| Defendants. | ) |
| | ) |

**ENVESTNET, INC.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT NO. 2**

OF COUNSEL:

Gary M. Miller
Gary M. Elden
John D. Garretson
Amy Y. Cho
Justin R. Donoho
Ian M. Hansen
SHOOK, HARDY & BACON LLP
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
(312) 704-7700

Henry E. Gallagher, Jr. (No. 495)
Lauren P. DeLuca (No. 6024)
CONNOLLY GALLAGHER LLP
1201 North Market St., 20th Floor
Wilmington, DE 19801
(302) 757-7300
hgallagher@connollygallagher.com
ldeluca@connollygallagher.com

*Attorneys for Defendants Yodlee, Inc. and Envestnet, Inc.*

Dated: April 13, 2023

# TABLE OF CONTENTS

                                                                                           **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.     FA FAILS TO IDENTIFY ANY INFORMATION THAT MEETS THE REQUIREMENTS OF A TRADE SECRET. ................................................................ 2

II.    FA FAILS TO SHOW THAT ANY OF ITS ALLEGED TRADE SECRETS WERE MAINTAINED AS SECRET. ............................................................................ 6

        A.    One Non-Confidential Disclosure Suffices to Preclude Trade Secret Status. ........ 6

        B.    Industry-wide disclosures by FA's competitors of the same technology as the Relevancy Engine preclude trade secret status ...................................................... 7

        C.    FA's non-confidential disclosures of the Data Dictionary, Training PowerPoint, API Manual, and JSON Schema preclude trade secret status................................. 8

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bradbury Co. v. Teissier-duCros*,
  413 F. Supp. 2d 1209 (D. Kan. 2006) ................................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...............................................................................................1, 3, 5, 10

*D'Amico v. City of New York*,
  132 F.3d 145 (2d Cir. 1998) ..................................................................................................3

*Daubert v. NRA Grp., LLC*,
  861 F.3d 382 (3d Cir. 2017) ..................................................................................................7

*Defiance Button Mach. Co. v. C & C Metal Prod. Corp.*,
  759 F.2d 1053 (2d Cir. 1985) ................................................................................................7

*ELENZA, Inc. v. Alcon Lab'ys Holding Corp.*,
  2017 WL 2651716 (Del. Super. Ct. Apr. 20, 2017) .............................................................10

*Great Am. Opps., Inc. v. Cherrydale Fundraising, LLC*,
  2010 WL 338219 (Del. Ch. Jan. 29, 2010) ............................................................................2

*Hinson v. Bias*,
  927 F.3d 1103 (11th Cir. 2019) ...........................................................................................10

*KEMA, Inc. v. Koperwhats*,
  2010 WL 3464737 (N.D. Cal. Sept. 1, 2010) ........................................................................7

*KT Grp. Ltd. v. NCR Corp.*,
  2018 WL 11213091 (S.D.N.Y. Sept. 29, 2018) .....................................................................6

*Marc Maghsoudi Enters., Inc. v. Tufenkian Imp./Exp. Ventures, Inc.*,
  2009 WL 3837455 (N.D. Ill. Nov. 16, 2009) ........................................................................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .........................................................................................................5, 10

*MicroStrategy Servs. Corp. v. OpenRisk, LLC*,
  2015 WL 1221263 (E.D. Va. Mar. 17, 2015) ........................................................................6

*Nova Chems., Inc. v. Sekisui Plastics Co.*,
  579 F.3d 319 (3d Cir. 2009) ..................................................................................................6

*Orson, Inc. v. Miramax Film Corp.*,
    79 F.3d 1358 (3d Cir. 1996) ........................................................................................... 3

*Peloton Interactive, Inc. v. iFIT Inc.*,
    2022 WL 1523112 (D. Del. May 13, 2022) .................................................................... 2

*Pennwalt Corp. v. Akzona Inc.*,
    570 F. Supp. 1097 (D. Del. 1983) ................................................................................... 7

*Pulieri v. Boardwalk Props., LLC*,
    2015 WL 691449 (Del. Ch. Feb. 18, 2015) .................................................................. 10

*Sun Media Sys., Inc. v. KDSM, LLC*,
    564 F. Supp. 2d 946 (S.D. Iowa 2008) ......................................................................... 10

*Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*,
    859 F. Supp. 2d 771 (E.D. Va. 2012) ..................................................................... 5, 10

**Statutes**

6 *Del. C.* § 2001(4)(a) ............................................................................................................ 5

18 U.S.C. § 1839(3)(B) ........................................................................................................... 5

35 U.S.C. § 112(a) .................................................................................................................. 4

**Other Authorities**

Fed. R. Evid. 803(7) ............................................................................................................... 9

Fed. R. Evid. 1002, 1004 ...................................................................................................... 10

## INTRODUCTION

Envestnet's motion "point[ed] out," in detail, the absence of evidence to support the trade secret element in FA's misappropriation claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It is FA's burden to "make a sufficient showing" that any alleged trade secret was, in fact, a trade secret. *Id.* at 323. FA failed to meet this burden for two overarching reasons.

*First*, Envestnet identified over 1,750 pages of concededly non-secret materials, with highlighting specifying where FA's alleged trade secrets are described. Envestnet also noted other, undisputedly public materials describing FA's Platform including a trade show video and a developer website, again identifying the relevant contents with specificity. Instead of addressing the particular information identified, FA's response ignores it and claims *Envestnet* provides no analysis. But it is FA, not Envestnet, that has the burden on summary judgment to show what is left after these disclosures that is allegedly a "trade secret." FA chose not to do so. Even FA's expert opines that the non-secret information identified by Envestnet contain what FA's claims are trade secrets. Summary judgment should be granted for this reason alone. (Section I, below.)

*Second*, FA disclosed non-confidentially a set of its alleged trade secrets so rich that its own expert admitted it could be used to reproduce FA's Platform without access to source code. Even a single disclosure of that information is sufficient under the law to destroy any hypothetical trade secret protection. Further, as FA's response confirms, this same collection of purported trade secrets was given away for free by FA's competitors. Perhaps most tellingly, FA also non-confidentially disclosed these same alleged secrets to *nine* different outside entities and individuals. FA's response does not dispute six of these disclosures. For the three remaining, FA offers only the inadmissible declarations of self-interested witnesses with no corroborating evidence and conclusory arguments with no legal or factual support. (Section II, below.)

In sum, FA ignores the undisputed record of non-secret information. It fails to analyze the

1

information it shared with third parties, without any evidence of confidentiality restrictions. FA makes no attempt to identify what, if anything, is still a "trade secret" in light of this record. Nor has FA provided any evidence to show that any remaining "trade secret" was not generally known or readily ascertainable. FA has not made the required showing to preclude summary judgment. Envestnet's motion should be granted.

## ARGUMENT

### I. FA FAILS TO IDENTIFY ANY INFORMATION THAT MEETS THE REQUIREMENTS OF A TRADE SECRET.

FA bears the burden of identifying and establishing the existence of its trade secrets. *See* Br. at 7, citing *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 347 (D. Del. 2012); *Peloton Interactive, Inc. v. iFIT Inc.*, 2022 WL 1523112, at *2 (D. Del. May 13, 2022); *Great Am. Opps., Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219 at * 16 (Del. Ch. Jan. 29, 2010).

FA cannot meet that burden with respect to any alleged trade secret that was: (1) in a patent (Br. at 9 (citing *On-Line Tech v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1141 (Fed. Cir. 2004)); *see also* Ex. 2 ¶ 230 ("published patents or patent applications . . . are to be treated as public disclosures")); (2) otherwise shared with the public (Br. at 8, 10 (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974))); or (3) possessed by Yodlee before its relationship with FA (Br. at 8, 10 (citing *AgroFresh Inc. v. Decco U.S. Post-Harvest, Inc.*, 2021 WL 2555475, at *3 (Fed. Cir. Mar. 29, 2021)).)

Envestnet's motion identified a huge volume of such concededly non-secret information that FA claims as trade secrets, contained in white papers, data sheets, sample reports, patent filings by Yodlee and third parties, a trade show presentation, and materials on a public-facing website. (Br. at 2, 3-5, 6; SOF ¶¶ 3-5; App. A (highlights provided).)

FA completely ignores this detailed analysis. Instead, it argues in conclusory fashion (with

respect to only a subset of this material) that Envestnet does not provide any linking analysis to FA's alleged trade secrets.[1] However, this ignores the analysis set forth in Envestnet's brief at 2, 3-5, 6, SOF ¶¶ 3-5, & App. A. FA's arguments improperly attempt to place the burden on Envestnet to disprove FA's case, but the burden is on FA to "counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) ("On summary judgment, the moving party need not disprove the opposing party's claim"); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.").

Further, it would have been futile for FA to have attempted to meet its burden of "counter[ing] with specific facts," *Orson*, 79 F.3d at 1366, in order to "make a sufficient showing," *Celotex*, 477 U.S. at 325, of an actual trade secret. Such is apparent by comparing the concededly non-secret information that Envestnet identified, with what FA's own expert opines is a trade secret in his report (Ex. 2). This overlap shows that these alleged trade secrets are not, in fact, trade secrets. Here are just a few examples identified in Envestnet's opening submission[2]:



---

[1] Opp. at 9 ("no technical analysis" with respect to '462 Patent), 10 ("no analysis" with respect to white papers, data sheets, and sample reports), 11 ("Envestnet does not specifically identify" alleged trade secrets in Yodlee's possession before its relationship with FA), 11 ("no further explanation or argument" with respect to FinDEVr Conference video), 15 ("no explanation or analysis" with respect to the developer website).

[2] Although Envestnet attached and highlighted Appendix A without intending *the Court* to review all those voluminous exhibits in detail (Opp. at 10 n.7), that did not absolve *FA* of its burden to do so, in order to attempt to meet its burden under *Celotex*, 477 U.S. at 323, 325.

3



The only purported evidence offered by FA that any alleged trade secret is "not generally

known to . . . or readily ascertainable by" professionals in FA's industry, 18 U.S.C. § 1839(3)(B) & 6 *Del. C.* § 2001(4)(a), are quotes from FA's technical expert, Isaac Pflaum. But he simply parrots the same conclusory arguments FA makes in its response. These arguments fail for the same reasons discussed in the prior paragraphs and table. Moreover, Pflaum's opinions regarding trade secrets are inadmissible, as discussed in the briefing on Defendants' motion to exclude his opinions. (D.I. 484.) Indeed, FA concedes that Pflaum is not "an expert in the *fintech industry*." (D.I. 545 at 12 (FA's emphasis).) Having failed to disclose a fintech expert in its "FinTech" case (D.I. 1 at 1), FA offers no evidence of whether any of its alleged trade secrets are generally known or readily ascertainable. *See Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 779 (E.D. Va. 2012) (granting summary judgment for failure to disclose an expert with industry expertise, stating, "[T]he requirement that information not be generally known refers to the knowledge of *other members of the relevant industry*") (emphasis in original). And lack of general knowledge and lack of ready ascertainability are essential elements of proving the existence of a trade secret. (Br. at 16 (citing 18 U.S.C. § 1839(3)(B); 6 Del. Code § 2001(4)(a)).)

In sum, summary judgment is warranted because FA failed to meet its burden to identify the alleged trade secrets remaining, if any, after accounting for the factual record presented in Envestnet's motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (affirming grant of defendant's motion for summary judgment, stating, "if the factual context renders [non-movant's] claim implausible . . . [non-movant] must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary"); *Celotex*, 477 U.S. at 323-24 (summary judgment for defendant is appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof . . . One of the principal purposes of the summary judgment rule is to isolate and

dispose of factually unsupported claims or defenses").

## II. FA FAILS TO SHOW THAT ANY OF ITS ALLEGED TRADE SECRETS WERE MAINTAINED AS SECRET.

Even a single non-confidential disclosure of a trade secret precludes trade secret status. The record here contains many such disclosures. Each such disclosure precludes trade secret status.

### A. One Non-Confidential Disclosure Suffices to Preclude Trade Secret Status.

Once an alleged trade secret is disclosed, even because of a single non-confidential action, it is no longer a trade secret. Courts have long endorsed this result. In *Sw. Stainless, LP v. Sappington*, the appellate court held that an alleged trade secret was not a trade secret because it was disclosed to a single entity without an NDA. 582 F.3d 1176, 1189-90 (10th Cir. 2009). The court did not find or preclude trade secret status because the plaintiff "took no steps at all to prevent disclosure of its trade secrets." (Opp. at 17 n.14.) Rather, the court precluded trade secret status despite plaintiff taking the type of security measures FA argues excuses its disclosures here:

> Employees sign confidentiality agreements, passwords are used to restrict access to company information, employees are regularly reminded of the confidential nature of company information, and Metals has spent hundreds of thousands of dollars accumulating and maintaining its confidential information.

*Id.* at 1189-90 ("We nonetheless conclude that these facts do not establish enough"). Other cases have held similarly. *See KT Grp. Ltd. v. NCR Corp.*, 2018 WL 11213091, at *14 (S.D.N.Y. Sept. 29, 2018) (no trade secret status because of disclosure to single vendor without either a "confidentiality agreement" in place (Opp. at 17 n.14) or other evidence that this disclosure was made non-confidentially); *MicroStrategy Servs. Corp. v. OpenRisk, LLC*, 2015 WL 1221263, at *7 (E.D. Va. Mar. 17, 2015) (trade secret status "eviscerated" due to non-confidential disclosure to a single consultant); *see also Nova Chems., Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 327 (3d Cir. 2009) ("the most important characteristic of a trade secret is that it is in fact secret") (brackets

omitted); *Pennwalt Corp. v. Akzona Inc.*, 570 F. Supp. 1097, 1115 (D. Del. 1983) ("Trade secret law . . . does not afford protection against discovery by fair and honest means, such as . . . accidental disclosure") (citing *Kewanee Oil*, 416 U.S. at 474).[3]

### B. Industry-wide disclosures by FA's competitors of the same technology as the Relevancy Engine preclude trade secret status.

FA admits that "people were giving away **the same technology [as PowerWallet] for free**." (Opp. at 8 (FA's emphasis).) FA also attached a declaration confirming this fact. (D.I. 536 ¶ 7 ("people were giving away the same technology for free").) FA does not argue that the declaration is contrary to the record. Nor could it, because "[w]hen a nonmovant's affidavit contradicts earlier deposition testimony without a satisfactory or plausible explanation, a district court may disregard it at summary judgment." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391-92 (3d Cir. 2017). In short, the same technology as PowerWallet was non-secret. (Opp. at 8; D.I. 536 ¶ 7; SOF ¶ 7.)

The Platform, in turn, was designed to "use the underlying rules engine from PowerWallet."[4] Thus, since the "same" technology as PowerWallet was widely available in the

---

[3] FA's cases (Opp. at 17) are inapplicable. The only FA case involving a single non-confidential disclosure to a third-party, *Fireworks Spectacular v. Premier Pyrotechnics, Inc.* found trade secret status not precluded because the disclosure was "immediate[ly]" recalled. 147 F. Supp. 2d 1057, 1066-67 (D. Kan. 2001). FA presents no evidence that it recalled its disclosures. *Arthur J. Gallagher & Co. v. Petree* did not involve any disclosures. 2022 WL 1241232, at *7 (E.D. Cal. Apr. 27, 2022). *Subscriber Holdings, LLC v. Brightstar Corp.* did not involve any disclosures to third parties but rather only a "limited" disclosure to the alleged misappropriating party. 2022 WL 18034431, at *3 (11th Cir. Dec. 30, 2022). That situation, not present here, is inapplicable because it goes to the misappropriation element instead of the trade secret element, and, alternatively, *Subscriber Holdings* is against the weight of authorities finding that a single non-confidential disclosure to the alleged misappropriator precludes a misappropriation claim. *See, e.g., Defiance Button Mach. Co. v. C & C Metal Prod. Corp.*, 759 F.2d 1053, 1063-64 (2d Cir. 1985); *KEMA, Inc. v. Koperwhats*, 2010 WL 3464737, at *6 (N.D. Cal. Sept. 1, 2010); *Marc Maghsoudi Enters., Inc. v. Tufenkian Imp./Exp. Ventures, Inc.*, 2009 WL 3837455, at *2 (N.D. Ill. Nov. 16, 2009).

[4] Ex. 30 at FINAPPS_00683260. *See also* SOF ¶ 6, including, *e.g.,* Ex. 27 at 24:15-17 ( ███████████████████████████████████████████████████████ )

7

fintech industry (Opp. at 8) so the Platform's rules engine was widely available, and thus the core of alleged trade secrets therein. The Platform's rules engine (a.k.a., "Relevancy Engine") contains the same, alleged trade secrets found in the Data Dictionary (*see* Ex. 2 ¶ 31), the Attributes Glossary (*see id.* ¶ 31), and other alleged trade secrets, including a "software development toolkit," a "[software] program," "Rule Scripts," a "Rule Writer," "Rule-Based Data Refinement," the "API," and "Monitoring Software." (D.I. 1 at ¶ 50; Ex. 29 at 14-16.) In short, "The core of the Platform is FinApps' proprietary 'Relevancy Engine.'" (Ex. 29 at 14.) Since PowerWallet's rules engine was the core of FA's Platform and was distributed publicly, all these alleged trade secrets were not, in fact, trade secrets.

### C. FA's non-confidential disclosures of the Data Dictionary, Training PowerPoint, API Manual, and JSON Schema preclude trade secret status

FA does not dispute that FA made the following non-confidential disclosures of its alleged trade secrets (Br. at 5-6, 10-16):

(i) Data Dictionary to multi-national IT company NTT Data at its "@nttdata.com" domain (SOF ¶¶ 9-10 & Ex. 7) without an NDA. (*See* Opp. at 8 n.9 (arguing only "no evidence that *Dye* sent the Data Dictionary to anyone at NTT Data").)

(ii) API Manual and JSON Schema to Brian Francis and Doug Brewer. (*See* Opp. (no mention of Francis or Brewer).)

(iii) Training PowerPoint to Terry Askew, Western Union, and Morgan Hill Partners. (*See* Opp. at 16 & nn.12-13 (expressly admitting FA's non-confidential disclosure to Askew, not arguing that FA ever attempted to retract, and arguing only that

---

In addition, Bob Sullivan testified that PowerWallet was in use through 2018. (Ex. 5 at 20:14-20:17.) The corresponding versions of the alleged trade secrets thus included the versions alleged by FA, including those in the Data Dictionary version 2.3.3 (2017).

8

*others* did not make disclosures to Western Union and Morgan Hill Partners[5]).)

In addition, FA does not dispute that FA disclosed the API Manual and JSON Schema to FormFree, or that FA's NDA with FormFree was expired at the time of this disclosure. (Br. at 5, 12-14.) FA argues only that FA's disclosure to FormFree was confidential because of *Yodlee*'s contract with FormFree. However, FA does not explain how this non-FA contract obligates FormFree to maintain confidentiality over *FA*'s disclosure. The fact that FA and FormFree had their own (concededly expired) NDA undercuts any suggestion that Yodlee's contract with FA somehow applied to FA's disclosure to FormFree. Nor does FA cite any case finding that a recipient's contract with a third party is sufficient security to maintain an alleged trade secret.

Further, FA does not dispute it disclosed the Data Dictionary to Christian Dye. (Br. at 5, 11-12.) Instead, FA produces two declarations purporting to describe an alleged March 2019 NDA with Dye. But, if entering NDAs was FA's "standard practice" (Opp. at 1), then the following evidence shows the absence of one with Dye, under Fed. R. Evid. 803(7): (1) FA has not produced any such NDA; (2) Pflaum found no evidence of any such NDA (*see* Ex. 2 at 95-98[6]); (3) if one had existed, it would have been in electronic or hard-copy document form; (4) if FA had complied with its preservation obligations, which arose in January 2019,[7] and if a March 2019 NDA had

---

[5] FA points to a purported NDA with Morgan Hill Partners but admits it was executed one month *after* the disclosure to Morgan Hill Partners. (Opp. at 16 n.12.)

[6] FA attempts to excuse Pflaum's failure to identify purported NDAs with Dye and other recipients of the Data Dictionary, Training PowerPoint, API Manual, and JSON Schema by accusing Envestnet of not identifying Dye et al. in a contention interrogatory. (Opp. at 12 n.18.) However, Envestnet's contentions were based on FA's own interrogatory answers setting forth: (a) recipients of alleged trade secrets, in which FA failed to include Dye et al. (*see* Ex. 29 at 24-26); and (b) FA's trade secrets, in which FA failed to identify the Data Dictionary, Training PowerPoint, API Manual, and JSON Schema. (*See id.* at 11-18.) FA first argued these items contain purported trade secrets in Pflaum's report. (*See* SOF ¶¶ 8, 13, 18.)

[7] FA's privilege log shows it anticipated litigation by January 2019, when it requested legal advice and consultation regarding possible litigation. (*See* Ex. 31 at line ▬▬▬▬▬▬▬▬▬▬▬.)

actually existed, then FA could have produced it; and (5) FA could have gotten a declaration from Dye, but did not.[8]

* * *

FA also fails to pinpoint any alleged trade secret which is not "generally known" or "readily ascertainable" among the alleged trade secrets, if any, that are left after accounting for the totality of non-confidential disclosures discussed above. Envestnet thus is entitled to summary judgment on Counts 1 and 2. *See Matsushita*, 475 U.S. at 587; *Celotex*, 477 U.S. at 323-24; *Trident*, 859 F. Supp. 2d at 779; *Bradbury Co. v. Teissier-duCros*, 413 F. Supp. 2d 1209, 1221-1224 (D. Kan. 2006) ("[plaintiff' fails to provide facts that show that [its purported trade secrets] were not readily ascertainable"); *Sun Media Sys., Inc. v. KDSM, LLC*, 564 F. Supp. 2d 946, 969 (S.D. Iowa 2008) ("Plaintiff cannot show that such 'trade secrets' were unknown to Defendants specifically or were not otherwise readily ascertainable, and has pointed to no evidence in the record that would support such"); *ELENZA, Inc. v. Alcon Lab'ys Holding Corp.*, 2017 WL 2651716, at *4 (Del. Super. Ct. Apr. 20, 2017) ("[plaintiff] has not established a prima facie case, through expert testimony or other evidence, that [defendant] used or disclosed any trade secret, defined with a reasonable degree of precision and specificity, that was not already known or readily ascertainable").

## **CONCLUSION**

Envestnet, Inc. respectfully requests that the Court enter summary judgment in its favor on FA's Counts 1 and 2.

---

[8] FA's declarations are also inadmissible because FA made no attempt to lay a foundation for an oral description of a missing written contract under the best evidence rule. Fed. R. Evid. 1002, 1004. Therefore, such description cannot be considered on this motion. *Hinson v. Bias*, 927 F.3d 1103, 1108 n.1 (11th Cir. 2019). Such description and Dye's purported statements that he would keep information confidential (Opp. at 13, citing Sullivan and Weatherly declarations) are also inadmissible because, on important terms such as scope and duration, such purported evidence is "not sufficiently definite to demonstrate the existence of a valid contract." *Pulieri v. Boardwalk Props., LLC*, 2015 WL 691449, at *1 (Del. Ch. Feb. 18, 2015).

10

| OF COUNSEL: | CONNOLLY GALLAGHER LLP |
| --- | --- |
| Gary M. Miller | */s/ Lauren P. DeLuca* |
| Gary M. Elden | Henry E. Gallagher, Jr. (No. 495) |
| John D. Garretson | Lauren P. DeLuca (No. 6024) |
| Amy Y. Cho | 1201 North Market St., 20th Floor |
| Justin R. Donoho | Wilmington, DE 19801 |
| Ian M. Hansen | (302) 757-7300 |
| SHOOK, HARDY & BACON LLP | hgallagher@connollygallagher.com |
| 111 S. Wacker Dr., Suite 4700 | ldeluca@connollygallagher.com |
| Chicago, IL 60606 | |
| (312) 704-7700 | |
| | *Attorneys for Defendants Envestnet, Inc. and Yodlee, Inc.* |
| Dated: April 13, 2023 | |

REDACTED PUBLIC VERSION
Filed: April 20, 2023