## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FINANCIALAPPS, LLC,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )      Civil Action No. 19-1337-GBW-CJB
                                       )
ENVESTNET, INC. and YODLEE, INC.,      )
                                       )
            Defendants.                )

## MEMORANDUM ORDER

Pending before the Court in this action is Defendants Envestnet, Inc. ("Envestnet") and Yodlee, Inc.'s ("Yodlee, and collectively with Envestnet, "Defendants"") motion to exclude certain opinions offered by Isaac J. Pflaum ("Motion"), a technical expert witness proffered by Plaintiff FinancialApps, LLC ("Plaintiff" or "FinApps"), who is expected to testify regarding Plaintiff's claims of trade secret misappropriation. (D.I. 457)[1] For the reasons set out below, the Court DENIES the Motion.

## I.    BACKGROUND

The Court will write briefly here and for the parties, and so it will forego a lengthy recitation of the facts. To the extent certain facts are relevant to resolution of the Motion, they will be set out in Section III.

The Motion was filed on January 12, 2023. (D.I. 457) Briefing on the Motion was completed on April 27, 2023. (D.I. 564)

---

[1]      On October 7, 2019, United States District Judge Colm F. Connolly referred this case to the Court to conduct all proceedings and to hear and determine all motions, pursuant to 28 U.S.C. § 636(b) (the "referral"). (D.I. 18) On September 7, 2022, this case was reassigned to United States District Judge Gregory B. Williams, who subsequently ordered that the referral remained in effect. (D.I. 437)

## II.    STANDARD OF REVIEW

The Court has frequently set out the relevant standard of review for assessing a motion, like this one, filed pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993).  One such instance came in *Integra LifeScis. Corp. v. HyperBranch Med. Tech., Inc.*, Civil Action No. 15-819-LPS-CJB, 2018 WL 1785033, at *1-2 (D. Del. Apr. 4, 2018).  The Court incorporates by reference those legal standards set out in *Integra*, and will follow them herein.  To the extent that additional related legal principles regarding Rule 702 and *Daubert* are relevant, the Court will set those out in Section III.

## III.    DISCUSSION

With their Motion, Defendants seek to exclude three different sets of Pflaum's opinions: (1) that Plaintiff used reasonable security measures to protect its alleged trade secrets ("trade secrets"); (2) that Plaintiff derived economic value from the secrecy of its trade secrets; and (3) that Yodlee's Snapshot 2.0 product ("Snapshot 2.0") incorporated relevant source code from the Equifax VOA MVP product ("Equifax VOA MVP").  The Court will address these opinions, and the arguments relating to them, in turn.

### A.    Opinions Regarding Reasonable Security Measures

Defendants first argue that Pflaum's opinions to the effect that Plaintiff used reasonable security measures to protect its trade secrets should be excluded, because they are based on an unreliable methodology.  (D.I. 458 at 3-9)[2]  More specifically, Defendants assert that Pflaum's methodologies are unreliable because he "ignore[d] [certain] contradictory evidence[,]" that, had

---

[2]    At times in their reply brief, Defendants seem to make different arguments for exclusion than those they made in their opening brief.  (D.I. 564)  A party may not raise new arguments in its reply brief, and so herein the Court will only assess the arguments that Defendants actually made in their opening brief.

it been considered, would have demonstrated that Plaintiff in fact exposed its trade secrets to

various other persons who had not agreed to keep the material confidential. (*Id.* at 1, 3)

Defendants' argument here is not well taken. Defendants point to five separate sets of

evidence that Pflaum supposedly ignored. (*Id.* at 4-8) But as to two of those sets of evidence

(that relating to alleged disclosures to FormFree and via the Developer Website), Pflaum did not

"ignore" them at all in his expert reports. Instead, he discussed them and he simply came to

different conclusions about their import (i.e., about whether they were actually examples of

Plaintiff exposing its trade secrets in the absence of binding confidentiality agreements, in a way

that might matter here) than did Defendants and their experts. (*See, e.g.*, D.I. 459, ex. 1 ("Pflaum

Opening Rep.") at ¶¶ 225-29; *id.*, ex. 5 ("Pflaum Reply Rep.") at ¶¶ 122-23, 175); *see also* Fed

R. Evid. 702 Advisory Committee's Notes (2000) ("When facts are in dispute, experts

sometimes reach different conclusions based on competing versions of the facts. The emphasis

[in the Rule] on 'sufficient facts or data' is not intended to authorize a trial court to exclude an

expert's testimony on the ground that the court believes one version of the facts and not the

other."). As for the other three sets of evidence (that involving alleged disclosures to Christian

Dye and NTT Data, Steven Horwitz at Morgan Hill/Terry Askew at Western Union, and Robert

Massuh-Fox), while it is true that Pflaum did not make reference to them in his opening or reply

expert reports, Defendants' experts also did not cite to them in *their* reports.[3] Indeed,

---

[3] It appears that some courts have determined that if an expert does not consider certain facts that are contrary to his or her opinion, then that type of factual "cherry-pick[ing]" could amount to the use of an unreliable methodology. *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001); *see also* (D.I. 458 at 3 (citing cases)). Maybe that is so, particularly if the expert demonstrates a total failure to consider all (or nearly all) of the facts of record that contradict his or her viewpoint. But that does not seem to be what happened here. Pflaum's relevant expert opinions surely are based on plenty of "facts or data[,]" Fed. R. Evid. 702(b); indeed, his expert reports span hundreds of paragraphs and cite to plenty of relevant facts, documents and other pieces of evidence in the case. As a general matter, in a case like this

Defendants did not first mention the purported importance of nearly all of these alleged

disclosures until they were cited in Defendants' opening brief here.  (D.I. 518 at 5-6 & n.5)[4]

*Daubert* motions should not be the vehicle for "gotcha" litigation.  *Cf. Alfred v. Caterpillar, Inc.*,

262 F.3d 1083, 1086-87 (10th Cir. 2001).  In light of the above, the Court DENIES this portion

of the Motion.

        **B.**        **Opinions Regarding the Derivation of Economic Value from the Trade Secrets**

Next, Defendants take aim at Pflaum's opinions that Plaintiff derived economic value

from its trade secrets not being generally known to, or readily ascertainable through proper

means by, other persons.  (D.I. 458 at 9-15 (citing Pflaum Opening Rep. at ¶¶ 241-47 & Pflaum

---

one—where there are hundreds (if not thousands) of facts that might be considered and/or documents that might be cited—an expert's failure to cite to or focus on *one particular fact* or *one particular document* that the other side is fixated on does not strike the Court as necessarily amounting to the use of an unreliable methodology.  Instead, that just seems more like a difference of opinion between experts about what evidence is important and what evidence is not that important.  *See, e.g.*, *Langbord v. U.S. Dep't of the Treasury*, Civil Action No. 06-CV-05315, 2009 WL 1312576, at *7 (E.D. Pa. May 7, 2009) (rejecting the plaintiff's argument that the expert's methodology was unreliable because he chose to "exclude certain documents from his report and [relied] on other documents[,]" and noting that this is an argument that goes to weight instead of admissibility).

[4]      The Court also notes that Plaintiff served a Supplemental Expert Report from Pflaum after Defendants filed their opening brief here, in order to have Pflaum address and rebut Defendants' arguments about the materiality of the disclosures to Dye/NTT Data, Horwitz/Morgan Hill, Askew/Western Union, and Massuh-Fox.  (D.I. 581 at ¶¶ 15-17, 20, 23-25, 28-29)  Defendants, via an argument made in a paragraph of their reply brief, moved to strike this filing as untimely, (D.I. 564 at 9), which is not a thing that you can do in our Court.  If a party wishes to strike an expert report, they should file a motion in that regard, which will permit each side to adequately brief the question.  *See Carnes v. Crane Co.*, Civil Action No. 19-128-MN-SRF, 2021 WL 431511, at *4 (D. Del. Feb. 8, 2021) (declining to consider a request to strike that was not raised pursuant to a motion to strike), *report and recommendation adopted*, 2021 WL 706456 (D. Del. Feb. 23, 2021).  In any event, the Court need not make a determination here as to that Supplemental Expert Report's timeliness (though it strongly doubts that Pflaum will be prevented from relying on its content in his trial testimony), as such a decision would not impact its conclusions herein.

Reply Rep. at ¶ 423)); *see also* 18 U.S.C.A. § 1839(3)(B); Del. Code tit. 6, § 2001(4)(a). Defendants make this challenge in two ways, which the Court will assess in turn.

First, Defendants assert that Pflaum does not have the necessary qualifications on which to base his opinion. They argue that Pflaum is not qualified to offer an opinion on "what information is generally known or readily ascertainable *within the fintech industry*" (the industry in which the parties do business) because he is an expert in the field of "identification and analysis of copied software source code and architecture[,]" and not on "the fintech industry or what is known to professionals within that industry." (D.I. 458 at 10-11 (emphasis in original); Pflaum Opening Rep. at ¶ 2)

It is true that, as a general matter, "[w]hether something is a trade secret depends to a large extent on what knowledge is generally available *in the industry* and whether a new application would not be obvious to someone entering the business." *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748, 756-57 (N.D. Ill. 2009) (emphasis added) (rejecting the defendant's argument that the expert's opinions on what constitutes a trade secret in the wallboard business are unreliable, and noting that "the opinion of a person who spent decades as a senior manager in that industry is sufficiently expert and reliable").[5] But the Court is unconvinced that this means that Defendants should prevail on this portion of their Motion. As FinApps notes, Pflaum actually did not actually opine that FinApps derived economic value from

---

[5]    *See also Synopsys, Inc. v. Risk Based Sec., Inc.*, Civil Action No. 3:21cv252, 2022 WL 3005990, at *16 (E.D. Va. July 28, 2022) (explaining that "the requirement that the information not be generally known refers to the knowledge of other members of the relevant industry—the persons who can gain economic benefit from the secret"); *Iofina, Inc. v. Igor Khalev*, Case No. CIV-14-1328-M, 2016 WL 6246730, at *3 (W.D. Okla. Oct. 25, 2016) (noting that the expert was not improperly opining on the "ultimate issue" of whether any of plaintiff's alleged trade secrets are in fact trade secrets, but instead in his report properly "limits his opinions to whether certain matters are generally known or readily ascertainable by others engaged in the business of iodine extraction").

its trade secrets not being generally known to others "in the fintech industry"—instead, he

opined that "FinApps' proprietary information was not generally known or readily ascertainable

to someone outside of FinApps at all, *in any industry*, because it was developed from the ground

up by FinApps in secret[.]" (D.I. 518 at 12-13 (emphasis in original); *see also* Pflaum Opening

Rep. at ¶¶ 241-47)  The Court does not see why, in order to be able to offer this opinion, Pflaum

needs to be a well-established player in the fintech industry.  It would seem as if fintech

experience is not needed to opine on whether a trade secret was unknown to *anyone* (whether

they worked in the fintech industry or otherwise).[6]  At trial, Defendants might challenge

FinApps' assertion that the methods at issue were trade secrets because they were completely

"hidden from public view[,]" and in doing so, Defendants might argue that the methods were

nevertheless "generally known in the [fintech] industry[.]"  *Agrofresh Inc. v. Essentiv LLC*, C.A.

No. 16-662 (MN), 2020 WL 7024867, at *4 (D. Del. Nov. 30, 2020).  But that would seem to be

a case for Defendants (and their experts) to make to the factfinder.  For these reasons, and

because the courts have applied the qualifications standard liberally in favor of the offering

party, *see Integra*, 2018 WL 1785033, at *2 (citing cases), this portion of the Motion is

DENIED.

Second, Defendants argue that Pflaum's opinions on this score are unreliable because he

"did no analysis to reach his conclusions." (D.I. 458 at 9)  More specifically, here Defendants

---

[6]    In their reply brief, Defendants cited for the first time to the decision in *Thomas & Betts Corp. v. Richards Mfg. Co.*, No. Civ. 01-4677, 2006 WL 902148 (D.N.J. Apr. 4, 2006); Defendants relied heavily on the case for the proposition that, *inter alia*, "a purported expert offering opinions on the existence of a trade secret is not qualified as an expert under Rule 702 if he lacks experience in a trade in which the parties compete." (D.I. 564 at 2; *see id*. at 2-5)  The Court notes that the decision in *Thomas & Betts* was later overruled by the United States Court of Appeals for the Third Circuit on *Daubert* grounds. *See Thomas & Betts Corp. v. Richards Mfg. Co.*, 342 F. App'x 754, 761-62 (3d Cir. 2009).

are asserting that Pflaum did not do any analysis showing a *linkage* between the economic value

of the trade secrets and the fact that they were kept secret—in other words, how that economic

value was *derived from* or *stems from* or is *tied to* the trade secrets' *secrecy*. (*Id.* at 13-15)

Plaintiff did not do a good job responding to this argument in its answering brief. But in the key

portions of Pflaum's testimony on this point, the Court can see how Pflaum does seem to provide

at least some evidence relating to the allegedly missing link. Pflaum notes that some of the

reasons why the trade secrets at issue have value are that: (1) Yodlee licensed the platform that

contained such trade secrets; (2) others sub-licensed that technology; and (3) Defendants made

multiple offers to acquire all related technology from Plaintiff. (Pflaum Opening Rep. at ¶¶ 243-

45) The Court thinks it can see how Pflaum is suggesting in these paragraphs that the value

demonstrated by these licenses and purchase offers would not have existed were the trade secrets

at issue not kept secret (and instead, were they publicly known and/or unprotected). (*See* D.I.

518 at 13 ("Pflaum also explains how, by virtue of building and engineering the Platform from

scratch, keeping its development, technology, and technical documentation secret, and

controlling its distribution, FinApps secured commercial interest in it from multiple parties

besides Defendants (who themselves licensed the Platform twice, at increasing cost, and also

made multiple, multi-million dollar offers to acquire it)") (emphasis omitted)) Therefore, this

portion of the Motion is also DENIED.

C.    Opinions Regarding Source Code Relating to Snapshot 2.0 and Equifax VOA MVP

Lastly, Defendants argue that Pflaum's opinions regarding how Yodlee's Snapshot 2.0

product incorporated the source code of the Equifax VOA MVP (which allegedly included

Plaintiff's trade secrets) should be excluded, because they are based not on a sound methodology

but instead simply on Pflaum's *ipse dixit*. (D.I. 458 at 15-16 (citing Pflaum Opening Rep. at ¶¶

410-11 & Pflaum Reply Rep. at ¶¶ 726, 731))  Defendants say this is so because although Pflaum

asserts in his reports that he compared the source code of Snapshot 2.0 to the source code of

Equifax VOA MVP, in reality, he did not.  (*Id*. at 16 ("When questioned about his purported

source code review at his deposition, Pflaum confirmed that he did not, in fact, actually

undertake a comparison of the Snapshot 2.0 product source code and the source code for Equifax

VOA MVP" and that he "does not opine as to how any similarities between the Snapshot 2.0

source code and the Equifax VOA MVP source code relate to FA's purported trade secrets"))

But in his expert reports, Pflaum repeatedly and clearly states that he *did* review and

compare the source code for Snapshot 2.0 and Equifax VOA MVP, (Pflaum Opening Rep. at ¶¶

379, 384, 387, 389, 410-11; Pflaum Reply Rep. at ¶¶ 722, 726, 731, 743), and that this review in

fact demonstrated that Plaintiff's proprietary trade secrets were wrongly utilized in Snapshot 2.0,

(Pflaum Opening Rep. at ¶¶ 410-15).  Defendants' arguments that Pflaum's analysis in this

regard is faulty or lacks specificity, (D.I. 564 at 9-10), appear to go to the weight that should be

afforded to Pflaum's testimony, not to its reliability.

## IV.    CONCLUSION

For the reasons set out above, the Court hereby ORDERS that Defendants' Motion is

DENIED.

Because this Memorandum Order may contain confidential information, it has been

released under seal, pending review by the parties to allow them to submit a single, jointly

proposed, redacted version (if necessary) of the Memorandum Order.  Any such redacted version

shall be submitted no later than **August 2, 2023** for review by the Court.  It should be

accompanied by a motion for redaction that shows that the presumption of public access to

judicial records has been rebutted with respect to the proposed redacted material, by including a

factually-detailed explanation as to how that material is the "kind of information that courts will

protect and that disclosure will work a clearly defined and serious injury to the party seeking

closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir.

2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a

publicly-available version of its Memorandum Order.


Dated:  July 28, 2023

                                              Christopher J. Burke
                                              UNITED STATES MAGISTRATE JUDGE