**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FINANCIALAPPS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 19-1337-JLH-CJB |
| ENVESTNET, INC. | ) |
| and YODLEE, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM ORDER**

On May 29, 2026, Plaintiff FinancialApps ("FinApps") and Defendants Envestnet, Inc. "Envestnet") and Yodlee ("Yodlee") submitted their Joint Proposed Pretrial Order.  (D.I. 721.) Included in the parties' pretrial submissions were their respective positions regarding which issues, if any, must be tried to a jury.  (*Id.*, Ex. 17–18.)  For the reasons below, I conclude that there is no jury trial right on the pending claims, and the case will be tried to the bench.

**Background**

1.      I assume familiarity with the facts and nature of this proceeding.  Briefly, FinApps and Yodlee entered into a licensing agreement (the Master Services Agreement ("MSA")) that, relevant here, (i) requires Yodlee to maintain the confidentiality of FinApps's trade secrets and (ii) contains a broad jury trial waiver for "any action or litigation arising out of or related to" the agreement.[1]  (D.I. 721, Ex. 18, Ex. A §§ 6, 7, 12(e).)  FinApps sued Yodlee and Envestnet—which

---

[1] Section 12(e) of the MSA provides as follows:

> Waiver of Jury Trial. Each party hereby waives any right to jury trial in connection with any action or litigation arising out of or related to this Agreement.

owns 100% of Yodlee—alleging, among other things, that Yodlee and Envestnet misappropriated FinApps's trade secrets—which were conveyed to Yodlee pursuant to the MSA.[2]  FinApps says that its "core allegation [against Envestnet] . . . is that Envestnet orchestrated, directed, and oversaw Yodlee's misconduct." (D.I. 694 at 5.)

2.      Yodlee and Envestnet say that FinApps has no right to a jury trial on any of its claims.  FinApps says that it has a right to a jury trial on its claims against Envestnet.

3.      This case was initially assigned to Chief Judge Connolly.  On January 14, 2021, Chief Judge Connolly held that Yodlee could enforce FinApps's contractual waiver of its right to have a jury try its claims against Yodlee, but that Envestnet lacked standing to enforce the waiver. (D.I. 250 at 7–8.)  Accordingly, Chief Judge Connolly stated that the trial would be phased such that FinApps would first try its claims against Envestnet to the jury, and then try its claims against Yodlee to the bench after the jury verdict.  (*Id.* at 10–11.)

4.      The case was subsequently reassigned to me.  On February 6, 2026, I issued an Order that superseded all prior scheduling orders (including Chief Judge Connolly's trial phasing

---

(D.I. 721, Ex. 18, Ex. A § 12(e).)  Section 12(b) further provides:

> <u>Relationship of Parties.</u> The parties are independent contractors. This Agreement does not create an agency, employment, fiduciary, franchise, investor, joint venture, or partnership relationship between the parties or the employees or Affiliates of either party. Each party shall be solely and entirely responsible for its individual acts and the acts of its Affiliates, agents, officers, directors, shareholders, members, managers, employees and servants during the performance of this Agreement.

(*Id.* § 12(b).)

[2] FinApps's pending claims against Envestnet include trade secret misappropriation under state and federal law, tortious interference with prospective business opportunities, unfair competition, and a claim under the Florida Deceptive and Unfair Trade Practices Act.  (D.I. 721 5, 7–8; *see also* D.I. 2, 137, 649.)

order), insofar as they related to trial-related submissions and trial.  (D.I. 697.)  I explained that I would determine at the Pretrial Conference what issues (if any) would be tried to a jury, and how the trial will be phased (if at all).  (*Id.* at 2 n.1.)  I ordered the parties to submit their respective views on these issues as exhibits to the Pretrial Order.  (*Id.*)  On May 29, 2026, the parties filed their Joint Proposed Pretrial Order with the related statements (D.I. 721, Ex. 17–18), which I have thoroughly reviewed.

**Legal Standard**

5.    "The right to a jury trial in a civil case is a fundamental right expressly protected by the Seventh Amendment to the United States Constitution." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937); *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir. 2004)).  "The question of a waiver of a constitutional right, including the Seventh Amendment right to a jury trial, is a federal question controlled by federal law." *Id.* (citing *Brookhart v. Janis*, 384 U.S. 1, 4 (1966); *In re City of Phila. Litig.*, 158 F.3d 723, 726 (3d Cir. 1998)).  Under Federal Rule of Civil Procedure 39(a)(2), "trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."

**Analysis**

6.    As an initial matter, I agree with Chief Judge Connolly that FinApps's claims against Yodlee all relate to the MSA, and that FinApps has waived its right to try those claims to a jury.  (*See* D.I. 250 at 4–8.)  Yodlee's counterclaims also relate to the MSA, and the jury waiver applies to those too.  The only question is whether FinApps's jury waiver covers its claims against Envestnet, a non-signatory.

3

7.      FinApps says that the jury trial waiver in the MSA doesn't cover its claims against Envestnet.  However, I am persuaded by Defendants' argument that, under these circumstances, FinApps is equitably estopped from avoiding enforcement of the jury waiver as to its claims against Envestnet. (D.I. 721, Ex. 18 at 12–13.)  While Third Circuit case law on this issue is sparse, I agree with the general principle that a signatory may be equitably estopped from arguing that a contractual provision does not apply to a non-signatory in light of close relationships between the entities involved and allegations of claims that are intertwined with the contractual obligations. *See, e.g.*, *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199–202 (3d Cir. 2001) (discussing same in context of arbitration clauses); *In re DaimlerChrysler AG Securities Litig.*, No. 00-993, 2003 WL 22769051, at *3 (D. Del. Nov. 19, 2003) (determining signatory is equitably estopped from avoiding jury waiver for certain non-signatory defendants because it has alleged all defendants acted in concert with each other).[3]

8.      Here, I determine FinApps is equitably estopped from arguing the jury waiver does not apply to Envestnet.  FinApps agreed in the MSA to waive its right to a jury trial for all claims related to the MSA, which all these claims are.  (D.I. 721, Ex. 18, Ex. A § 12(e).)  FinApps also agreed that each party to the MSA would be solely responsible for the acts of its affiliates.  FinApps cannot now avoid a bench trial with Envestnet, Yodlee's 100% owner and a non-signatory to the MSA, when FinApps's position is that "Envestnet orchestrated, directed, and oversaw Yodlee's [(a signatory's)] misconduct" (D.I. 694 at 5), and that "the facts demonstrating Envestnet's direct liability . . . are wholly intertwined with its commands that Yodlee steal FinApps' technology"

---

[3] *DaimlerChrysler* was affirmed on other grounds on appeal.  *Tracinda*, 502 F.3d at 225 n.14 (declining to address *DaimlerChrysler*'s equitable estoppel rationale).

(D.I. 721, Ex. 17 at 7).  I conclude that a bench trial is appropriate for all claims against Envestnet and Yodlee.

9.    The parties shall provide an update on any conflicts with the trial or pretrial conference date on or before June 18, 2026.

Dated: June 12, 2026

_____
The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE